# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

DISABILITY RIGHTS NEW YORK,     )    **MEMORANDUM OF LAW**
                                      )    **IN SUPPORT OF PLAINTIFF'S**
      Plaintiff,             )    **CROSS-MOTION FOR**
                                        )    **SUMMARY JUDGMENT AND IN**
NEW YORK STATE DEPARTMENT OF  )    **OPPOSITION TO DEFENDANTS'**
CORRECTIONS AND COMMUNITY    )    **MOTION FOR SUMMARY**
SUPERVISION, and ANTHONY J.      )    **JUDGMENT**
ANNUCCI, in his official capacity as the  )
Acting Commissioner of the New York   )
State Department of Corrections and     )
Community Supervision,            )
                                        )    Case No. 1-18-cv-980 (GTS/CFH)
                                        )
      Defendants.           )

_____

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

DISABILITY RIGHTS NEW YORK
Christina Asbee, Bar Roll # 700345
Brandy L. L. Tomlinson
Jennifer Monthie
Betsy Sterling
725 Broadway Suite 450
Albany, New York
(518) 432-7861
(585) 348-9823 (fax) (not for service)

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.    FACTS ...................................................................................................................... 2

    A.  The Federal Protection and Advocacy System ................................................ 2

    B.  New York State's P&A System ....................................................................... 3

    C.  DOCCS' Delay or Denial of Records .............................................................. 5

III.    LEGAL STANDARD ............................................................................................... 8

    A.  Summary Judgment ......................................................................................... 8

IV.    ARGUMENTS ........................................................................................................... 9

    A.  DRNY is Entitled to Summary Judgment on its Claims Under the P&A Acts. ................ 9

        1.  DOCCS' Excuses for Denial and Delay of Records Must Be Rejected. ......................... 9

        2.  DRNY is Entitled to Access to Copies of Records ....................................... 10

        3.  DOCCS Refuses to Comply with the Timelines Set Forth in the P&A Acts. ............... 12

        4.  DOCCS Violates the P&A Acts by Denying DRNY Access to Inmate A's Records ... 13

        5.  DOCCS Violates the P&A Acts by Failing to Provide Access to Other Information ... 15

    B.  DRNY is Entitled to Summary Judgment on its Claims Under 42 U.S.C. § 1983. ........... 16

    C.  Plaintiff is Entitled to Declaratory Relief. ..................................................... 16

    D.  DRNY is Entitled to a Permanent Injunction. ................................................ 17

V.  ARGUMENTS IN OPPOSITION ......................................................................... 18

    A.  Defendants Interpretation of the P&A Acts is Not Supported by Law............................. 18

        1.  The P&A Acts Protects Individuals with All Disabilities ............................................. 18

        2.  DRNY Need Not Cite to a Specific Statute When Making a P&A Request ................ 21

        3.  DRNY Properly Requested the Records of B Through SS as Clients of the System .... 21

    B.  Defendants' Excuses for Non-Compliance are Not Supported by Law or Fact................ 21

        1.  Acting Commissioner Annucci is a Proper Defendant ................................................ 23

        2.  The Eleventh Amendment Does Not Bar DRNY's Claims ........................................ 24

V.  CONCLUSION...................................................................................................... 25

Plaintiff Disability Rights New York respectfully submits this memorandum of law in support of its cross motion for summary judgment and in opposition to the Defendants' motion for summary judgment.

## I.  INTRODUCTION

Disability Rights New York (DRNY) is the New York Protection and Advocacy system designated by the Governor of the State of New York to provide protection and advocacy services to individuals with disabilities pursuant to New York Executive Law § 558. Plaintiff Statement of Material Facts ("SMF") ¶17; *Disability Rights New York v. N. Colonie Bd. of Educ.*, No. 1:14-CV-0744, 2016 WL 1122055, at *1 (N.D.N.Y. Mar. 21, 2016); *Disability Rights New York v. Wise*, 171 F.Supp.3d 54 (N.D.N.Y 2016).  DRNY is authorized to investigate allegations of abuse or neglect of individuals with disabilities and has broad authority under federal law to access records in order to carry out such investigations. 42 U.S.C. §§ 10805(a) and 15043(a). This authority includes the right to access records of facilities providing care, treatment, and other services for individuals with disabilities. 42 U.S.C. §§ 10806(b)(3)(A) and 15043(c)(1)-(2); 42 C.F.R. § 51.41(c)(1)-(2); 45 C.F.R. § 1326.25(b)(1)-(2).

As the P&A system for New York State, DRNY enforces and carries out federal mandates under the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), 42 U.S.C. § 15041–15043, Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. § 10801 *et seq.*, Protection and Advocacy for Individuals Rights ("PAIR Act") 29 U.S.C. § 794e; and the Protection and Advocacy for Assistive Technology Act of 2004 ("PAAT Act"), 29 U.S.C. § 3001 *et seq.* (collectively, "P&A Acts").

Pursuant to its P&A authority, DRNY made requests for records from the New York State Department of Corrections and Community Supervision (DOCCS), the agency charged with confining and serving prisoners in its correctional facilities, including individuals with disabilities. SMF ¶21. DOCCS' actions prevent DRNY from fulfilling its federal statutory mandate to investigate complaints of abuse or neglect, and provide legal assistance and advocacy services to individuals with disabilities. DRNY commenced this action to compel DOCCS to produce copies of records as required by federal law. Because the material facts underlying DRNY's claims are undisputed, summary judgment is appropriate in DRNY's favor.

## II. FACTS

### A. The Federal Protection and Advocacy System

In 1975, Congress enacted the DD Act, 42 U.S.C. §§ 6041-6043,[1] following revelations of inhumane and despicable conditions at a New York institution for persons with developmental disabilities. *Conn. Office of P&A v. Kirk*, 354 F. Supp. 2d 196, 199 (D. Conn. 2005). Under the DD Act, in order to receive federal funds, a state must have in effect a P&A system for persons with disabilities. *Id.* Over a decade later, in 1989, Congress passed the PAIMI Act after finding that individuals with mental illness were also vulnerable to abuse, neglect, and serious injury, and that the states' systems for monitoring the rights of these individuals varied widely and were frequently inadequate. 42 U.S.C. § 10801(a); *Kirk*, 354 F. Supp. 2d at 199. The PAIMI Act expanded the P&A system to protect and advocate for the rights of individuals with mental illness. *Kirk*, 354 F. Supp. 2d at 199.

---

[1] Congress subsequently replaced the statute with the Developmental Disabilities Act of 2000 ("DD Act"), 42 U.S.C. §§ 15001-15115.

Shortly thereafter, in 1992, Congress amended the Rehabilitation Act of 1973 to include the PAIR Act. 29 U.S.C. § 794e. Congress created the PAIR Act "to protect the legal and human rights of individuals with disabilities who do not qualify for services under the Client Assistance Program, DD, and PAIMI Acts." 29 U.S.C. § 794e(a)(1). In 1998, Congress passed the PAAT Act, after finding that states must develop systems for improving access to assistive technology devices and related services for individuals with disabilities. 29 U.S.C. § 3001(a)(7).

## B. New York State's P&A System

At all times relevant to this action, DRNY has been the statewide P&A system as designated by the Governor of the State of New York. SMF ¶17. The P&A Acts charge DRNY with the duty to "investigate incidents of abuse and neglect" of individuals with disabilities if an incident is reported to DRNY or if DRNY has probable cause to believe that such an incident occurred. 42 U.S.C. §§ 10805(a)(1)(A) and 15043(a)(2)(B). The Acts also authorize DRNY to "pursue administrative, legal, and other appropriate remedies" to ensure the protection of the rights of such individuals with disabilities in New York State. 42 U.S.C. §§ 10805(a)(1)(B) and 15043(a)(2)(A)(i); *see also* 29 U.S.C. § 794e(f) and 29 U.S.C. § 3004(a)(2). To allow a P&A system to pursue these objectives, the P&A Acts authorize DRNY to have access to records of persons with disabilities under certain circumstances, including:

1. all records of any individual with a developmental disability or mental illness, or any other disability[2] where the P&A system has probable cause to believe the health or safety of the individual is in serious and immediate jeopardy; or in any case of death of

_____

[2] The PAIR and PAAT Acts extend the P&A system's records access authority to all people with disabilities. Through the PAIR and PAAT Acts, a P&A system has the same authority to access records and facilities as set forth in the DD Act, respective of the programs' mandates. 29 U.S.C. §§ 794e(f) and 3004(a).

an individual with a developmental disability or mental illness; 42 U.S.C. §§ 15043(a)(2)(J)(ii) and 10805(a)(4)(B);

2. all records of an individual with a developmental disability, mental illness, or any other disability who has authorized the P&A system to access the individual's records; 42 U.S.C. §§ 15043(a)(2)(I)(i) and 10805(a)(4)(A); 29 U.S.C. §§ 794e(f) and 3004(a).

The U.S. Department of Health and Human Services (HHS) has promulgated regulations governing activities carried out by P&A systems, including P&A systems' access to records. 42 C.F.R. § 51.41 ("PAIMI Access Regulation"); 45 C.F.R. § 1326.25 ("DD Access Regulation") (referred to jointly as the "Access Regulations").[3] The Access Regulations make clear that a P&A system's access authority extends to information and individual records, including, "demographic and statistical information related to the facility." 42 C.F.R. § 51.41(c)(5); *see also* 45 C.F.R. § 1326.25(b)(4).

The DD Act requires that the P&A system be given records within three business days of making a request, or, in the case of records pertaining to an individual who has died or whose safety is in immediate jeopardy, within 24 hours of the request. 42 U.S.C. § 15043(a)(2)(J)(i)-(ii). The PAIMI Access Regulations require that access to these records be provided "promptly." 42 C.F.R. § 51.41(a).[4] "Promptly" has been interpreted to mean within five business days. *Michigan*

_____

[3] On July 27, 2015, HHS published new rules to align the DD Access Regulation with the DD Act of 2000. 80 Fed. Reg. 44796-44827. The DD Access Regulation, previously found in 45 C.F.R. § 1386.22, was renumbered as § 1386.25. On June 3, 2016, HHS published technical amendments to the DD Access Regulation, redesignating 45 C.F.R. § 1386.25 as § 1326.25. 81 Fed. Reg. 35644-35648

[4] Although the timeline described in the DD Act does not expressly apply to the PAIMI Act, "it suggests that 'prompt' is more likely a matter of days or perhaps weeks, but not months." *Wis. Coal. for Advocacy v. Busby*, No. 02-C-871, slip op. at 15 (E.D. Wis. Sept. 24, 2003); *see also P&A System v. Freudenthal*, 412 F. Supp. 2d 1211, 1225 (D. Wyo. 2006) (holding that deadlines in the DD Act guide the time frame for responding to records requested under the PAIMI Act); *Ala. Disabilities*

*Prot. & Advocacy Serv., Inc. v. Flint Cmty. Sch.*, 146 F. Supp. 3d 897, 908 (E.D. Mich. 2015). If a facility[5] intends to delay or deny the P&A system records, it must provide a written explanation for any delay or denial promptly for PAIMI Act requests and within one business day after the expiration of such deadline for all other P&A Act request. 42 C.F.R. § 51.43; 45 C.F.R. § 1326.26.

## C. DOCCS' Delay or Denial of Records

From January 2018 to present, DRNY made multiple requests for copies of records from DOCCS pursuant to its authority as New York State's P&A System. SMF ¶21. DRNY sought access to copies of the records of Inmates B through SS pursuant to 42 U.S.C. §§ 15043(a)(2)(I)(i) and 10805(a)(4)(A). Inmates B through SS are clients of DRNY and have authorized DRNY access to their records. Monthie Decl. ¶6; SMF ¶28.

DOCCS requires DRNY to pay for the copying costs of all records and DRNY does not dispute that the P&A Acts permit DOCCS to charge a reasonable fee. 45 C.F.R. § 1326.25 (d); 42 C.F.R. § 51.41(e). For each P&A record request, DRNY requests that DOCCS promptly provides an invoice so that DRNY can pay for the copying costs of the records it seeks. *See eg.* Galea Decl. ¶49; Defendants Bate 283-87. For several of DRNY's P&A record requests, DOCCS did not provide an invoice for copying within the time period allotted in DRNY's request. DOCCS provided the invoice for Inmate HH 83 business days after DRNY made its P&A Act request. Nair Decl., Plaintiff Bates 175-76. DOCCS similarly provided the invoice for Inmates Z, DD, G, H, I, J, L, Y, V, KK, T, F, S, H, M, and U beyond the time period afforded to them by the P&A Acts:

*Advocacy Prog. v. J.S. Tarwater Dev. Ctr.*, 894 F. Supp. 424, 428 (M.D. Ala. 1995) (stating that the records access provisions of the P&A Acts are meant to be consistent).
[5] The PAIMI Act uses the term "facility," 42 U.S.C. § 10806(b)(3)(A), while the DD Act uses the term "location," 42 U.S.C. § 15043(c)(1). The regulations implementing the DD Act, published July 27, 2015, use the broad term "service provider." 45 C.F.R. § 1386.25(b); 80 Fed. Reg. 44811. For the sake of consistency, Plaintiff uses the phrase facility to describe facilities, locations, and service providers serving individuals with disabilities.

Inmate Z (61 business days); Inmate DD (58 business days); Inmates G, H, I, and J (46 business days); Inmate L (38 business days); Inmate Y (33 business days); Inmate V (26 business days); Inmates KK and T (25 business days); Inmate F (24 business days); Inmate S (22 business days); Inmates H, M, and U (21 business days). Charland Decl., Plaintiff Bates 104-06, 120-21, 228.[6] No cost estimate has been provided for the records of Inmates LL, MM, NN, OO, and QQ, even though DRNY made these requests in September and October 2018. Walton Decl. ¶¶ 4, 8, 12, 16; Charland Decl. ¶33.

For all P&A record requests, DRNY afforded DOCCS more time than prescribed by the P&A Acts to produce the records. *See eg.* Defendants Bates 180-84. Without waiving its right to receive copies of records within the time period prescribed by the P&A Acts, DRNY extended the timeline for releasing records pursuant to the DD Act for Inmates B through F, K through GG, I through QQ, and SS from three business days to seven business days to provide a cost invoice for records and two business days to produce the records after receipt of payment. *See generally* Defendants Bates 001-358; Plaintiff Bates 179-225. For Inmates A, G, H, I, J, HH, and RR, DRNY provided Defendants with seven business days to provide the cost estimate for records, and within two days or promptly, produce responsive records pursuant to the PAIMI Act after receipt of payment. *Id.* DOCCS has not provided DRNY copies of records within these timeframes. Charland Decl., Plaintiff Bates 96, 108.[7]

Instead, DOCCS now asserts that it need not provide copies of records but only physical access at its facilities. Dkt 15-1 p.8. Notwithstanding this position, DOCCS provided copies of

---

[6] *See also* Galea Decl., Plaintiff Bates 058, 061-61, 138-39, 140-42, 154-56; Keegan Decl., Plaintiff Bates 025-27, 110-12, 193-93; Rosenthal Decl., Plaintiff Bates 42-48.

[7] See also Galea Decl., Plaintiff Bates 074-76, 085-86, 130-31, 135-37, 144-45, 151-53, 164-68, 170; Williams Decl., Plaintiff Bates 15, 181-84, 186; Rosenthal Decl., Plaintiff Bates 042-48, 049-50, 052-53, 226-27; Nair Decl., Plaintiff Bates 008; Keegan Decl. ¶15.

the records without objection of Inmate P 97 business days after DRNY issued a check for the copying costs of the records. Galea Decl., Plaintiff Bates 079-81. DOCCS similarly substantially delayed the production of records of Inmate O (94 business days); Inmate Q (76 business days); Inmates S (59 business days); Inmates W, X and AA (58 business days); Inmate EE and CC (50 business days); Inmate II (43 business days); Inmate J (36 business days); Inmate H and J[8] (36 business days); Inmate G[9] (37 business days); Inmates G, H, I, and J (34 business days); Inmate F (33 business days); Inmate D and FF (31 business days); Inmate B (26 business days); and Inmate T (24 business days) after DRNY issued checks. Charland Decl., Plaintiff Bates 96, 108.[10] Copies of records of Inmates BB, Y and JJ have not been produced, even though DRNY issued checks on July 18, 2018, August 13, 2018; and September 30, 2018 respectfully. Galea Decl. ¶¶51, 66; Keegan Decl. ¶15.

Additionally, on March 26, 2018, DRNY sent DOCCS a request for information regarding DOCCS' Residential Treatment Facilities (RTFs) in response to a complaint of abuse and neglect received by DRNY. Defendants Bates 11. Specifically, DRNY sought access to demographic and statistical information about DOCCS' RTFs. *Id.* DOCCS has denied access to this information. Landriscina Decl. ¶9.

Finally, DRNY requested Inmate A's records. Defendants Bates 003-05. Inmate A died while in the custody of DOCCS. *Id.* DOCCS produced copies of records of Inmate A partially responsive to DRNY's request and notified DRNY that the autopsy report was not yet completed. Defendants Bates 6. DRNY renewed its request for access to the autopsy report and updated death

---

[8] DOCCS produced Inmate H's and J's records on August 29, 2018 and November 2, 2018.
[9] DOCCS produced Inmate G's records on August 29, 2018 and November 2, 2018.
[10] See also Galea Decl., Plaintiff Bates 074-76, 085-86, 130-31, 135-37, 144-45, 151-53, 164-68, 170; Williams Decl., Plaintiff Bates 15, 181-84, 186; Rosenthal Decl., Plaintiff Bates 042-48, 049-50, 052-53, 226-27; Nair Decl., Plaintiff Bates 008; Keegan Decl. ¶15.

certificate on January 3, 2018. Defendants Bates 7. Thereafter, DOCCS demanded that DRNY supply a HIPPA release form from Inmate A's estate prior to releasing Inmate A's records. Landriscina Decl., Plaintiff Bates 228-29. DOCCS continues to deny access to the records of Inmate A. Sterling Decl. ¶13.

For all P&A record requests, DOCCS has not provided a written explanation for their delay or denial of copies of records within the timeline prescribed by the P&A Acts and Access Regulations or within the extended timeline offered by DRNY. 42 C.F.R. § 51.43; 45 C.F.R. § 1326.26; *See eg.* Galea Decl. ¶¶ 6, 11, 16, 21, 26, 31. The delay or denial of records prompted Plaintiff to file its Complaint. Dkt. 1. Since filing, DOCCS has continued the practice of delaying and denying copies of the records Plaintiff requests. *See generally* Williams Decl; Keegan Decl.; Walton Decl.; Charland Decl.; Landriscina Decl.

## III. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 492 F.3d 89, 96 (2d Cir. 2007). The party moving for summary judgment has the burden to establish "'that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law.'" *Bowen v. Nat'l R.R. Passenger Corp.*, 363 F. Supp. 2d 370, 373 (N.D.N.Y. 2005) (quoting *Rodriquez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A party opposing summary judgment "'may not rest

upon mere allegation or denials of [their] pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (quoting *First Nat'l Bank of Ariz. v. Cities Svcs. Co.*, 391 U.S. 253, 288 (1968)). Those specific facts must be supported by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "[I]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## IV.  ARGUMENTS

### A.  DRNY is Entitled to Summary Judgment on its Claims Under the P&A Acts.

#### *1.  DOCCS' Excuses for Denial and Delay of Records Must Be Rejected.*

When a facility delays or denies a P&A system's request, the entity must provide a written statement of the reasons for the denial or delay within one business day after the expiration of the deadline or promptly. 42 C.F.R. § 51.43; 45 C.F.R. § 1326.26; *Disability Rights New York v. N. Colonie Bd. of Educ.,* No. 1:14-CV-0744, 2016 WL 1122055, at *3 (N.D.N.Y. Mar. 21, 2016). It is undisputable that DOCCS did not provided a written statement of the reasons for any delay or denial of access to copies of records within the P&A Acts timeframes or within the extended timeline offered by DRNY. *See eg.* SMF ¶178, 191, 203, 215.

The United States Department of Health and Human Services (HHS) specifically established the denial/delay notice requirement in recognition of the negative consequences a denial or delay would have on the P&A's ability to fulfill its federal mandate.  Developmental Disabilities Program, 80 FR 44796-01.

> [HHS's Administration on Intellectual and Developmental Disabilities] believes that establishing a deadline for providing the written justification denying access is necessary in recognition of the consequences of not accessing relevant information quickly. This is particularly necessary when there are allegations of abuse or neglect, probable cause to believe that the health or safety of the individual is in serious and immediate jeopardy, or in the case of a death.  Id.

HHS' interpretation of the DD Act through these regulations warrants great deference because HHS, through its Administration on Intellectual and Developmental Disabilities, is authorized to administer the DD Act. 42 U.S.C. 15004(b); *See*, *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 843 (1984); *U.S. v. Mead Corp.,* 533 U.S. 218, 229, 121 S.Ct. 2164 (2001); *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 219-20 (2d Cir. 2014) ("Deference under *Chevron* is appropriate if it is apparent from the agency's generally conferred authority and other statutory circumstances that Congress would expect the agency to be able to speak with the force of law when it addresses ambiguity in the statute or fills a space in the enacted law."). Since DOCCS never provided a timely notice of denial or delay, Defendants' present explanations for delaying or denying DRNY records access must be barred from consideration.

### 2. DRNY is Entitled to Access to Copies of Records

DOCCS maintains that it has not delayed access to the records DRNY seeks because it need not provide copies of records within the timeframe prescribed in the P&A Acts. Dkt. 15-1, p.8. DOCCS' position is belied by the plain language of the Access Regulations. 45 C.F.R. § 1326.25(d); 42 CFR § 51.41(e). The Access Regulations define access as the ability to "inspect *and* copy records." *Id.*(emphasis added). The DD Act regulations are clear that copies provided by the entity must be provided within the regulatory timelines.

> At its option, the P&A may make written notes when inspecting information and records, and may use its own photocopying equipment to obtain copies. *If a party other than the P&A system* performs the photocopying or other reproduction of records, it shall provide the photocopies or reproductions to the P&A system within the time frames specified in [the DD Act]. 45 C.F.R. § 1326.25(d) (emphasis added).

DOCCS wrongly describe "a party other than the P&A system" as "third parties" and assert that this provision applies only to "an offsite records facility." Dkt 15-1, p. 12. Instead, the plain language of these Access Regulations state that the P&A "*may* use its own photocopying

equipment," but a party other than the P&A system (DOCCS) must "provide the photocopies or reproductions to the P&A system." *Id.* (emphasis added). The PAIMI Regulations define access in the same way. 42 C.F.R. § 51.41(e)

The fact that the DD and PAIMI provisions specifically allow the service provider to charge the P&A system a fee for copies further supports the plain meaning of the regulation. "If the service provider or its agents copy the records for the P&A system, it may not charge the P&A system an amount that would exceed the amount customarily charged other non–profit or State government agencies for reproducing documents." 45 C.F.R. § 1326.25 (d); 42 C.F.R. § 51.41(e). Clearly, the provision recognizes that the P&A may seek copies of records from a service provider, and when it does, the service provider must comply within the prescribed timelines. Any other interpretation would render this language meaningless. As the Second Circuit has explained, statutory interpretation must "begin with the plain language, giving all undefined terms their ordinary meaning while attempt[ing] to ascertain how a reasonable reader would understand the statutory text, *considered as a whole*." *Deutsche Bank Nat'l Trust Co. v. Quicken Loans Inc.*, 810 F.3d 861, 868 (2d Cir. 2015) (internal quotation marks and citation omitted) (emphasis added); *see Prot. & Advocacy For Pers. With Disabilities*, *Conn. v. Mental Health & Addiction Servs.*, 448 F.3d 119, 124 (2d. Cir. 2006).

Here, the plain language of the statute affords DRNY copies of records within three business days or, in the case of death, one business day, and to fulfill its statutory mandate to investigate abuse and neglect and pursue rights violations. 42 U.S.C. § 15043(a)(2)(J)(i)-(ii). For this reason, Defendants violate the P&A Acts by failing to timely provide Plaintiff with copies of the records it requested.

*3. DOCCS Refuses to Comply with the Timelines Set Forth in the P&A Acts.*

The P&A Acts state that a P&A system shall "have access to all records of . . . any individual who is a client of the system if such individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized the system to have such access." 42 U.S.C. §§ 10805(a)(4)(A) and 15043(a)(2)(I)(i). The undisputed factual record demonstrates that DRNY requested copies of the records of Inmates B through SS after they became clients of the system. Monthie Decl. ¶6. The record also demonstrates that Inmates B through SS signed authorizations to permit DRNY to have access to their records. *See generally* Defendants Bates. Finally, the record shows that DRNY supplied authorizations to DOCCS with the requests for copies of the records. *Id.*

The DD Act requires that DRNY be granted access to records it seeks within three business days of making a request, or, in the case of records pertaining to an individual who has died or whose safety is in immediate jeopardy, within 24 hours of the request. 42 U.S.C. § 15043(a)(2)(J)(i)-(ii). The PAIMI Access Regulations requires that access to these records be provided "promptly." 42 C.F.R. § 51.41(a). The Second Circuit has also upheld these timelines, "[w]here a system is entitled to access to records, such records must be provided to the system 'not later than 3 business days after the system makes a written request for the records involved.'" *State of Connecticut Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ.*, 355 F. Supp. 2d 649, 654, aff'd sb nom. *Connecticut Office of Prot. & Advocacy For Persons With Disabilities v. Hartford Bd. of Educ.*, 464 F.3d 229 (2d Cir. 2006) (*citing* 42 U.S.C. § 15043(J)(I)).

DRNY, without waiving its right to access records within the P&A Act timeframes, provided DOCCS additional time to produce copies of records. *See eg.* Defendants Bates 180-84, 311-15, 331-35. Even so, DOCCS has not provided copies of the requested records to DRNY

within the timeframes set forth in the P&A Acts nor the extended timeline offered by DRNY. In fact, Defendants delay records in two distinct ways, with the cumulative effect of extensive and untenable postponement in production. First, DOCCS fails to provide a timely cost estimate so that DRNY may pay for the cost of copying the records. For Inmates, D, F, G, H, I, J,J, L, M, S, T, V, Y, Z, DD, FF, GG, HH, KK, JJ, delays ranged from 122 business days after DRNY made the P&A Act Request to 20 business days. Charland Decl., Plaintiff Bates 104-06, 120-21, 228.[11] No cost estimate has been provided for the records of Inmates LL, MM, NN, OO, and QQ, even though DRNY made these requests between September and October 2018. Walton Decl. ¶¶ 4, 8, 12, 16; Charland Decl. ¶33. Second, DOCCS delayed access to the records after DRNY issued payment for the records. For Inmates P, O, Y, Q, S, V, X, EE, CC, II, G, H, J, F, D, FF, B, and T, delays ranged from 97 business days after payment was issued to 24 business days. Charland Decl., Plaintiff Bates 96, 108.[12] The above examples demonstrate a pattern of delay both in providing DRNY with the amount DOCCS intends on charging DRNY for the records and with producing copies of records once a payment has been made.

### 4. DOCCS Violates the P&A Acts by Denying DRNY Access to Inmate A's Records

DRNY, through the P&A Acts, is entitled to seek access to the records of individuals who have died. 42 U.S.C. § 10805(a)(4)(B)(iii); 42 U.S.C. § 15043(a)(2)(J)(ii)(II). On January 19, 2016, Inmate A died while in DOCCS' custody. Defendants Bates 003-04. On March 17, 2016, DRNY notified DOCCS that DRNY had received a complaint of abuse or neglect related to Inmate A's death. *Id.* DRNY notified DOCCS that it opened an investigation into the death of Inmate A.

---

[11] *See also* Galea Decl., Plaintiff Bates 058, 061-61, 138-39, 140-42, 154-56; Keegan Decl., Plaintiff Bates 025-27, 110-12, 193-93; Rosenthal Decl., Plaintiff Bates 42-48.
[12] *See also* Galea Decl., Plaintiff Bates 074-76, 085-86, 130-31, 135-37, 144-45, 151-53, 164-68, 170; Williams Decl., Plaintiff Bates 15, 181-84, 186; Rosenthal Decl., Plaintiff Bates 042-48, 049-50, 052-53, 226-27; Nair Decl., Plaintiff Bates 008; Keegan Decl. ¶15.

*Id.* DRNY requested access to Inmate A's records pursuant 42 U.S.C §§ 10805(a)(4)(B); 15043(a)(2)(I)(ii); 29 U.S.C. § 794(e); and N.Y. Exec. Law § 558(b). DRNY specifically asked DOCCS to provide copies of documents including autopsy reports and related documents. Defendants Bates 003-04. DOCCS produced a portion of the records requested and informed DRNY that the autopsy report was not completed at the time of the request. Defendants Bates 006. DOCCS does not dispute they failed to notify DRNY when the autopsy report and updated death certificate became available. Dkt. 15-1 p.8. Notwithstanding, on January 3, 2018, DRNY made a second request for the outstanding records of Inmate A. Defendants Bates 007. DOCCS asserted that DRNY was not entitled to access Inmate A's records without a signed authorization from Inmate A's estate. Landriscina Decl. ¶4, Plaintiff Bates 228-29.

DRNY, through the P&A Acts, is entitled to seek access to the records of individuals who have died without obtaining consent from another party. 42 USC § 15043(a)(2)(J)(ii)(II). The plain language of the P&A Acts state that DRNY must have access to all records of "any individual (including an individual who has died[.]" 42 U.S.C. § 10805(a)(4)(B)(iii).[13] DRNY need not obtain HIPAA authorization from an inmate's estate to obtain records of a deceased inmate. *Office of Protection & Advocacy for Persons with Disabilities v. Armstrong*, 266 F. Supp. 2d 303, 317-19 (D. Conn. 2003) (The P&A system does not need to obtain consent from next of kin to obtain deceased inmates' records).

---

[13] The DD Act requires the P&A system to have immediate access, not later than 24 hours after the system makes such a request, to the records without consent from another party in any case of death of an individual with a developmental disability. 42 U.S.C. § 15043(a)(2)(J)(ii)(II) "In the case of death, no consent from another party is needed...Any individual who dies in a situation in which services, supports, or other assistance are, have been, or may customarily be provided to individuals with developmental disabilities shall, for the purposes of the P&A system obtaining access to the individual's records, be deemed an "individual with a developmental disability." 45 C.F.R. § 1326.25(a)(5).

Defendants now assert, for the first time, that DRNY is not entitled to these records because DRNY did not allege that Inmate A was a person with a "developmental disability" or "has a significant mental illness." This last-minute assertion is unsupported by the record. DRNY made a records request citing directly to the PAIMI, DD, and PAIR Acts. Defendants Bates 3. DOCCS already partially produced the records of Inmate A to DRNY without objection, and these records clearly demonstrate that Inmate A had a significant mental illness. *Id.* at 6. DRNY need not make a threshold showing to obtain the records of people with disabilities. *Ohio Legal Rights Serv. v. Buckeye Ranch, Inc.*, 365 F. Supp. 2d 877, 885 (S.D. Ohio 2005); *See infra (V)(A)(3)*.

*5.  DOCCS Violates the P&A Acts by Failing to Provide Access to Other Information*

DOCCS also denied DRNY access to information it sought about DOCCS' RTF program. Landriscina Decl. ¶9. DOCCS' only basis for denying this information is an assertion that the PAIMI Act only permits access to individual records. Dkt. 15-1 p. 19.  The PAIMI Access Regulations specifically state that the P&A system must have access to "demographic and statistical information relating to a facility." 42 C.F.R. § 51.41(c)(5). DRNY notified DOCCS that it was investigating allegations of abuse and neglect related to DOCCS' operation of Residential Treatment Facilities (RTF). Defendants Bates 011-012. On March 26, 2018, DRNY made a P&A Act request for the demographic and statistical information of DOCCS' RTFs. *Id.*  It is undisputed that DOCCS has denied DRNY access to the requested demographic and statistical information. Defendants Bates 013.

Given the undisputed fact that DOCCS has denied timely access to copies of records, Inmate A's records, and to demographic and statistical information in direct conflict with the P&A Acts and Access Regulations, Plaintiffs are entitled to summary judgment.

**B. DRNY is Entitled to Summary Judgment on its Claims Under 42 U.S.C. § 1983.**

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must establish that a person acting under color of state law deprived him of a federal right. See *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Thomas v Roach*, 165 F.3d 137, 142 (2d Cir. 1999). As discussed, *supra*, Plaintiff has a federal statutory right to prompt access to records in order to pursue its mandate of investigating allegations of abuse and neglect and assist individuals with disabilities. By withholding records, DOCCS has interfered with DRNY's mandate to protect and advocate on behalf of individuals with disabilities and its mandate to investigate incidents of abuse and neglect. Accordingly, Defendants deprived Plaintiff of a federal statutory right. *See Disability Rights New York v. Wise,* 171 F.Supp.3d 54 (N.D.N.Y 2016*); DRNY v. N. Colonie Bd. Of Educ.*, 14-CV-0744, 2016 WL 1122055 (N.D.N.Y. Mar. 21, 2016); *Protection & Advocacy for Persons with Disabilities v. Armstrong*, 266 F. Supp. 2d 303, 312-13 (D. Conn. 2003) (finding § 1983 violation where state agency denied P&A agency access to records requested under PAIMI Act); *Advocacy Ctr. v. Stalder*, 128 F. Supp. 2d 358, 365-66 (M.D. La. 1999) (same). Furthermore, it is undisputed that Defendants acted under color of state law in maintaining DOCCS' unlawful practices. Accordingly, DRNY is entitled to summary judgment on its § 1983 claim.

**C. Plaintiff is Entitled to Declaratory Relief.**

Plaintiff seeks declaratory relief whereby "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "[A] court must entertain a declaratory judgment action: (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."

*Continental Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 734 (2d Cir. 1992) (citing *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969)).

This case arose from a legal dispute between the parties. Plaintiff seeks timely access to records from DOCCS pursuant to the P&A Acts, while Defendants maintain that they do not need to provide copies of records within the timelines prescribed by the P&A Acts and do not have to provide access to demographic and statistical information. The dispute between the parties turns purely on the meaning of the relevant statutes and regulations. Accordingly, a declaratory judgment is necessary to end the controversy and clarify Plaintiff's right to timely access records responsive to its P&A Act requests.

### D. DRNY is Entitled to a Permanent Injunction.

Plaintiff also seeks a permanent injunction. "Generally, to obtain a permanent injunction a party must show the absence of an adequate remedy at law and irreparable harm if the relief is not granted." *N.Y.S. Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1362 (2d Cir. 1989). DOCCS refused to provide DRNY with records relating to Inmate A, delayed access to the records of Inmates B through SS, and denied access to information from DOCCS' RTF program.. Defendants' actions cause irreparable harm by interfering with DRNY's mandate to investigate incidents of abuse and neglect of individuals with mental illness, intellectual, developmental and other disabilities and to provide protection and advocacy services to people with disabilities. *Armstrong*, 266 F. Supp. 2d at 311 (D. Conn. 2003) (finding P&A system would be irreparably harmed if prevented from pursuing its right to access records and granting permanent injunction). Accordingly, DRNY has no adequate remedy other than an injunction granting access to the complete records relating to Inmate A and DOCCS' RTF program.

Furthermore, because Defendants continue to maintain a practice of denying DRNY timely access to copies of records requested pursuant to the P&A Acts, DRNY requires injunctive relief. "To require [DRNY] to always obtain a court order to perform its statutory investigative responsibilities would stifle its mission to provide timely and effective advocacy for those it is charged with protecting." *DRNY v. N. Colonie Bd. Of Educ.*, 14-CV-0744, 2016 WL 1122055, at *9 (N.D.N.Y. Mar. 21, 2016). To prevent further damage to DRNY, and their ability to carry out its duties to protect and advocate for New Yorkers with disabilities now and in the future, Defendants must be enjoined from further delaying requested records, in violation of the P&A Acts. Accordingly, DRNY requests that the Court enjoin DOCCS from (1) delaying access to copies of records beyond the timelines set forth in the P&A Acts and Access Regulations, (2) denying access to copies of records for inmates who have died, and (3) denying access to information requested regarding DOCCS' RTF program. Plaintiff is entitled to this relief because no material facts are in dispute.

## V. ARGUMENTS IN OPPOSITION

Defendants offer seven unsubstantiated arguments to support their motion for summary judgment, which Plaintiff has not addressed above. Dkt. 15-1. Defendants' first three arguments directly contradict the plain language of the P&A Acts and Access Regulations. Dkt. 15-1 pp. 1-19. Defendants' remaining four arguments are all unsupported by law and fact. Dkt. 15-1 pp. 20-25. This Court should deny Defendants' in its entirety and rule in favor of DRNY.

### A. Defendants Interpretation of the P&A Acts is Not Supported by Law

#### 1. The P&A Acts Protects Individuals with All Disabilities

DRNY is not required to allege that the inmates whose records were sought are individuals who have a "developmental disability" or "a significant mental illness or emotional impairment, as determined by a mental health professional qualified under the laws and regulations of the

18

State." Dkt. 15-1 p6-7. The P&A Acts collectively protect people with all types of disabilities. 42 U.S.C. §§ 15043(a)(2)(i) and 10805(a)(4); 29 U.S.C. §§ 794e and 3004(a)(1). The PAIR Act gives DRNY "the same general authorities, including the authority to access records and program income, as are set forth in subtitle C of title I of the Developmental Disabilities Assistance and Bill of Rights Act of 2000 in order to assist individuals who do not qualify for DD Act or PAIMI Act services." 29 U.S.C. § 794e. Likewise, the PAAT Act is directed to the protection and advocacy for people with disabilities to use, maintain, or access assistive technology and services. 29 U.S.C. § 3004(a)(1). Accordingly, DRNY, as the P&A system charged with implementing the DD, PAIMI, PAIR, and PAAT Acts, is charged with protecting and advocating for individuals with all disabilities; this authority is not limited to those with developmental disabilities and mental illness. *Id.* Defendants' incorrectly limit Plaintiff's access authority, and their position has no basis in law.

Furthermore, DRNY does not need to assert a specific disability in order to obtain access to records. In fact, DRNY does not need to make a "threshold showing" that an inmate has a disability to obtain access to records. Courts have consistently held that "P&A systems need not 'make a threshold showing' of mental illness or developmental disability in order to exercise P&A access authority." *Alabama Disabilities Advocacy Program v. SafetyNet Youthcare, Inc.* 2014 WL 7012710 at *8 (S.D. Alabama 2014), *quoting Armstrong, supra* at 315; *see also*, *State of Connecticut Office of Protection and Advocacy for Persons with Disabilities v. Hartford Bd. Of Educ.*, *supra* at 655; *J.H. v. Hinds Cnty., Mississippi*, 2011 WL 3047667, at *3 (S.D. Miss. July 25, 2011); *Michigan Prot. & Advocacy Serv., Inc. v. Miller,* 849 F. Supp. 1202, 1207 (W.D. Mich. 1994); *Protection & Advocacy For Persons With Disabilities v. Armstrong*, 266 F. Supp. 2d 303, 314 (D. Conn. 2003) ("[E]vidence that a facility has previously housed individuals who are mentally ill, as well as evidence that some current residents may be mentally ill is sufficient under

PAIMI to merit access by the P&A."). Indeed, courts have recognized that a requirement of such a threshold would frustrate Congressional intent to have independent P&A's investigate abuse and neglect claims on behalf of people with disabilities. *Armstrong, supra,* 266 F.Supp.2d at 315; *See J.H. Hinds Cty, supra,* WL 2011 at *5 (rejecting defendant's "Catch 22'" position as "inconsistent with the purpose of the P & A statutes" that the [P&A] "lacks sufficient evidence of actual cases of mental illness but denying [P & A] access to residents" to determine whether other cases exist; "reasonable access is allowed to determine whether individuals are covered"); *Kentucky Protection & Advocacy Division v. Hall*, 2001 WL 34792531 at *8 (W.D. Kentucky 2001) ("'[d]emanding a conclusive, individualized showing of developmental disability or mental illness before permitting [access] would reserve to Defendant a gatekeeping function contrary to the specific terms and general purpose of the Acts.'"); *Michigan Protection & Advocacy Service, supra* at 1207 ("[the defendant's] present policy of denying [the P & A] full access prevents the advocacy organization from bringing in their own mental health professionals to ascertain whether any DSS residents do in fact suffer from mental illness … [and] defeats the very purpose of PAMII … to provide effective protection and advocacy services to the mentally ill").

As this Court has previously recognized, a minimal "showing of 'substantial evidence' may suffice in order for the P&A system to fulfill their statutory mandate that the subject individuals have a mental illness or disability." *Disability Rights New York v. N. Colonie Bd. of Educ.*, No. 1:14-CV-0744, 2016 WL 1122055, at *7 (N.D.N.Y. Mar. 21, 2016). DRNY met this burden for all requests for records at issue in this lawsuit. Plaintiff has a legitimate basis to believe that every inmate at issue in this lawsuit is an individual with a disability because each is a client of the system. Monthie Decl. ¶6.

For Inmate A, the basis comes from DRNY's understanding that he was receiving or had received treatment in a mental health housing unit. Defendants Bates 004. The information Plaintiff collected from or about an inmate prior to making a request for records pursuant to the P&A Acts meets the standard set forth by this Court. *DRNY v. N. Colonie Bd. Of Educ*., 14-CV-0744, 2016 WL 1122055 (N.D.N.Y. Mar. 21, 2016).

### 2. *DRNY Need Not Cite to a Specific Statute When Making a P&A Request*

The P&A Acts do not require that DRNY cite to any P&A Act authority when requesting records. Even with no obligation to do so, DRNY provided extensive citations in its letter to DOCCS, including citations to the PAIR Act. *See eg.* Defendants Bates 043. Both the PAIR and PAAT Acts refer to the DD Act for records access authority. 29 U.S.C. §§ 794e and 3004(a)(2). Defendants' delayed objection is wholly without merit.

### 3. *DRNY Properly Requested the Records of B Through SS as Clients of the System*

Inmates B through SS are clients of DRNY. Monthie Decl. ¶6. DRNY notified DOCCS that it was seeking records on behalf of individuals with disabilities and these individuals consented to the access. DRNY also specifically cited to the sections of the P&A Acts and Access Regulations which permit DRNY to access records of "any individual [with a disability] who is a client of the system if such individual…has authorized the system to have such access." *Id.*; 42 U.S.C. §§ 10805(a)(4) and 15043(I); 45 C.F.R. § 1326.25(a); 42 C.F.R. § 51.41(b)(1). The signed authorizations of Inmates B through SS are all that DRNY must provide to DOCCS and no additional showing is required to obtain copies of records.

### B. Defendants' Excuses for Non-Compliance are Not Supported by Law or Fact

#### 1. *Plaintiff's Complaint is Not Moot Upon Defendants' Production of Records*.

DRNY, through this lawsuit, challenges DOCCS' practice of delaying access to copies of records. This practice is on-going. DOCCS has not produced the records of LL, MM, NN, OO,

PP, and QQ, even though DRNY made these requests in August, September and October 2018. Walton Decl. ¶¶ 4, 8, 12, 16; Charland Decl. ¶33. DOCCS has also not produced the records of Y and BB even though DRNY provided payment of these records in July and August 2018. Galea Decl. ¶¶51, 66. DOCCS has not produced all requested records of Inmate A and has denied information about DOCCS' RTF programs. Landriscina Decl. ¶9; Sterling Decl. ¶13.  For this reason, DOCCS' untimely production of records does not make these claims moot.

### 2. *DRNY's Actions did not Influence DOCCS' Production Delays.*

Defendants mischaracterize the facts of DRNY's requests for records of Inmates B, C, D, E, F, G, H, I, J, K, L, M, N, R, V, W Y, CC, FF, and GG. Dkt. 15-1 pp 15-17. Defendants asserts that because they offered access to the requested records at DOCCS' facilities, they did not delay in providing records to DRNY. DRNY is entitled to DOCCS providing what it requested - copies of records within the timeframes prescribed by the P&A Acts. *Supra IV. A 2.*

DOCCS attempts to excuse this delay by asserting that DRNY did not provide payment for these records or timely respond to DOCCS. Dkt. 15-1 pp 14-15. These assertions are baseless. When calculating the length of DOCCS' delays, DRNY has omitted the days DRNY takes to issue checks to Defendants. In fact, DRNY specifically provides DOCCS seven business days to produce cost estimate and two days produce copies after payment for Inmate D. Defendants Bates 043-44. Notwithstanding this additional time, DOCCS provided copies of records of D approximately 31 business days after DRNY issued payment. Williams Decl., Plaintiff Bates 012-14. The same is also true for other Inmates: W (58 business days); Inmate CC (50 business days); Inmate G[14] (37 business days); H and J[15] (36 business days) I (34 business days); F (33 business

_____

[14] A portion of Inmates G's records was produced 34 business days after DRNY issued payment.
[15] A portion of Inmate H's and J's records was produced 34 business days after DRNY issued payment.

days); FF (31 business days); B (26 business days for the first request and 7 business days for the second request); E and GG (18 business days); K (15 business days); V (14 business days); L (12 business days); and R (10 business days) after DRNY made payment. Charland Decl., Plaintiff Bates 96, 108.[16] For Inmate Y, records have not been produced even though DRNY issued a check on April 13, 2018. Galea Decl. ¶51. As the dates provide, DOCCS operate under a practice of providing DRNY untimely copies of records.

DOCCS was timelier in their response to C, K, M, N, but still delayed. DOCCS produced these records 8 business days from the date DRNY issued payment. DOCCS' responses to these requests demonstrate that DOCCS can more timely produce records, despite their many unsupported and unjustified excuses.

### 4. Acting Commissioner Annucci is a Proper Defendant

Acting Commissioner Annucci, named in his official capacity, is an appropriate defendant. A named government official can be sued in their official capacity when "the entity's policy or custom . . . played a part in the violation of federal law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also* Corbett v. Annucci, No. 16-CV-4492 (NSR), 2018 WL 919832, at *6 (S.D.N.Y. Feb. 13, 2018). In a suit where an official is named as a defendant in their official capacity, the agency's "policy or custom" must have played a part in the violation of federal law. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978); *see also Zuk v. Onondaga Cty.*, No. 5:07-CV-732 GTS GJD, 2010 WL 3909524, at *11 (N.D.N.Y. Sept. 30, 2010), aff'd, 471 F. App'x 70 (2d Cir. 2012). A claim for injunctive relief is proper "where the state official has the authority to

---

[16] *See also* Galea Decl., Plaintiff Bates 074-76, 085-86, 130-31, 135-37, 144-45, 151-53, 164-68, 170; Williams Decl., Plaintiff Bates 15, 181-84, 186; Rosenthal Decl., Plaintiff Bates 042-48, 049-50, 052-53, 226-27; Nair Decl., Plaintiff Bates 008; Keegan Decl. ¶15.

perform the required act." *Schallop v. New York State Dept. of Law*, 20 F.Supp.2d 384, 391 (N.D.N.Y. 1998).

The sheer number of records requests at issue in this lawsuit demonstrates that these delays and denials are not outliers, but a part of a custom and practice of Defendant Annucci and the agency he oversees. DRNY established the requisite personal involvement in its pleading to maintain Defendant Annucci as a Defendant because he is responsible for the administration and operations of DOCCS and oversees and manages DOCCS' practice of delaying and denying DRNY copies of the records it requests pursuant to the P&A Acts.

Contrary to Defendant's arguments, naming Acting Commissioner Annucci as a defendant is not duplicative. Dkt. 15-1 pp 20-21. A suit is duplicative when a plaintiff seeks relief in the form of money damages that are recoverable from the government agency. *Escobar v. City of New York*, No. 1:05CV3030-ENV-CLP, 2007 WL 1827414, at *3 (E.D.N.Y. June 25, 2007). Naming Defendant Annucci is appropriate as DRNY is requesting injunctive relief to halt DOCCS from ongoing violations of the P&A Acts. Under Defendant Annucci's oversight, these violations continue.

### 5. The Eleventh Amendment Does Not Bar DRNY's Claims

The Eleventh Amendment does not bar this Court from granting DRNY's request for declaratory and injunctive relief. Acts of state officers that violate the federal constitution or the laws of the United States may be the subject of injunctive or declaratory relief in federal court. *Finch v. New York State Office of Children & Family Servs.*, 499 F.Supp.2d 521, 538 (S.D.N.Y. 2007). In fact, a federal court may grant prospective injunctive relief against a state official "to prevent a continuing violation of federal law." *Ex parte Young*, 209 U.S. 123 (1908); *Green v. Mansour*, 474 U.S. 64, 68 (1985); *Emmons v. City Univ. of New York*, 715 F. Supp. 2d 394, 406–07 (E.D.N.Y. 2010), modified (July 2, 2010). Individuals acting in their official capacity can and

have been sued when an agency official violates the P&A Acts. *See Disability Rights New York v. N. Colonie Bd. of Educ.*, 2016 WL 1122055 (N.D.N.Y. Mar. 21, 2016).

This Court must employ a "'straightforward inquiry' that asks 'whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective'" to determine if Plaintiff's claim for relief is permitted. *Finch*, 499 F. Supp. 2d at 538 (*citing Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Here, where DRNY seeks injunctive and declaratory relief, the prayer for injunctive relief satisfies the "straightforward inquiry" regarding ongoing violation and prospective relief. *Verizon*, 535 U.S. at 645. Furthermore, prospective injunctive relief is appropriate against a state actor in instances when past behaviors are "likely to continue, to the detriment of [Plaintiff]." *Finch*, 499 F. Supp. at 583. DOCCS' policy of denying records and information and delaying copies of records requested by DRNY is longstanding and continual. DRNY has demonstrated that Defendants continue to deny timely access to copies of records and that requested records remain outstanding. The Eleventh Amendment does not bar this Court from ordering the declaratory and injunctive relief Plaintiff seeks in this lawsuit.

## V.   CONCLUSION

For all the foregoing reasons, Plaintiff respectfully asks the Court to enter summary judgment for the Plaintiff.

Dated: December 14, 2018                                    Respectfully submitted,

                                                            /s/Christina Asbee
                                                            DISABILITY RIGHTS NEW YORK
                                                            Christina Asbee, Bar Roll #700345
                                                            725 Broadway, Suite 450
                                                            Albany, New York 12207
                                                            518-432-7861
                                                            518-427-6765 (fax)(not for service)