UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DISABILITY RIGHTS NEW YORK, | ) |
|     Plaintiff, | ) |
| | )    DEPARTMENT OF JUSTICE |
| v. | )    STATEMENT OF INTEREST |
| | ) |
| NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, AND ANTHONY J. ANNUCCI, in his official capacity as the Acting Commissioner of the New York State Department of Corrections and Community Supervision, | ) ) ) ) ) ) ) )    Case No. 1-18-cv-980 (GTS/CFH) |
|     Defendants. | ) |

## **STATEMENT OF INTEREST OF THE UNITED STATES**

The United States respectfully submits its Statement of Interest pursuant to 28 U.S.C § 517,[1] because this litigation involves the proper interpretation and application of the Developmental Disabilities Assistance and Bill of Rights Act of 2000 (the "DD Act"), 42 U.S.C. §§ 15001-15115; and the Protection and Advocacy for Mentally Ill Individuals Act of 1986 (the "PAIMI Act"), 42 U.S.C. §§ 10801-10851 (collectively, "P&A Acts").

The United States addresses whether relevant provisions of the P&A Acts and their implementing regulations require the federally designated protection and advocacy organization ("P&A") to first inspect requested records onsite at a facility before obtaining copies. Neither the applicable statutes, nor their implementing regulations, impose a requirement of onsite inspection and to do so would frustrate the purpose and intent of the statutes. *See* 42 U.S.C

---

[1] Section 517 provides that the "Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." 28 U.S.C. § 517. A submission by the United States pursuant to this provision does not constitute intervention under Rule 24 of the Federal Rules of Civil Procedure.

1

§§ 15043(a)(2)(I) and (J); 45 C.F.R. § 1326.25 (DD Act) and 42 U.S.C. § 10805(a)(4); 42 C.F.R. § 51.41 (PAIMI Act).

Disability Rights New York, the State's P&A, brought this case against the New York State Department of Corrections and Community Services seeking access to records pursuant to the P&A Acts. Compl. 1, ECF No. 1. On September 24, 2019, the Court concluded that as a prerequisite to obtaining copies of records under the DD Act, the P&A organization must first physically inspect the records onsite. Decision and Order 62, ECF. No. 41. The Defendant filed a second motion for summary judgment arguing that the PAIMI Act also requires onsite inspection to access records and that it has not denied the Plaintiff access to records because the Plaintiff has not completed the inspection. Def. Mot. 1, ECF No. 59-4, March 2, 2020. The Plaintiff filed a motion asking the court to reconsider its interpretation of the access provisions of the P&A Acts and their implementing regulations. Plf. Mot. 11, ECF No. 60-1, March 16, 2020.

## ARGUMENT

### A. The P&As Protect and Investigate Abuse and Neglect of Persons with Disabilities.

Requiring physical, onsite inspection of records is not only cumbersome, inefficient, and unnecessary, but it also undermines Congress's clear intent in creating a system of P&As. Congress created a system of independent P&As in response to a history of widespread abuse and neglect of individuals with disabilities and mental illness by the providers charged with their care. *See*, *e.g.*, 42 U.S.C. § 15001(a)(5) and 42 U.S.C. § 10801(a). P&As were established "in each State to protect the legal and human rights of individuals with developmental disabilities," 42 U.S.C. § 15001(b)(2), and "to ensure that the rights of individuals with mental illness are protected." 42 U.S.C. § 10801(b)(1). P&As have broad authority to pursue legal, administrative, and other appropriate remedies, 42 U.S.C. § 15043(a)(2)(A)(i) and 42 U.S.C. § 10805(a)(1)(B),

and to investigate incidents of abuse and neglect of individuals. 42 U.S.C. § 15043(a)(2)(B) and 42 U.S.C. § 10805(a)(1)(A).

### B. The P&A Acts and their Implementing Regulations Do Not Require Pre-Inspection of Records.

To fulfill their investigatory mandate, P&As have broad access to records to investigate suspected abuse or neglect and that access does not require pre-inspection of records. *See* 42 U.S.C §§ 15043(a)(2)(I) and (J) and 42 U.S.C. § 10805(a)(4). The DD Act requires that a P&A organization "shall… have access to all records" of certain individuals including, but not limited to, clients of the P&A. 42 U.S.C. § 15043(a)(2)(I). The DD Act further requires that the P&A must have access "not later than 3 business days after the system makes a written request for the records involved," and within 24 hours in certain circumstances. *Id.* at § 15043(a)(2)(J). The PAIMI Act requires similar access to records. 42 U.S.C. § 10805(a)(4).

Congress directed the Department of Health and Human Services ("HHS") to promulgate regulations interpreting the P&A Acts. 42 U.S.C. §15004(b) and 42 U.S.C. § 10826(b). The HHS regulations—regulations that are entitled to *Chevron* deference—do not impose an inspection requirement on the P&As before obtaining copies of the records. Rather, the P&As may choose to inspect the records, obtain copies, or both. Under the DD Act, the relevant regulations require that:

> A P&A *shall be permitted to inspect and copy information and records*, subject to a reasonable charge to offset duplicating costs. If the service provider or its agents copy the records for the P&A system, it may not charge the P&A system an amount that would exceed the amount customarily charged other non–profit or State government agencies for reproducing documents. At its option, the P&A may make written notes when inspecting information and records, and may use its own photocopying equipment to obtain copies. If a party other than the P&A system performs the photocopying or other reproduction of records, *it shall provide the photocopies or reproductions to the P&A system* within the time frames specified in paragraph (c) of this section. In addition, where records are kept or maintained electronically they shall be provided to the P&A electronically.

45 C.F.R. § 1326.25(d) (emphasis added).  Similarly, the PAIMI Act's regulations require P&As to have prompt access to records, including the ability to "inspect and copy" records.  42 C.F.R. §§ 51.41(a) and (e).  *See also*, *Michigan Prot. & Advocacy Serv., Inc. v. Flint Cmty. Sch.*, 146 F. Supp. 3d 897, 908 (E.D. Mich. 2015) (interpreting "prompt" access as five business days).

To ensure an effective protection and advocacy system, the HHS regulations provide for broad access to records, including actual copies of the records, to enable the P&As to investigate suspected abuse and neglect of persons with disabilities.  Developmental Disabilities Program, 80 Fed. Reg. 44801 (July 27, 2015); Protection and Advocacy of Individuals with Mental Illness, 62 Fed. Reg. 53560 (Oct. 15, 1997) (noting in response to comments that "these regulations do authorize the P&A system to have access to the actual records and to make copies; simply allowing a system to "view" or "inspect" records is not sufficient.").  In providing for this broad access to records, HHS sought to "minimize the amount of resources spent on determining the standards for access, in service of protecting and advocating for the legal and human rights of individuals with developmental disabilities." 80 Fed. Reg. 44801.  Requiring P&As to expend limited resources traveling onsite to facilities across a state is inconsistent with the desire to ensure broad, prompt access while focusing P&A resources on direct protection and advocacy. Indeed, the P&A's representations to this Court of its unsuccessful attempts to gain access to onsite records at two facilities demonstrates the logistical hurdles such a requirement would impose.  Decision and Order 35-37, ECF. No. 41 (summarizing P&A's allegations of delay). Furthermore, grafting such a physical-inspection requirement onto the law will permit the targets of P&A investigations to delay appropriate enforcement efforts.

A district court squarely presented with this issue rejected an analogous argument that would have delayed the P&A from receiving copies of a prisoner's medical records under PAIMI

4

until after a court's *in camera* inspection. *The Advocacy Center v. Stalder*, 128 F. Supp. 2d 358, 366 (M.D. La. 1999). The court held that the *in camera* inspection is "clearly in conflict with the PAIMI Act," which requires that "state agencies such as the Department of Public Safety and Corrections provide ready access to an institution's psychiatric records" and "forcing the [P&A] to obtain a court order every time it seeks to investigate, would, in effect, impede its ability to investigate a claim." *Id*. at 367. As a result, the court concluded that "the authority to investigate would mean nothing and advocacy in the form of investigation would be ineffective." *Id*. The court did not require the P&As to complete an onsite inspection of the records. Rather, the court granted a temporary restraining order, the defendants provided the records to the P&A, and the court enjoined the defendant from "declining to release the records" of inmates in the facility in the future. *Id*. at 363 and 368.

Still other courts considering questions of P&A access have similarly acknowledged the importance of gaining access to records and facilities to investigate abuse and neglect. In *Disability Rights New York v. Wise*, 171 F. Supp. 3d 54, 55 (N.D.N.Y. 2016), a P&A sought access to an investigatory report in the custody of New York State Justice Center for the Protection of People with Special Needs. In granting the P&A access to the report, the Court explained that in order "to carry out the statutory objectives, the PAIMI and DD Acts authorize P & A systems broad access to individuals, facilities, and records." *Id*. at 60. The Court further stated that "[c]learly, the purpose of the statutes weighs in favor of robust disclosure." *Id*. *See also Ctr. For Legal Advocacy v. Hammons*, 323 F.3d 1262, 1270 (10th Cir. 2003) ("[T]he statutory phrase 'all records of ... any individual' is quite broad."); *Ala. Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr.*, 97 F.3d 492, 497 (11th Cir. 1996) (describing the scope of access granted to a P&A organization as broad).

Other courts that have ordered defendants to disclose records to the P&As have not imposed a pre-inspection requirement. *See*, *e.g.*, *Disability Rights Pennsylvania v. Sch. Dist. of Philadelphia*, 377 F. Supp. 3d 482, 487 (E.D. Pa. 2019) (finding that P&A was entitled to access parental contact information independent of access under the Family Educational Rights and Privacy Act and directing school district to provide plaintiff with requested information); *Flint Cmty. Sch.*, 146 F. Supp. 3d at 908 (finding that P&A was entitled to access student educational records and ordering defendants to produce them within the statutorily defined timeframes).

Requiring physical, onsite inspection or records is inconsistent with the P & A Acts, their implementing regulations, and the case law. The P&As have broad authority and a clear mandate to investigate abuse.

## CONCLUSION

For the reasons above, the Court should find that the P&A Acts and their implementing regulations do not impose on P&A organizations a requirement of on-site inspection of records prior to obtaining copies.

Respectfully submitted,

Dated: March 30, 2020

| | |
|---|---|
| ROBERT P. CHARROW<br>General Counsel<br><br>SEAN KEVENY<br>Deputy General Counsel<br>U.S. Department of<br>Health and Human Services<br>200 Independence Ave., S.W.<br>Washington, DC 20201 | ERIC S. DREIBAND<br>Assistant Attorney General<br>Civil Rights Division<br><br>STEVEN H. ROSENBAUM<br>Chief<br><br>REGAN RUSH<br>Deputy Chief<br><br>s/ *Kyle Stock*<br>KYLE STOCK<br>Trial Attorney<br>NM Bar 141653<br>Special Litigation Section<br>Civil Rights Division<br>U.S. Department of Justice<br>150 M Street, N.E.<br>Washington, DC 20002<br>Phone: (202) 532-3880<br>Kyle.Stock@usdoj.gov |

GRANT C. JAQUITH
United States Attorney
Northern District of New York

 s/John D. Hoggan, Jr._____
JOHN D. HOGGAN, JR.
Assistant United States Attorney
Bar Roll No. 511254
United States Attorney's Office
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, New York 12207
Phone: (518) 431-0247
Fax: (518) 431-0386