UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DISABILITY RIGHTS NEW YORK,

                                    Plaintiff,

v.
                                                                    1:18-CV-0980
NEW YORK STATE DEP'T OF CORR. AND                                   (GTS/CFH)
CMTY. SUPERVISION; and ANTHONY J.
ANNUCCI, in his official capacity as the Acting
Comm'r of the New York State Dep't of Corr.
and Cmty. Supervision,

                                    Defendants.
_____

APPEARANCES:                              OF COUNSEL:

DISABILITY RIGHTS NEW YORK                 BRANDY L. L. TOMLINSON, ESQ.
    Counsel for Plaintiff
44 Exchange Boulevard, Suite 110
Rochester, New York 14614

DISABILITY RIGHTS NEW YORK                 CHRISTINA ASBEE, ESQ.
    Counsel for Plaintiff                  JENNIFER J. MONTHIE, ESQ.
725 Broadway, Suite 450
Albany, New York 12207

HON. LETITIA A. JAMES                      BRIAN W. MATULA, ESQ.
Attorney General for the State of New York
    Counsel for Defendants
The Capitol
Albany, New York 12224

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this civil rights action filed by Disability Rights New York

("Plaintiff") against the New York State Department of Corrections and Community

1

Supervision ("DOCCS") and its Acting Commissioner, Anthony Annucci (collectively, "Defendants"), are the following two motions: (1) Defendants' second motion for summary judgment; and (2) Plaintiff's motion for reconsideration of the Court's Decision and Order of September 24, 2019 (the "prior Decision and Order").   (Dkt. Nos. 59, 60.)   For the reasons set forth below, Plaintiff's motion for reconsideration is granted in part and denied in part, and Defendants' second motion for summary judgment is granted in part and denied in part.

## I.  RELEVANT BACKGROUND

### A.  Plaintiff's Claims Surviving the Court's Prior Decision and Order

Generally, liberally construed, Plaintiff's Complaint alleges as follows.   (Dkt. No. 1 [Plf.'s Compl.].)   Plaintiff is the federally designated Protection and Advocacy system ("P&A system") in the State of New York and possesses the right to access certain records pursuant to a number of federal statutes.   (*Id*. at ¶ 1.)   These rights are intended to further Plaintiff's following activities: (1) investigating incidents of abuse and neglect of individuals with disabilities; (2) pursuing administrative, legal, and other appropriate remedies on behalf of those individuals; and (3) providing information and referrals related to programs and services addressing the needs of persons with disabilities.   (*Id*. at ¶ 13.)   Relying on this statutory authority, Plaintiff has made numerous requests for records from DOCCS, and has provided DOCCS a reasonable time frame in which to respond.   (*Id*. at ¶¶ 251-52.)   However, DOCCS has unlawfully denied or delayed Plaintiff's access to the records of numerous inmates held in DOCCS' custody, and one deceased inmate who died while in DOCCS' custody, in violation of one or more of the P&A statutes.   (*Id*.)

Based on these factual allegations, Plaintiff's Complaint asserted four claims: (1) a claim

for relief pursuant to the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), 42 U.S.C. § 15041 et seq.; (2) a claim for relief pursuant to the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. § 10801 et seq.; (3) a claim for relief pursuant to the Protection and Advocacy of Individual Rights Act ("PAIR Act"), 29 U.S.C. § 794e (collectively the "P&A statutes"); and (4) a claim for relief pursuant to the Protection and Advocacy for Assistive Technology Act of 2004 ("PAAT Act"), 29 U.S.C.A. § 3001 et seq.1.   (*Id.* at ¶¶ 253-76.)

As relief, Plaintiff's Complaint requested the following: (1) a declaratory judgment that Defendants have violated Plaintiff's rights under the DD Act, the PAIMI Act, the PAIR Act, the PAAT Act, and 42 U.S.C. § 1983; (2) a declaratory judgment that Defendants have an obligation to ensure that the access rights granted to Plaintiff by the P&A statutes are fully and uniformly implemented; (3) a permanent injunction ordering Defendants to provide timely and complete responses to all outstanding and future record requests made by Plaintiff pursuant to its federally mandated P&A authority; and (4) an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.   (*Id.* at 24.)

Pursuant to the Court's prior Decision and Order, the following claims survived the parties' prior cross-motions for summary judgment: (1) Plaintiff's request for a declaratory judgment that Defendants have violated Plaintiff's rights under the P&A Acts; (2) Plaintiff's claims under the PAIMI Act as to Inmates A, D, L, O, P, Q, S, T, W, X, Y, Z, AA, BB, CC, DD, EE, FF and HH, and the records related to DOCCS' facilitation of RTF services; and (3) Plaintiff's claims under the DD Act and PAIR Act as to Inmates A, B, C, D, E, F, G, H, I, J, K, L, M, N, O, P, Q, R, S, T, U, V, W, X, Y, Z, AA, BB, CC, DD, EE, FF, GG, and HH, and the

3

records related to DOCCS' facilitation of RTF services.   (Dkt. No. 41, at 93-94.)

Further familiarity with the Complaint's factual allegations and surviving legal claims and requests for relief is assumed in this Decision and Order, which is intended primarily for review by the parties.

### B.     Defendants' Second Motion for Summary Judgment

#### 1.     Defendants' Memorandum of Law

Generally, in their memorandum of law, Defendants assert two arguments.   (Dkt. No. 59, Attach. 4 [Defs.' Memo. of Law].)

First, Defendants argue, Plaintiff's remaining claims can and should be decided as a matter of law in Defendants' favor because (a) in its prior Decision and Order, the Court ruled that the right conferred on Plaintiff by the relevant regulation to "inspect and copy" definitively means the right to "inspect then copy," (b) the Court also ruled that such an inspection may be conducted not simply by Plaintiff but by its agent, (c) the Court also ruled that the sole factual issue remaining in the case concerns whether DOCCS served as Plaintiff's agent for purposes of conducting an inspection, (d) since then, Plaintiff has taken the position that DOCCS never served as its agent, and (e) because no inspection by Plaintiff (or its agent) occurred, no obligation arose for Defendants to copy the records in question (either under the DD Act and PAIR Act or the identically worded PAIMI Act).   (*Id*.)

Second, Defendants argue, in the alternative, Plaintiff's claims against Defendant Annucci should be dismissed because, although the Court previously ruled that Plaintiff's claims for "prospective injunctive and declaratory relief" against Defendant Annucci in his official capacity could continue without running afoul of sovereign immunity (Dkt. No. 41, at 52), it

separately ruled that *all* of Plaintiff's claims for prospective injunctive and declaratory relief should be dismissed on the merits (*id*. at 49, 50, 93).   (Dkt. No. 59, Attach. 4.)

### 2.   Plaintiff's Opposition Memorandum of Law

Generally, in its opposition memorandum of law, Plaintiff asserts five arguments (which the Court has combined and reordered for the sake of clarity).   (Dkt. No. 60, Attach. 1 [Plf.'s Opp'n Memo. of Law].)

First, it is legally impossible for DOCCS to be Plaintiff's agent because, under the relevant statutes, Plaintiff must be "independent of any agency in the State which provides treatment or services (other than advocacy services) to individuals with mental illness and with intellectual and developmental disabilities."   (*Id.*)

Second, Plaintiff argues, even if it were legally possible for DOCCS to be Plaintiff's agent, a question of fact would remain with regard to the records required to be provided under the PAIMI Act, because the Court's prior statutory interpretation of the term "inspect and copy" under the regulations of the DD Act and PAIR Act cannot apply to the regulations of the PAIMI Act for three reasons: (a) the latter regulations are differently worded than the former regulations; (b) the PAIMI Act unambiguously and broadly provides Plaintiff "access to all records"; and (c) an agency's interpretation of a statute it is responsible for administering is entitled to deference as long as the interpretation is reasonable, and here the U.S. Department of Health and Human Services ("HHS") has reasonably interpreted the term "inspect and . . . copy" in the Health Insurance Portability and Accountability Act ("HIPAA") to mean "inspect or copy or both."   (*Id.*)

Third, Plaintiff argues, regardless of the Court's statutory interpretation of the term

"inspect and copy" under the regulations of the PAIMI Act, questions of fact would remain with regard to the "prompt[ness]" (and/or "good faith" production) of the records required to be provided under the PAIMI Act, as concluded by the Court on page 94 of its prior Decision and Order.   (*Id.*)

Fourth, Plaintiff argues, regardless of any questions of fact that remain in dispute related to the physical inspection of the records required to be provided under any of the three statutes, questions of fact remain with regard to five other discrete issues, as the Court found on pages 69 and 72 of its prior Decision and Order: (a) whether Defendants were in possession of the requested records regarding Inmate A; (b) whether Defendants were the entity entitled to release the requested records of Inmate A; (c) whether Defendants denied Plaintiff access to the requested records of Inmate A; (d) whether DOCCS provided all of the requested records and information that Plaintiff requested on March 26, 2018; and (e) whether DOCCS denied Plaintiff access to the records and information requested on March 26, 2018.   (*Id.*)

Fifth, Plaintiff argues, its claims against Defendant Annucci should not be dismissed because the Court's prior ruling that Plaintiff's claims for "prospective injunctive and declaratory relief" against Defendant Annucci in his official capacity could continue without running afoul of sovereign immunity effectively precludes the application of its separate rulings (that *all* of Plaintiff's claims for prospective injunctive and declaratory relief should be dismissed on the merits) to Defendant Annucci.   (*Id.*)

### 3.    Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, Defendants assert five arguments (which the Court has also reordered for the sake of clarity).   (Dkt. No. 61 [Defs.' Reply Memo. of

6

Law].)

First, Plaintiff's concession of a lack of an agency relationship between DOCCS and it, combined with its failure to oppose Defendants' motion with regard to its remaining claims under the DD Act, requires the dismissal of all of its remaining claims under the DD Act.   (*Id.*)

Second, Plaintiff has failed to provide any basis for the Court to treat the term "inspect and copy" under the DD Act differently than the identically worded term "inspect and copy" under the PAIMI Act; and Plaintiff's reliance on the term "inspect and copy" in HIPAA regulations is misplaced because, in construing those regulations as containing the right to "inspect or copy or both," HHS in fact relies on subsequent regulatory language stating "inspect[] or . . . copy, or both" and "[t]he covered entity must provide access . . . including . . . mailing the copy of the protected health information at the individual's request."   (*Id.*)

Third, the question of "promptness" (and/or "good faith") identified by Plaintiff is not material because (a) an obligation to provide copies of records under the P&A Acts is conditioned on a prior inspection of those records, and (b) here, Plaintiff has not adduced any admissible record evidence that any such inspection occurred (either by Plaintiff personally or by one of its agents).   (*Id.*)

Fourth, any questions of fact concerning Defendants' fulfillment of its obligation to provide timely copies of Inmate A's records and DOCCS' RTF records are not material for the same reason as stated above: (a) any such obligation is conditioned on a prior inspection of those records, and (b) here, Plaintiff has not adduced any admissible record evidence that any such inspection occurred (either by Plaintiff personally or by one of its agents).   (*Id.*)

Fifth, Plaintiff fails to establish a question of material fact with regard to the claims

remaining against Defendant Annucci, because it ignores the Court's separate ruling that *all* of Plaintiff's claims for prospective injunctive and declaratory relief should be dismissed on the merits.   (*Id.*)

### 4.   Statement of Undisputed Material Facts

The following facts have been asserted and supported with accurate record citations by Defendants in their Statement of Material Facts, and expressly admitted or not denied with a supporting record citation by Plaintiff in its response thereto.   (*Compare* Dkt. No. 59, Attach. 3 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 60. Attach. 3 [Plf.'s Rule 7.1 Response].)

1.   This Court previously found undisputed that (a) with the exception of certain of Inmate A's records, Plaintiff has never been denied physical access to physical files maintained by DOCCS in any of its facilities with regard to the requests identified in the Complaint, and (b) Plaintiff never requested that it be provided with access to the physical files of Inmate A.[1]

2.   This Court previously found that the Complaint does not involve any claims based on a situation where the Plaintiff itself physically inspected records at DOCCS's facilities before identifying pages it wanted copied.

3.   Defendant DOCCS never served as Plaintiff's agent for the purpose of physically inspecting any of the records remaining at issue in this case before requesting that DOCCS copy them.

4.   DOCCS has never served as an agent of Plaintiff for any purpose in connection with the requests or responses remaining at issue in this case.

---

[1]       (*Compare* Dkt. No. 59, Attach. 3, at ¶ 1 [Defs.' Rule 7.1 Statement, asserting a re-characterization of the above-stated facts, but citing record evidence establishing only the above-stated facts] *with* Dkt. No. 60, Attach. 3, at ¶ 1 [Plf.'s Rule 7.1 Response, denying the word "never" in Defendants' re-characterization of the above-stated facts, but citing record evidence establishing the above-stated facts].)

C.     **Plaintiff's Motion for Reconsideration**

1.     **Plaintiff's Memorandum of Law**

Generally, in its memorandum of law, Plaintiff asserts two arguments.   (Dkt. No. 60,

Attach. 1 [Plf.'s Memo. of Law].)

First, Plaintiff argues, because the statutory language of the DD Act unambiguously

provides Plaintiff with "access to all records" without further qualification, Plaintiff need not

physically inspect those records before it demands copies of them from DOCCS.   (*Id*.)

Second, Plaintiff argues, the Court's interpretation of the DD Act regulations (as

requiring the P&A system to conduct an on-site physical inspection before demanding copies)

fails to give appropriate deference to the DD Act's implementing regulations and regulatory

guidance in two respects: (a) the Court's interpretation of the DD Act regulations as requiring the

P&A system to conduct an on-site physical inspection before demanding copies is inconsistent

with the section of the DD Act regulations that requires service providers to produce records to

the P&A in electronic format (without a prior physical inspection by the P&A system) when

those records are available electronically; and (b) this Courts reliance on *Waller v. Bryan,* 16

S.W.3d 770, 772 (Tenn. Ct. App. 1999), both is misplaced and exceeds how HHS interpreted the

DD Act through its implementing regulations.   (*Id*.)

2.     **Defendants' Opposition Memorandum of Law**

Generally, in their opposition memorandum of law, Defendants assert two arguments.

(Dkt. No. 61 [Defs.' Opp'n Memo. of Law].)

First, Defendants argue, Plaintiff's motion is untimely in that it was due within fourteen

days of the Court's prior Decision and Order, the Court never waived that deadline (through

permitting Defendants to brief the narrow issue of the effect of lack of agency), and in any event the new deadline would have been March 2, 2020 (fourteen days before Plaintiff filed its motion).   (*Id.*)

Second, Defendants argue, although Plaintiff's motion relies on the "prevention of manifest injustice" ground for reconsideration, it has pointed to no new cases or facts, or even any new arguments.   (*Id.*)

### 3.   United States' Statement of Interest

Generally, in its statement of interest, the Government asserts two arguments.   (Dkt. No. 62.)

First, the Government argues, requiring the physical inspection of records before recognizing the right to copies of those records not only is inefficient and unnecessary but undermines Congress's clear intent in creating a system of P&As to protect and investigate abuse and neglect of persons with disabilities.   (*Id.*)

Second, the Government argues, the P&A acts and their implementing regulations (as interpreted by other courts) do not require the inspection of records before the existence of the right to copies of those records.   (*Id.*)

### 4.   Defendants' Response to United States' Statement of Interest

Generally, in their response to the United States' Statement of Interest, Defendants argue that the Statement of Interest repeats the same points made by Plaintiff concerning the broad scope of a P&A system's access rights, which is not at issue in this case (given the Court's prior finding that "Defendants typically offered Plaintiff unrestrictive access to review records at the respective facility in their initial responses to Plaintiff's written requests for records"); and the

cases cited by the United States are inapposite.   (Dkt. No. 63.)

## II.      GOVERNING LEGAL STANDARDS

### A.      Motion for Summary Judgment

Because the parties to this action have, in their memoranda of law, demonstrated an accurate understanding of the legal standard governing a motion for summary judgment, the Court will not recite that   well-known legal standard in this Decision and Order, but will direct the reader to the Court's prior Decision and Order (Dkt. No. 41, at 38-41), which accurately recites that legal standard.

### B.      Motion for Reconsideration

Motions for reconsideration proceed in the Northern District of New York under Local Rule 7.1(g) of the Court's Local Rules of Practice.   A court may justifiably reconsider its previous ruling under three circumstances: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice.   *Delaney v. Selsky*, 899 F. Supp. 923, 925 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 [2d Cir. 1983]).   The standard for granting a motion for reconsideration is strict. *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).   A motion for reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257.[2]   Thus, a motion for reconsideration is not to be used for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'"   *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir.

---

[2]      Generally, motions for reconsideration are not granted unless "the moving party can point to controlling decisions or data that the court overlooked–matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."   *Shrader*, 70 F.3d at 257.

1998).   Finally, the deadline for a motion for reconsideration is fourteen (14) days after the entry of the challenged judgment, order, or decree. N.D.N.Y. L.R. 7.1(g).

## III.   ANALYSIS

Because the disposition of Plaintiff's motion for reconsideration could impact the disposition of Defendants' second motion for summary judgment, the Court will begin its analysis by discussing Plaintiff's motion.

### A.   Plaintiff's Motion for Reconsideration

Although the Court finds no error in its prior holding regarding whether DOCCS' failure to review, collate and copy documents in accordance with Plaintiff's amended deadlines under the circumstances violates the P&A Acts (Dkt. No. 41, at 61-67, 93-94), the Court can see how its rationale for that holding, especially if narrowly construed, can be viewed as exceeding its holding.   For this reason, the Court finds that some clarification in its rationale is necessary.

When the Court stated in its prior Decision and Order that it was interpreting the term "inspect and copy" to mean "inspect then copy," it explained that it was "essentially" interpreting the term in that way.   (Dkt. No. 41, at 63.)   What the Court meant by "essentially" was that its interpretation was limited to the circumstances of the case.   Those circumstances, of course, involved general requests by Plaintiff of DOCCS for copies of records within a certain time period without a sufficient identification of the records to avoid the necessity of a search by DOCCS' record custodian.[3]

---

[3]      (Dkt. No. 41, at 61 ["Instead, for each of the requests at issue in the Complaint, Plaintiff requested that DOCCS locate and identify records responsive to its request, provide a page count and cost estimate for reproduction of those records, and produce those copies upon Plaintiff's payment of reasonable costs."]; *see*, *e.g*., Dkt. No. 25, Attach. 10, at 2 [indicating that, with regard to Inmate E, Plaintiff had requested "Medical documentation relating to [him]" and "documentation related to reasonable accommodations for [him]"].)

Because the most obvious solution to this deficiency in Plaintiff's general requests (in the Court's view) would have been a prior inspection of the non-electronic records by Plaintiff or its agent (and the subsequent presentation of those records to DOCCS for copying), the Court stated that it was *essentially* construing the term "inspect and copy" as meaning "inspect then copy." However, that was not the only possible solution to the deficiency.   Other possible solutions might have been (1) a voluntary review and designation of the non-electronic records by the service provider, or (2) even without any inspection or voluntary review/designation, a sufficient identification of the non-electronic records to be copied to enable the custodian of the records to know which records are to be copied after their retrieval (accompanied by payment).

As a result, on page 63 of its Decision and Order, when the Court stated, "In essentially interpreting the term 'inspect and copy' to mean 'inspect then copy,'" the Court should have stated, "In essentially interpreting the term 'inspect and copy' to mean '***inspect and/or copy (upon presentation)***.'"   The Court notes that, under any reasonable construction of the regulatory right to copy non-electronic records oneself or have copies made by a service provider, the three-business-day clock governing the service provider's copying of the non-electronic records does not start running until the service provider has been ***presented*** with the particular records to be copied (whether [1] by the P&A directly, following its own inspection, or [2] through the service provider's retrieval of the records, following a sufficient identification of them by the P&A to enable the retrieval).   *See* 45 C.F.R. § 1326.25(d) ("***A P&A shall be permitted to inspect and copy information and records***, subject to a reasonable charge to offset duplicating costs.   ***If the service provider or its agents copy the records for the P&A system***, it may not charge the P&A system an amount that would exceed the amount customarily

13

charged other non–profit or State government agencies for reproducing documents.   *At its option, the P&A* may make written notes when inspecting information and records, and *may use its own photocopying equipment to obtain copies*.").

Similarly, on page 62 of its Decision and Order, when the Court stated, "Based on the plain language of the regulation, the Court finds that a prerequisite of the P&A system's right to obtain copies of the information and records of an individual is the P&A system's inspection of the information and records," the Court should have stated, "Based on the plain language of the regulation, the Court finds that a prerequisite of the P&A system's right to obtain copies of the information and records of an individual is the P&A system's *sufficient identification* of the information and records *to enable the custodian of the records to know which non-electronic records are to be copied* (as well as the custodian's retrieval of those records)."   (Dkt. No. 41, at 62.)

Finally, on page 63, when the Court stated, "Simply stated, a right of the P&A system to obtain copies of the records of an individual within three business days merely by sending a written demand to the service provider (when neither the P&A system nor the service provider has yet located and gathered, or re-located and re-gathered, those records) is not reasonably set forth in this regulation, based on its plain language," the Court should have stated, "Simply stated, a right of the P&A system to obtain copies of the records of an individual within three business days merely by sending a written demand to the service provider (without there having been either a *sufficient identification* of the records *to enable the custodian of the records to know which non-electronic records are to be copied* or the retrieval of those records) is not reasonably set forth in this regulation, based on its plain language."   (Dkt. No. 41, at 63.)

14

For all of these reasons, Plaintiff's motion for reconsideration is granted to the extent that pages 62 and 63 of Part III.B.6.a. of the Court's prior Decision and Order are hereby amended according to the three above-stated clarifications (which, again, do not affect the disposition of Defendants' first motion for summary judgment).   Otherwise, Plaintiff's motion for reconsideration is denied as both untimely and unsupported by a showing of cause for the reasons stated by Defendants in their opposition memorandum of law.   (Dkt. No. 61.) As to the motion's untimeliness, the Court adds only that, in its Text Order of January 31, 2020, it neither gave Plaintiff leave to move for reconsideration on the Court's "inspect then copy" interpretation nor gave any party leave to move for reconsideration after March 2, 2020.   (Dkt. No. 56.) Here, Plaintiff's motion was filed on March 16, 2020.   (Dkt. No. 60.)

**B.**      **Defendants' Second Motion for Summary Judgment**

         **1.**      **Impact of Plaintiff's Admission that Defendant DOCCS Never Served as Its Agent**

As described above in Part I.B.1. of this Decision and Order, Defendants' first argument in support of their second motion for summary judgment is essentially a four-premise syllogism, ending in a conclusion that, under the circumstances, no obligation arose for Defendants to copy the records in question.

The Court takes issue with two premises of Defendants' syllogism: premise "(a)," stating that the Court previously ruled that the right conferred on Plaintiff by the relevant regulation to "inspect and copy" *definitively* means the right to "inspect then copy"; and premise "(c)," stating that the Court also previously ruled that the *sole* factual issue remaining in the case concerns whether DOCCS served as Plaintiff's agent for purposes of conducting an inspection.

With regard to premise "(a)," as the Court has explained above in Part III.A. of this

15

Decision and Order, when the Court indicated in its prior Decision and Order that it was interpreting the term "inspect and copy" to mean "inspect then copy," it stated that it was "essentially" interpreting the term in that way; it did not set forth a definitive meaning.

More importantly, with regard to premise "(c)," the Court never described the issue in question (whether DOCCS served as Plaintiff's agent for purposes of conducting an inspection) as the *sole* remaining issue, but merely the "threshold" (or beginning) remaining issue. (Dkt. No. 41, at 66-67.) Following issues include whether, even if Defendants were not acting as Plaintiff's agent, they complied with the regulations' requirement that they provide copies (either by placing them in the mail or offering them to Plaintiff for pick up) within three business days (or within whatever extended time period Plaintiff permitted) for purposes of the DD Act and PAIR Act, or "promptly" (and/or in "good faith") for purposes of the PAIMI Act, after obtaining a sufficient identification of the records to know which non-electronic records are to be copied, retrieving those records, and receiving satisfactory payment.[4]

Based on the briefs currently before the Court, the answer to this issue appears unclear, and the Court is not inclined to *sua sponte* scour the voluminous record for that answer. For these reasons, the Court denies this aspect of Defendants' second motion for summary judgment.

### 2.      Plaintiff's Claims Against Defendant Annucci

The only claims against Defendant Annucci that survived the parties' prior cross-motions for summary judgment are Plaintiff's claims under the PAIMI Act, DD Act and PAIR Act as to

---

[4]      The Court notes that the reason for the complexity of the above-described issue is Plaintiff's choice to, rather than simply inspect and designate the records for copying while presenting payment, ask Defendants to search for the records for it (twice no less–the first time in order to report to Plaintiff the number of copies responsive to its request and the cost of those copies, and the second time to again retrieve the records in order to copy them), while extending the three-day regulatory deadline to various degrees.

the inmates specified on page 94 of the Court's prior Decision and Order to the extent that those claims request the first form of declaratory judgment identified by Plaintiff (i.e., a declaratory judgment declaring that Defendants have violated Plaintiff's rights under the relevant P&A statutes).   (*Compare* Dkt. No. 1, at 21, 22, 24 [asserting those claims and request for declaratory judgment against Defendant Annucci] *with* Dkt. No. 41, at 50, 93-84 [not dismissing those claims and request for declaratory judgment against Defendant Annucci].)   All other claims and requests for relief against Defendant Annucci were dismissed.   (Dkt. No. 41, at 49, 50, 93.)

To the extent Defendants argue otherwise, they are mistaken. However, to the extent Defendants request an Order expressly dismissing the other claims against Defendant Annucci, they have shown cause for such an Order.   For these reasons, the Court grants in part, and denies in part, this aspect of Defendants' second motion for summary judgment.

C.     **Conclusion**

To the extent the parties (through focusing on the above-discussed "inspect and copy" language of the regulations) are seeking to establish a protocol for Plaintiff to access DOCCS' non-electronic records of relevant individuals going forward, they are respectfully advised that the Court's rulings might have been different had Plaintiff (1) specifically identified in writing which records it definitely wanted copied (e.g., without first requesting a search and page-estimate), (2) provided (or assured to DOCCS' satisfaction) the necessary payment, and (3) waited the necessary amount of time for DOCCS to retrieve the non-electronic records from relevant locations within each facility, but no later than three business days after DOCCS had received Plaintiff's written request for access, a time limit required by 42 U.S.C. § 15043.[5]

---

[5]      *See* 42 U.S.C. § 15043(a)(2)(J)(i) ("[S]uch system shall . . . have access to the records of individuals . . . not later than 3 business days after the system makes a written request for the records . . . .").

After that retrieval, the three-business-day time period (by the end of which DOCCS had to deposit the copies in the mail) would have started running.

Instead, attempting to shift its costs to another, Plaintiff asked DOCCS to (1) retrieve and review files from several locations within each facility, (2) ascertain what records were responsive to Plaintiff's requests, (3) send an accurate page-count and copying-cost estimate to Plaintiff (with regard to the non-electronic records), (4) wait for confirmation and payment from Plaintiff (during which time DOCCS deemed it most efficient to return the non-electronic files to the relevant locations of each facility), (5) again retrieve and review the files and ascertain the confirmed records, and (6) copy and mail the records.   As indicated above in Part III.A. of this Decision and Order, it is unreasonable to insist, based on the regulatory right to copy non-electronic records oneself or have copies made by a service provider, that the three-business-day clock governing the service provider's copying of non-electronic records starts running before the end of steps (1), (2), (3), (4) or even (5).

Simply stated, the service provider must both know which non-electronic records are to be copied and have those copies in hand before the three-business-day copying clock starts running.   This is especially true where, as here, the service provider is a resource-limited state department charged with segregating from society 48,000 convicted felons.[6]   Plaintiff knows this, of course, which is why it repeatedly extended the three-day deadline.

As a result, it is a question for a jury whether Defendants violated Plaintiff's extended

---

[6]      (Dkt. No. 15, Attach. 3, at ¶¶ 9, 17 [Sheehan Decl., stating, "DOCCS operates 54 correctional facilities . . . responsible for . . . 48,000 inmates . . . .   Our prisons have very limited equipment and technology. . . .   If DRNY decides it wants to pay for the records and submits payment, the DOCCS staff member who provided the page count, . . . [had to] then go back to the physical files and physically make the copies. Due to the lack of technological resources . . . making or storing copies in advance of payment . . . [was] still less practical (since payment . . . [was] optional) than returning to obtain the records from the physical files"].)

deadlines after Plaintiff confirmed its initial requests and assured of its payment and DOCCS'
again retrieved the records.   Also in question is whether DOCCS is likely to ever again comply
with Plaintiff's request to voluntarily review and designate records for copying, given the fact
that it has been sued for its helpfulness; but that question is better left for a renewed settlement
negotiation, which the Court strongly encourages.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for reconsideration (Dkt. No. 60) is **GRANTED in
part** to the extent that pages 62 and 63 of Part III.B.6.a. of the Court's prior Decision and Order
are hereby **AMENDED** according to the three clarifications set forth above in Part III.A. of this
Decision and Order (which do not affect the ultimate disposition of Defendants' first motion for
summary judgment), and **otherwise DENIED**; and it is further

**ORDERED** that Defendants' second motion for summary judgment (Dkt. No. 59) is
**GRANTED in part** such that all claims against Defendant Annucci are **DISMISSED except for**
Plaintiff's claims under the PAIMI Act, DD Act and PAIR Act as to the inmates specified on
page 94 of the Court's Decision and Order of September 24, 2019 (Dkt. No. 41) to the extent that
those claims request the first form of declaratory judgment identified by Plaintiff (i.e., a
declaratory judgment declaring that Defendants have violated Plaintiff's rights under the relevant
P&A statutes), and **otherwise DENIED**.

Dated: November 4, 2020
     Syracuse, New York

Glenn T. Suddaby
Chief U.S. District Judge