**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DISABILITY RIGHTS NEW YORK,

                Plaintiff

        v.

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION, AND ANTHONY J.
ANNUCCI, in his official capacity as the
Acting Commissioner of the New York
State Department of Corrections and
Community Supervision,

                Defendants.

**MEMORANDUM OF LAW IN
SUPPORT OF PLAINTIFF'S
SECOND MOTION FOR
SUMMARY JUDGMENT**

Docket No.    1:18-cv-980
                       (GTS/CFH)

_____

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
SECOND MOTION FOR SUMMARY JUDGMENT**

DISABILITY RIGHTS NEW YORK
Brandy L. L. Tomlinson, Bar Roll No. 519794
Christina Asbee
Jennifer Monthie
44 Exchange Boulevard, Suite 110
Rochester, New York 14614
(518) 432-7861
(585) 348-9823 (fax) (not for service)

## TABLE OF CONTENTS

I.      INTRODUCTION ...............................................................**Error! Bookmark not defined.**

II.     FACTS .............................................................................**Error! Bookmark not defined.**

   A.   The Federal Protection and Advocacy System ..................**Error! Bookmark not defined.**

   B.   DOCCS' Failure to Provide Timely Records ...................................................... 4

   C.   DOCCS' Failure to Provide Copies of Records ................**Error! Bookmark not defined.**

   D.   DOCCS' Policy for Responding to DRNY's Request for Copies of Records ................... 8

   E.   Procedural History ......................................................................................... 8

III.    LEGAL STANDARD ..................................................................................... 10

IV.     ARGUMENT .................................................................................................. 10

   A.   DRNY is Entitled to Summary Judgment on its Claims Under the P&A Acts. ............... 10

      1.   DOCCS Violated the P&A Acts by Failing to Timely Produce Copies of Records...... 11

      2.   DOCCS Violated the P&A Acts by Denying Copies of Records . **Error! Bookmark not defined.**

      3.   DOCCS Violated the P&A Acts by Converting a P&A Act Request into a FOIL
           Request ...............................................................**Error! Bookmark not defined.**

      4.   DRNY is Entitled to Copies of Records Without a Physical Inspection ................ **Error! Bookmark not defined.**

      5.   DOCCS Violated the P&A Acts by Failing to Notify DRNY That it Could Not Timely
           Produce Copies of Records...................................................................................... 21

      6.   Courts Have Repeatedly Rejected Service Providers' Attempts to Limit a P&A
           System's Broad Acces to Records........................................................................... 22

   B.   DRNY is Entitled to Summary Judgment on its Claims Under 42 U.S.C. § 1983........... 24

   C.   DRNY is Entitled to Declaratory Relief ................................................................. 25

   D.   DRNY is Entitled to a Permanent Injunction. ................................................. 25

V.   CONCLUSION....................................................................**Error! Bookmark not defined.**

Plaintiff Disability Rights New York ("DRNY") respectfully submits this Memorandum of Law in support of its Second Motion for Summary Judgment.

## I.   INTRODUCTION

DRNY is entitled to summary judgment on its claims because the New York State Department of Corrections and Community Supervision ("DOCCS"), has denied access to copies of records and failed to provide timely copies of records. The relevant statutes and regulations require DOCCS to provide the records that DRNY requests.

DRNY, the designated Protection and Advocacy ("P&A") agency for the State of New York, commenced this action to enforce its federal rights to copies of records pursuant to the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), 42 U.S.C. §§ 15001-15115; Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. §§ 10801-10827; Protection and Advocacy of Individual Rights Act ("PAIR Act"), 29 U.S.C. § 794e; and the Protection and Advocacy for Assistive Technology Act of 2004 ("PAAT Act"), 29 U.S.C. § 3001 *et seq*. (referred to collectively as the "P&A Acts").

As New York State's designated P&A system, DRNY investigates allegations of abuse, neglect and rights violations of individuals with disabilities.[1] 42 U.S.C. §§ 10805(a) and 15043(c). DRNY has broad authority under the P&A Acts to records. *Id.* This authority includes the right to copies of records of facilities providing care, treatment, and other services for individuals with disabilities, and copies of records of agencies charged with investigating

---

[1] The PAIR and PAAT Acts extend the P&A system's records access authority to all people with disabilities. Through the PAIR and PAAT Acts, a P&A system has the same authority to access records and facilities as set forth in the DD Act, respective of the programs' mandates. 29 U.S.C. §§ 794e(f) and 3004(a).  References herein to "DD Act" also includes the PAIR and PAAT Acts.

allegations of abuse, neglect, or injury occurring at such facilities. 42 U.S.C. §§ 10806 and 15043(a)(2)(I); 42 C.F.R. § 51.41(c); 45 C.F.R. § 1326.25(b).

Pursuant to this authority, DRNY made, and continues to make, requests for copies of records from DOCCS.

## II.   FACTS

### A.  The Federal Protection and Advocacy System

Congress created the P&A system in response to a history of widespread abuse and neglect of individuals with disabilities by the providers charged with their care.  In 1972, Geraldo Rivera exposed the horrific conditions of abuse and neglect at the Willowbrook State School in Staten Island, New York. Willowbrook was an institution that operated to provide care and support to children and adults with intellectual and developmental disabilities. Instead, these children and adults were abused and neglected; subjected to beatings, inappropriate use of restraints, untreated wounds, involuntary medical experimentation, and unsanitary living conditions.

In response to this abuse and neglect, and in recognition that these individuals had no means of seeking redress, Congress passed the DD Act, 42 U.S.C. § 6000 *et seq.* (*repealed and replaced by* 42 U.S.C. § 15001, *et seq.*). Under the DD Act, a state that accepts federal financial assistance for services for individuals with developmental disabilities is required to have "a system to protect and advocate the rights of individuals with developmental disabilities." 42 U.S.C. § 15043(a)(1).

In 1985 Congress enacted the PAIMI Act, 42 U.S.C. § 10801 *et seq.*, to protect and enforce the rights of individuals with mental illness. The PAIMI Act likewise empowers P&A

systems to monitor and investigate allegations of abuse and neglect and, "pursue administrative, legal and other appropriate remedies to ensure the protection of individuals with mental illness" and "the enforcement of the Constitution and Federal and State statutes." 42 U.S.C. § § 10805(a)(1)(B); 10801(b)(2)(A). Congress again directed that the P&A system "shall have access to all records of . . . any individual who is a client of the system if such individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized the system to have such access." 42 U.S.C. § 10805(a)(4)(A).

At all times relevant to this action, DRNY has been the statewide P&A system as designated by the Governor of the State of New York. Exec. Law § 558(b). Plaintiff Bates 232-234.

The P&A Acts charge DRNY, as New York's designated P&A system, with the duty to "investigate incidents of abuse and neglect" of individuals with mental illness or intellectual and developmental disabilities if an incident is reported to DRNY or if DRNY has probable cause to believe that such an incident occurred. 42 U.S.C. 10805(a)(1)(A) and 15043(a)(2)(B). The Acts also authorize DRNY to "pursue administrative, legal, and other appropriate remedies" to ensure the protection of the rights of such individuals with disabilities in New York State. 42 U.S.C. §§ 10805(a)(1)(B) and 15043(a)(2)(A)(i). To allow a P&A system to pursue these objectives, the Acts authorize DRNY to have access to records of persons with disabilities under certain circumstances, including:

1.      all records of any individual with a disability where the P&A system has probable cause to believe the health or safety of the individual is in serious and immediate jeopardy; or in any case of death of the individual with a disability; 42 U.S.C. §§ 15043(a)(2)(J)(ii) and 10805(a)(4)(B); and

2.      all records of an individual with a disability who has authorized the P&A system

to access the individual's records; 42 U.S.C. §§ 15043(a)(2)(I)(i) and 10805(a)(4)(A).

The DD Access Regulations require that "[a] P&A shall be permitted to inspect and copy

information and records" and that a service provider "shall provide the photocopies or

reproductions to the P&A system" not later than three business days after the system makes a

written request for the records and within 24 hours in certain circumstances. 45 C.F.R. §§

1326.25(c)(2);(d).

The PAIMI Access Regulations direct that "[a] P&A shall be permitted to inspect and

copy information and records" promptly. 42 C.F.R. §§ 51.41(a);(e). Promptly has been

interpreted to mean within five business days. *Michigan Prot. & Advocacy Serv., Inc. v. Flint

Cmty. Sch*., 146 F. Supp. 3d 897, 908 (E.D. Mich. 2015).

The P&A Access Regulations require a prompt written explanation for any delay or

denial, within one business day upon the expiration for the timeframe for producing copies. 42

C.F.R. § 51.43; 45 C.F.R. § 1326.25(c).

## B.  DOCCS' Failure to Timely Provide Records

DRNY sent written requests to DOCCS seeking copies of records related to individuals

with disabilities within their care.  Where required by the P&A Acts, DRNY provided signed

releases to DOCCS. SMF ¶¶ 8 (D), 14 (L), 19 (O), 24 (P), 29 (Q), 34 (S), 39 (T), 44 (W), 49 (X),

54 (Y), 59 (Z), 64 (AA), 67 (BB), 74 (CC), 79 (DD), 84 (EE), 89 (FF), and 95 (HH). DOCCS did

not produce copies of records within the timeframe set by the P&A Acts.   DRNY received

copies of the records it sought anywhere from 43 to 190 days after making its written request.

SMF ¶¶ 13 (D), 18 (L), 23 (O), 28 (P), 33 (Q), 38 (S), 43 (T), 48 (W), X (53), 63 (Z), 66 (AA),

78 (CC), 83 (DD), 88 (EE), 94 (FF) and 99 (HH).  DRNY received the records of D 189 days, L

89 days, O 162 days, P 168 days, Q 149 days, S 135 days, T 71 days, W 42 days, X 111 days, Z

105 days, AA 79 days, CC 105 days, DD 115 days, EE 109 days, FF 88 days and HH 91 days

after making its written request. *Id*. This delay was partially attributed to DOCCS' practice of

withholding records until it had completed a page count of the number of records DRNY

requested. DOCCS took from 13 to 133 days to complete its page count for 17 of the records

requests at issue in this case.[2,3]

### C.  DOCCS' Failure to Provide Copies of Records

DRNY is entitled to copies of records it requests when it makes a written request. DRNY

made written requests to DOCCS for the records of A, Y, BB and for records related to DOCCS'

Residential Treatment Facility ("DOCCS' RTF").  DOCCS has not provided copies of these

records to DRNY. SMF ¶¶ 7 (A), 57 (Y), 72 (BB) and 104 (DOCC's RTF).

DOCCS has made several unsupported assertions for withholding these records. DOCCS'

asserts that it withheld Y's records for lack of payment, even though DRNY issued a check on

August 13, 2018. SMF ¶57. DOCCS asserts that it mailed BB's records but failed to provide any

evidence and has refused to resend the records to DRNY.  Kiley Dep. 76-77:1-6, October 5,

2020; Plaintiff Bates 255-256.  DRNY did not received all of the DOCCS' RTF Records it

requested and DOCCS offered no explanation for withholding these records. Kiley Dep. 33:18-

25; 35, October 5, 2020; Plaintiff Bates 252-254.

---

[2] D 133 days, L 55 days, O 15 days, P 13 days, Q 27 days, S 29 days, T 26 days, W 25 days, X 21 days, Y 46 days, Z 86 days, BB 22 days, CC 30 days, DD 83 days, EE 28 days, FF 32 days and HH 68.
[3] DOCCS waived the copying fees for failing to provide an invoice nearly three months after DRNY's request for copies of AA's records. Sheehan Decl., Dkt. 15, Attachment 3 at ¶283.

As such, DRNY is entitled to summary judgment on its claims relating to A, Y, BB and DOCCS' RTF.

**D.  DOCCS' Protocol for Responding to DRNY's Requests for Copies of Records**

DOCCS created an agency-wide protocol for responding to DRNY's P&A records requests. SMF ¶¶3-9; Kiley Dep. 17-19; 28:4-8; 29:1-2, 20-24; 30:4-5; 32:1-6, October 5, 2020; Plaintiff Bates 245-247, 248-51. DOCCS required DRNY to submit all P&A records requests through a central email account. SMF ¶3; Kiley Dep. 17:20-25, October 5, 2020; Plaintiff Bates 245.  Upon receipt of DRNY's written requests, DOCCS sent a response notifying DRNY that the request was received. SMF ¶4; Kiley Dep. 18:1-12, October 5, 2020; Plaintiff Bates 246. DOCCS never produced a written response to DRNY that it needed additional time to produce copies of records. SMF¶¶6-7.  Instead, DOCCS' letters either (1) directed DRNY to go to the facility to obtain the records; (2) acknowledged receipt; or (3) denied the request. *Id*.

Once a P&A request was received, DOCCS assigned the request to an attorney in Counsel's Office. SMF ¶5; Kiley Dep. 18:18-25; 19:1-14, October 5, 2020; Plaintiff Bates 246-47.  The assigned attorney had 30 days from receipt of DRNY's records request to determine how many pages of records DRNY was requesting be copied.  SMF ¶5. DOCCS never notified DRNY that all P&A records requests would require up to 30 days to produce a page count.  Tomlinson Decl. ¶11. DOCCS required that DRNY wait until DOCCS provided a page count before DRNY paid for the records. SMF ¶9. DOCCS did not begin copying the records until after it received payment from DRNY. SMF ¶9. This billing process was created by DOCCS and not DRNY. *Id*. DOCCS failed to produce any evidence to justify delays this process created in the production of records.

**E.  Procedural History**

6

DRNY commenced this action on August 15, 2018 to compel DOCCS to produce records, alleging that DOCCS' failure to timely provide copies of records violated and continues to violate the P&A Acts, their implementing regulations, and 42 U.S.C. § 1983. Dkt. 1. DRNY seeks declaratory and injunctive relief, as well as attorneys' fees. *Id.* DOCCS moved for Summary Judgment on October 19, 2018. Dkt. 15. DRNY opposed DOCCS' motion and cross-moved for Summary Judgment on December 14, 2018.  On September 24, 2019, this Court issued a Decision and Order denying in part and granting in part DOCCS' motion. On March 2, 2020, DOCCS filed a Second Motion for Summary Judgment. Dkt. 59. On March 16, 2020, DRNY opposed DOCCS' motion and cross-moved this Court to reconsider its prior Decision and Order. Dkt. 60. Through the Department of Justice, the United States Department of Health and Human Services ("HHS") filed a Statement of Interest in this case on March 30, 2020.  Dkt. 62. On November 4, 2020, this Court issued a Decision and Order on DOCCS' Second Motion for Summary Judgment and granted DRNY's Motion for Reconsideration in part by clarifying the Court's prior Decision and Order. Dkt. 73.

This Court identified the remaining issue in this case to be "[w]hether, [DOCCS] complied with the regulations' requirements that they provide copies (either by placing them in the mail or offering them to [DRNY] to pick up) within three business days (or within whatever extended time period [DRNY] permitted) for purposes of the DD Act and PAIR Act, or promptly for purposes of PAIMI Act, after obtaining a sufficient identification of the records to know which non-electronic records are to be copied, retrieving those records and receiving satisfactory payment." Dkt. 73 at 16.  This includes the remaining records requests at issue in this case of A, D, L, O, P, Q, S, T, W, X, Y, Z, AA, BB, CC, DD, EE, FF and HH, and the records related to DOCCS' RTF.  Dkt. 41 at 94.

This case is the first of a trio of cases between DRNY and DOCCS about access to records related to individuals with disabilities who are incarcerated in DOCCS' facilities. *See Disability Rights New York v. New York State Dep't of Corrs. and Cmty. Supervision*, 20-CV-1487 (GTS/CFH) ("*DRNY II*") and *Disability Rights New York v. New York State Dep't of Corrs. and Cmty. Supervision*, 1:21-CV-0739 (GTS/CFH) ("*DRNY III*"). The common thread within each case is DOCCS' unjustifiable delays and denials over the past five years of DRNY's access to records it required to fulfill its federal mandates.

## III.     Legal Standard

Summary judgment is appropriate when there is no genuine issue of any material facts, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 492 F.3d 89, 96 (2d Cir. 2007).  The party moving for summary judgment has the burden of establishing "'that no genuine issue of material fact exists and that the undisputed facts establish [a party's] right to judgment as a matter of law.'" *Bowen v. Nat'l R.R. Passenger Corp.*, 363 F. Supp. 2d 370, 373 (N.D.N.Y. 2005) (*quoting Rodriquez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Specific facts must be supported by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "[I]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson at* 248.

## IV.     ARGUMENT

### A.  DRNY is Entitled to Summary Judgment on its Claims Under the P&A Acts

The P&A Acts state that a P&A system shall "have access to all records of ….any individual" with a disability who has authorized such access or who is unable to authorize access if the P&A system received a complaint that he or she has been abused or neglected or has probable cause to believe so. 42 U.S.C. 10805(a)(4) and 15043(a)(2)(I).

The undisputed factual record demonstrates that: (1) DRNY requested the records of A, D, L, O, P, Q, S, T, W, X, Y, Z, AA, BB, CC, DD, EE, FF, HH and DOCCS' RTF Records; (2) DRNY's written requests were made pursuant to the P&A Acts; (3) DOCCS did not produce the requested records within the timelines of the P&A Acts; and (4) DOCCS did not provide a timely written statement to DRNY of the reasons for the delay or denial. This conduct violates the P&A Acts and therefore DRNY is entitled to summary judgment in its favor.

### 1. *DOCCS Violated the P&A Acts by Failing to Timely Produce Copies of Records*

DOCCS violated the P&A Acts and Access Regulations by failing to provide timely copies of D, L, O, P, Q, S, T, W, X, Z, AA, CC, DD, EE, FF, and HH.

There are strict time limits for the provision of records in response to a P&A system's request for access. The DD Act directs that DRNY must have access "not later than three business days after the system makes a written request for the records involved," and in the case of records pertaining to an individual who has died or whose safety is in immediate jeopardy, "not later than 24 hours after the system makes such a request[.]" *State of Connecticut Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ.*, 355 F. Supp. 2d 649, 654, aff'd sb nom. *Connecticut Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ.*, 464 F.3d 229 (2d Cir. 2006) citing 42 U.S.C. § 15043(a)(2)(J)(I). Likewise, the PAIMI Act requires DRNY to have prompt access to the records. 42 C.F.R. §§ 51.41(a);(e). If an entity delays or denies a P&A system's request, the entity must within one

9

business day upon the expiration of the production time frame for copies, provide a written statement of the reasons for the delay or denial. 42 C.F.R. 51.43; 45 C.F.R. 1326.26. The clock starts to run on these strict timelines when the entity receives the P&A system's written request for records. *Id.* Despite this clear, unambiguous language, DOCCS consistently delays producing copies of records to DRNY beyond the time frames established in the P&A Acts.

It is an undisputed fact that DOCCS took between 13 to 133 days after receiving DRNY's written request to produce a written response seeking payment for copies of the records of D, L, O, P, Q, S, T, W, X, Y, Z, BB, CC, DD, EE, FF and HH. SMF¶¶ 11 (D), 16 (L), 21 (O), 26 (P), 31 (Q), 36 (S), 41 (T), 46 (W), 51 (X), 56 (Y), 61 (Z), 69 (BB), 76 (CC), 81 (DD), 86 (EE) 91 (FF) and 97 (HH).  After receiving payment, DOCCS took between 14 to 135 days to provide copies of these records.[4] SMF ¶¶ 13 (D), 18 (L), 23 (O), 28 (P), 33 (Q), 38 (S), 43 (T), 48 (W), 53 (X), 63 (Z), 78 (CC), 83 (DD), 88 (EE), 94 (FF) and 99 (HH).

Instead of complying with federal law, DOCCS adopted a policy which conflicts with the unambiguous language of the P&A Acts. The undisputed records demonstrates that DOCCS created timelines for producing copies of records in clear violation of the P&A Acts. It is for Congress and not DOCCS to specify when a service provider must produce records. *Griffin v. Oceanic Contractors,* 458 U.S. 564, 571 (1982); *see also United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240–41 (1989); Kiley Dep. 28:16-19, October 5, 2020; Plaintiff Bates 248. Kiley Dep. 17-19; 28:4-8; 29:1-2, 20-24; 30:4-5; 32:1-6, October 5, 2020; Plaintiff Bates 245-247-250 and 252.

---

[4] DRNY did not receive the records of Y and BB despite submitting payment. SMF ¶¶ 57-58 (Y) and 70, 72-73 (BB).

DOCCS has also repeatedly claimed that complying with the federal law is burdensome. Yet, after the recent passage of the New York P&A Records Act, 2021 N.Y. Sess. Laws Ch. 755 (McKinney), which directs that copies of records be produced within three business days and under some circumstances one business day, DOCCS has abandoned this position. DOCCS now claims it will timely produce copies of records to DRNY in the format DRNY requests, without charge. Appellant's Opp. Br., 2nd Cir. Dkt. 60 at 38 ("DOCCS intends to comply with the N.Y. P&A Records Act.").

Accordingly, DOCCS' policy of delaying copies of records beyond the strict timelines prescribed by the P&A Acts is unlawful, and DRNY is entitled to summary judgement as to this portion of its claims.

2. *DOCCS Violated the P&A Acts by Denying Copies of Records*

DOCCS violates the P&A Acts by denying DRNY copies of the records of A, Y, and BB.

The undisputed factual record demonstrates that Y and BB are individuals with developmental disabilities. Based upon its authority set forth in the DD Act, DRNY made written request on June 18 for Y and June 20, 2018 for BB. SMF ¶¶ 54 (Y) and 67 (BB). DRNY provided DOCCS payment for the records on August 13 for Y and July 18, 2018 for BB. SMF ¶¶ 57 (Y) and 70 (BB). As of the date of this filing, DOCCS has not produced the records of Y and BB. Tomlinson Decl. at ¶¶19 and 20.

The undisputed factual record shows that A is a person with mental illness. Dkt. 80 at 7-12. Based upon its authority set forth in the PAIMI Act, DRNY made a written request on March 17, 2016 for A's records. SMF ¶1. DRNY followed up with DOCCS on January 3 and 26, 2018 for records it had not received. SMF ¶¶2 and 4.  On January 22, 2018 DOCCS improperly denied DRNY access to A's autopsy report and asserted that DRNY could seek this record from another

11

entity. SMF ¶3 and 7. DOCCS never asserted that the autopsy report was not in its possession. SMF ¶7. DOCCS violates the PAIMI Act by denying DRNY access to A's records because another entity may also have the record. *Disability Rights New York v. Wise,* 171 F. Supp. 3d 54, 61 (N.D.N.Y. 2016).

DRNY is entitled to summary judgement related to this portion of its P&A Act claims.

### 3. *DOCCS Violated the P&A Acts by Converting a P&A Act Request into a FOIL Request*

DRNY's request for copies of RTF records was made pursuant to the P&A Acts. SMF ¶100. DOCCS denied the P&A Acts records request, and unilaterally merged the P&A request into a FOIL request DRNY made March 9, 2018. SMF ¶102. DOCCS offered no explanation or legal authority for merging these request. DOCCS' unilateral treatment of DRNY's request for RTF records pursuant to FOIL is without any factual or legal basis. *Id.*

Any reliance by DOCCS on New York Law (N.Y. Public Officers Law §87, N.Y. Public Health Law § 18, Mental Hygiene Law § 33.13, and N.Y. Public Officers Law § 95(6)(c)) for withholding access is clearly preempted by the P&A Acts. *Wise* at 62. Under the Supremacy Clause of the United States Constitution, federal law, which includes federal regulations, (1) expressly preempt state or local law; or (2) federal law may "occupy the field" of a given area that state law is deemed preempted. *Iowa Prot. & Advoc. Servs., Inc. v. Rasmussen*, 206 F.R.D. 630, 639 (S.D. Iowa 2001). The FOIL Act is preempted by the P&A Acts:

> "If the laws of a State prohibit an eligible system from obtaining access to the records of individuals with mental illness in accordance with section 10805(a)(4) of this title and this section shall not apply to such system before –
>
> (i) the date such system is no longer subject to the prohibition; or
> (ii) the expiration of the 2 year period beginning on May 23, 1986, whichever occurs first."

42 U.S.C. § 10806(b)(2)(C); *Iowa Prot. & Advoc. Servs., Inc.* at 639.

Therefore, after May 23, 1988, the PAIMI Act applies in full, regardless of any state laws. Additionally, Congress unequivocally "occupies the field" regarding the DD and PAIMI Acts' investigatory powers and records access – it has oversight over the P&A system in its checks and balances and as such, the PAIMI and DD Acts preempt state laws. *Iowa Prot. & Advoc. Servs., Inc.* at 639.

This Court firmly rejected DOCCS' privacy argument by adopting the holdings of Circuit Courts and other District Courts. *DRNY II*, Dkt 35 at 19-20; *Advocacy Ctr. v. Stalder*, 128 F. Supp. 2d 358, 367 (M.D. La. 1999); *See Oklahoma Disability Law Ctr., Inc. v. Dillon Family and Youth Svcs.,* 879 F. Supp. 1110, 1112 *(N.D. Okla. 1995); Protection & Advocacy for Persons with Disabilities, Conn. v. Mental Health & Addiction Servs*., 448 F.3d 119, 128 (2d Cir. 2006); *Disability Rights of N. Carolina v. Sprouse*, 17-CV-0197, 2018 WL 3785465, at *4 (W.D.N.C., Aug. 9, 2018); *Matter of Disability Rights Idaho Request for Ada Cnty. Coroner Records Relating to the Death of D.T.*, 168 F. Supp. 3d 1282, 1294.

Given the Court's Decision and Order in *DRNY II* and the undisputed fact that DOCCS withheld information from the records it produced, DRNY is entitled to summary judgement on its PAIMI and DD Act claims. *DRNY II*, Dkt. 35 at 19 and 21.

4. *DRNY is Entitled to Copies of Records Without a Physical Inspection*

DOCCS maintains that it may withhold copies of requested records until DRNY goes to one or more than 44 separate prisons DOCCS' operates and physically tabs the records for copying.[5] Pursuant to this policy, DOCCS will not copy records, even when the records are

---

[5] https://doccs.ny.gov/system/files/documents/2022/04/doccs-fact-sheet-april-2022.pdf (Last visited April 11, 2022).

known to them, by DRNY's written request. This practice is impermissible under the P&A Acts, the Access Regulations and HHS' interpretation of these laws.

The P&A Acts direct the following:

"[T]he State shall have in effect a system to protect and advocate the rights of individuals with [] disabilities…[and] such system shall have the authority to pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of [people with disabilities]…have the authority to investigate incidents of abuse and neglect…have access at reasonable times to any individual [with a disability]…[and] have access to all records of any individual with a [] disability."

42 U.S.C. §§ 15043(a).

"A system established in a State under [the PAIMI Act] to protect and advocate the rights of individuals with mental illness shall . . . have the authority to . . . investigate incidents of abuse and neglect[,] . . . pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the State[,] . . . have access to facilities in the State providing care or treatment[,] . . . [and] have access to all records of [individuals with mental illness.]"

42 U.S.C. § 10805(a).

Read as a whole, this statutory language has only one plain meaning – Congress intended for the P&A system to have broad access to individuals, facilities and records. The statutory provision "have access to all records" must be reviewed in the context of the P&A Acts' overall purpose, "because the same terminology is used elsewhere in a context that makes its meaning clear [and] because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *Pharaohs GC, Inc. v. United States Small Bus. Admin.*, 990 F.3d 217, 227 (2d Cir. 2021) (*citations omitted*); *see also Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984); *Prot. & Advocacy for Pers. With Disabilities, Conn.* at 124. No reasonable reader could conclude that "shall…have access to all

14

records," requires DRNY to conduct an on-site physical inspection of a record. Congress did not

place any limitation on DRNY's access to records beyond what it included in the clear statutory

language. Therefore, DOCCS' requirement that DRNY meet prerequisites beyond what is

required by law runs afoul of the clear and unambiguous intent of Congress. *Chevron* at 843.

Congress also directed HHS to promulgate regulations interpreting the P&A Acts. 42

U.S.C. §§ 15004(b); 10826(b). The regulations promulgated by HHS clearly require DOCCS to

produce copies of records upon written request. DOCCS must also permit DRNY to physically

inspect records upon request.

The HHS regulations do not impose on DRNY an inspection requirement. Rather, DRNY

may choose to inspect the records, obtain copies, or both. Developmental Disabilities Program,

80 Fed. Reg. 44801 (July 27, 2015); Protection and Advocacy of Individuals with Mental Illness,

62 FR 53548-01 (Oct. 15, 1997) (noting in response to comments that "these regulations do

authorize the P&A system to have access to the actual records and to make copies; simply

allowing a system to 'view' or 'inspect' records is not sufficient.").

Under the DD Act, the relevant regulations require that:

"A P&A *shall be permitted to inspect and copy information and records*,
subject to a reasonable charge to offset duplicating costs. If the service
provider or its agents copy the records for the P&A system, it may not
charge the P&A system an amount that would exceed the amount
customarily charged other non–profit or State government agencies for
reproducing documents. At its option, the P&A may make written notes
when inspecting information and records, and may use its own photocopying
equipment to obtain copies. If a party other than the P&A system performs
the photocopying or other reproduction of records, *it shall provide the
photocopies or reproductions to the P&A system* within the time frames
specified in paragraph (c) of this section. In addition, where records are kept
or maintained electronically they shall be provided to the P&A
electronically."

45 C.F.R. § 1326.25(d) (*emphasis added*).

The PAIMI Access Regulations require DRNY to have prompt access to records, including the ability to "inspect and copy" records. 42 C.F.R. § 51.41(a).

HHS' Regulations provide two separate things, that DRNY "shall be permitted to inspect and copy information and records," and does not impose a two-step process to access copies of requested records. 45 C.F.R. § 1326.25(d); 42 C.F.R. § 51.41(e). This Court acknowledged this authority. "[T]he P&A system has a right to request copies of records in writing … So long as the request at issue can be understood by the records custodian, the P&A system has a right to obtain copies of the records it requested within the relevant statutory timeframe. *Id.* at *8-10. *Disability Rts. New York v. New York State Dep't of Corr. & Cmty. Supervision*, No. 121CV0739GTSCFH, 2022 WL 484368, at *8 (N.D.N.Y. Feb. 17, 2022).

DRNY has been forced to engage in protracted litigation after unsuccessful attempts to gain access to onsite records at DOCCS' facilities. DRNY has been forced to file multiple lawsuits against DOCCS for denying DRNY requested records in copy format. *See DRNY II and DRNY III*. DRNY has been forced to travel to DOCCS' correctional facilities with the expectation of being able to inspect records only to learn that the records were moved to another prison in a different part of the state. The COVID-19 Pandemic worsened DRNY's ability to conduct onsite inspection of records –making onsite inspection dangerous for DRNY's clients and staff, as well as people in DOCCS' facilities.[6]

---

[6] Akash Mehta, How New York State Let Covid-19 Run Rampant in Prisons, The Nation (May 24, 2021) https://www.thenation.com/article/society/covid-prison-new-york/; Gwynne Hogan, Data Shows Half of New York's State Prisons Dealing With Large COVID Outbreaks, WNYC (Jan. 19, 2021) https://www.wnyc.org/story/large-covid-19-outbreaks-now-half-new-yorks-stateprisons-data-show/; Christopher J. Eberhart, COVID-19 in New York Prisons: 'Positivity numbers represent a system on fire,' lohud. (Jan. 6, 2021) https://www.lohud.com/story/news/coronavirus/2021/01/06/new-york-prisons-see-spike-incovid-cases-positivity-rates/4142109001/.

HHS' Regulations follow Congress' intent to "minimize the amount of resources spent on determining the standards for access, in service of protecting and advocating for the legal and human rights of individuals with developmental disabilities." 80 Fed. Reg. 44801. DRNY's ability to fulfill its mandates are frustrated by DOCCS' practice of withholding copies of records. Requiring DRNY to expend limited resources traveling to facilities across New York State and litigating the trio of cases currently before this Court is inconsistent with the desire of Congress to ensure broad, prompt access necessary for the P&A system to function as intended.

DOCCS' practice of withholding copies of records until DRNY has conducted a physical inspection prevents DRNY from fulfilling its investigatory responsibilities. *DRNY II*, Dkt. 18 at 10 ("In the absence of a physical inspection, DRNY is not entitled to the production of records by means of a written records request."). It is contrary to the purpose of and authority provided in the P&A Acts and Access Regulations for DRNY to have access to copies of records limited in the manner set forth by DOCCS.

Furthermore, HHS has unequivocally concluded that the P&A Access Regulations, "do not impose an inspection requirement on the P&As before obtaining copies of records. Rather, the P&A system may choose to inspect the records, obtain copies, or both." Dkt. 62 at 3.

A regulatory interpretation by an agency must be given deference by a court when it is the agency's "authoritative" or "official position," "implicate[s] its substantive expertise," and reflects its "fair and considered judgment. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2413-17 (2019); *Auer v. Robbins*, 519 U.S. 452, 457, 461 (1997); *see also Chevron* at 843-44; *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989). HHS' interpretation is not plainly erroneous or inconsistent with the regulations and is the agency's official position. Dkt. 62.[7]

---

[7] The agency's interpretation related to the term "inspect and copy" in the P&A Access Regulations is consistent with official agency guidance related to its sister regulations under the Health Insurance Portability and

The P&A Acts, their implementing regulations, and agency interpretation are all clear. Neither the P&A Acts nor the P&A Access Regulations require a physical inspection of records before DRNY can access the same in copy format, nor do the laws and regulations permit DOCCS to withhold copies of records until this inspection is complete. Considering the broad authority created by Congress with HHS' authority to promulgate regulations, this Court must give HHS' reasonable interpretation of the P&A Acts and Access Regulations deference.

Accordingly, DOCCS' policy of demanding physical inspection before it produces copies of records is unlawful, and DRNY is entitled to summary judgment as to this portion of its claims under the P&A Acts.

5.  *DOCCS Violated the P&A Acts by Failing to Notify DRNY That it Could Not Timely Produce Copies of Records*

DOCCS never notified DRNY that any of the records would be delayed.  If a service provider is not able to produce records timely, it must provide a written explanation for any delay or denial promptly for PAIMI Act requests and within one business day after the expiration of such deadline for all other P&A Act requests. 42 C.F.R. § 51.43; 45 C.F.R. § 1326.26. These regulations provide a mechanism for DOCCS to timely respond to DRNY if they need more time to produce records or if they need more details relating to the requested records to understand the records that DRNY is requesting. The three days begins when DRNY emails DOCCS a written request for records. HHS specifically established the denial/delay notice requirement in

---

Accountability Act ("HIPAA"). HIPAA regulations provide an individual (or their agent) the right to "inspect and copy" their own health records. 45 C.F.R. § 164.524(a)(1) ("[A]n individual has a right of access to inspect and obtain a copy of protected health information…"). HHS has interpreted "inspect and obtain a copy," to mean that "individuals have the right both to inspect and to copy protected health information… and may choose whether to inspect the information, to copy the information, or to do both." Standards for Privacy of Individually Identifiable Health Information, 65 FR 82462-01 at *82556 (2000). HHS's position related to the Access Regulations matches its official position related to the same language in HIPAA regulations, and is entitled to *Auer* deference. *Kisor* at 2416-17.

recognition of the negative consequences a denial or delay would have on the P&A's ability to

fulfill its federal mandate.

> "HHS's Administration on Intellectual and Developmental Disabilities] believes
> that establishing a deadline for providing the written justification denying access
> is necessary in recognition of the consequences of not accessing relevant
> information quickly. This is particularly necessary when there are allegations of
> abuse or neglect, probable cause to believe that the health or safety of the
> individual is in serious and immediate jeopardy, or in the case of a death."

Developmental Disabilities Program, 80 FR 44796-01.

> "[I]t is critical that the P&A be protected from dealing with lengthy denial
> processes[.]

Protection and Advocacy of Individuals with Mental Illness, 62 FR 53548-01.

It is undisputed that DOCCS did not provide DRNY with a written statement of delay for

any of the records requests.[8]  SMF¶¶ 9 (D), 15 (L), 20 (O), 25 (P), 30 (Q), 35 (S), 40 (T), 45 (W),

50 (X), 55 (Y), 60 (Z), 65 (AA), 68 (BB), 75 (CC), 80 (DD), 85 (EE), 90 (FF), 96 (HH). DOCCS

also did not promptly provide DRNY with a written statement of denial to DRNY for the records

of A and DOCCS' RTF Records. SMF¶¶ 2 (A), 230 (DOCCS' RTF).  DOCCS submitted its

written statement denying the records of A 19 days after DRNY's written request. SMF ¶3.

DOCCS failed to provide a prompt written statement of denial for the records relating to

DOCCS' RTF Records when it submitted its denial to DRNY 10 days after DRNY's written

request. SMF ¶101. In its written response, DOCCS notified DRNY it was consolidating

DRNY's P&A request with a pending FOIL request that DRNY submitted for RTF data, thereby

untimely denying DRNY's P&A request. SMF ¶102; Dkt. 41 at 69. Neither of these denials were

---

[8] Whether DOCCS understood the request is not at issue in this case. The delays in record production were in no
way impacted by any misunderstanding related to the sufficiency of DRNY's requests because DOCCS understood
each records request and produced the records or denied for a reason not related to its lack of understanding the
requests.

justifiable or submitted promptly as required by the P&A Acts. The record is clear - DOCCS never provided a timely notice of denial or delay as required by the P&A Acts and failed to produce any evidence to refute this. DRNY is entitled to summary judgment as to this portion of its claims.

6.  *Courts Have Repeatedly Rejected Service Providers' Attempts to Limit a P&A System's Broad Access to Records*

DRNY is entitled to summary judgment because DOCCS' 30 day policy and pre-payment requirement impermissibly limit DRNY's timely access to copies of records

It is undisputed that DOCCS cannot subvert its responsibilities under the P&A Acts and Access Regulations by establishing internal agency policies that prevents DRNY from fulfilling its mandates as New York's P&A system. *See Mississippi Protection & Advocacy System, Inc. v. Cotten*, 929 F.2d 1054, 1058–59 (5th Cir.1991) ("The state cannot satisfy the requirements of [the Act] by establishing a protection and advocacy system which has this authority in theory, but then taking action which prevents the system from exercising that authority."). The record is devoid of any evidence that DOCCS' delays were in any way justified.  DOCCS has offered no facts to support a delay in responding to DRNY's records requests. Delays in producing records were of DOCCS' own creation by choosing to operate under a protocol that violated the access timeframes in the P&A Acts, and far exceeded any extensions to produce records that DRNY agreed to. SMF ¶¶3-9; Kiley Dep. 17-19; 28:4-8; 29:1-2, 20-24; 30:4-5; 32:1-6, October 5, 2020; Plaintiff Bates 245-247, 248-51.

The HHS regulations allow DOCCS to charge a fee but do not permit DOCCS to withhold records beyond the timelines set by the P&A Acts or until it receives payment. DOCCS failed to consider any other payment system which could have expedited payment for records.

20

The DD regulations state "If a party other than the P&A system performs the photocopying or other reproduction of records, it shall provide the photocopies or reproductions to the P&A system within the time frames specified in [the DD Act]." 45 C.F.R. § 1326.25(d).  Under the PAIMI Act, the relevant regulations require that access to copies should be "promptly" provided. 42 C.F.R. § 51.41(a). The Access Regulations are clear that copies of records must be produced under the P&A Act timeframes and cannot be delayed by the imposition of a prepayment requirement.

The undisputed records shows that once DRNY paid for the records, DOCCS took an additional 10 to 141 days to produce copies of the records of D, L, O, P, Q, S, T, W, X, Z, CC, DD, EE, FF, and HH, with the majority of requests taking over 30 days. Dkt. 41 at 74 (D), 78 (L), 80 (O), 81 (P), 82 (Q), 83 (S & T), 85 (W), 86 (X), 87 (Z), 89 (DD), 91 (FF), 92 (HH), 89 (CC), and 90 (EE).  DOCCS has not produced the requested records of BB, despite DRNY making its request on June 20, 2018 and providing payment on July 18, 2018. SMF ¶¶67, 70, 72-73; Tomlinson Decl. ¶19.  DOCCS has also not produced the records of Y despite DRNY making its request on June 18, 2018 and payment on August 13, 2018.  SMF ¶¶54, 57-58. Tomlinson Decl. ¶20. Accordingly, DOCCS' policy of demanding a page count and prepayment before it produced copies of records is unlawful, and DRNY is entitled to summary judgment as to this portion of its claims under the P&A Acts.

## B.  DRNY is Entitled to Summary Judgment on its Claims Under 42 U.S.C. § 1983

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must establish that a person acting under color of state law deprived him of a federal right. *See Gomez v. Toledo,* 446 U.S. 635, 640 (1980); *Thomas v Roach*, 165 F.3d 137, 142 (2d Cir. 1999). Plaintiff has a federal statutory right to prompt access to copies of records in order to pursue its mandate to protect and

advocate for people with disabilities in New York State. *Supra*. Accordingly, Defendant

Annucci, as Acting Commissioner of DOCCS, a New York State agency, and DOCCS, deprived

DRNY of a federal statutory right. *See Protection & Advocacy for Persons with Disabilities v.*

*Armstrong*, 266 F. Supp. 2d 303, 312-13 (D. Conn. 2003) (finding § 1983 violation where state

agency denied P&A agency access to records requested under PAIMI Act); *See also Advocacy*

*Ctr. At* 365-66. Furthermore, it is undisputed that Defendant Annucci, in his capacity as DOCCS'

Acting Commissioner, and DOCCS, as a state agency, acted under color of state law in

maintaining DOCCS' unlawful policies. Accordingly, DRNY is entitled to summary judgment

on its § 1983 claim.

### C.  DRNY is Entitled to Declaratory Relief

DRNY seeks declaratory relief pursuant to 28 U.S.C. § 2201, whereby "any court of the

United States, upon the filing of an appropriate pleading, may declare the rights and other legal

relations of any interested party seeking such declaration, whether or not further relief is or could

be sought." 28 U.S.C. § 2201. "[A] court must entertain a declaratory judgment action: (1) when

the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or

(2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy

giving rise to the proceeding." *Continental Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734 (2d Cir.

1992) (*citing Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969)).

This case arose from a legal dispute between the parties. DRNY seeks timely access to

copies of records from DOCCS pursuant to the P&A Acts. DOCCS maintains the following: that

is may delay copying records beyond the time frames of the P&A Acts in order to conduct a page

count; my delay copying records pending payment; may withhold records until DRNY conducts

22

a physical inspection of the records; and may deny access to records if DRNY may seek those records from a different source. The dispute between the parties turns purely on the meaning of the relevant statutes and regulations. Accordingly, a declaratory judgment is necessary to end the controversy and clarify DRNY's statutory right to timely access copies of requested records. 42 U.S.C. § 10805; 42 U.S.C. § 15043; 29 U.S.C. § 794e(f); 29 U.S.C. § 3002(12).

### D. DRNY is Entitled to Permanent Injunction.

DRNY requests permanent injunctive relief. "Generally, to obtain a permanent injunction a party must show the absence of an adequate remedy at law and irreparable harm if the relief is not granted." *N.Y.S. Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1362 (2d Cir. 1989).

Defendants refused to provide Plaintiff with timely access to copies of the records at issue in this lawsuit, and continues to deny or delay DRNY's access to requested records. DOCCS has also maintained a policy of refusing to provide copies of records until DRNY conducts an onsite inspection of the records it seeks. DOCCS has a protocol permitting it up to 30 days to count the number of pages DRNY seeks copied and that DRNY supplies payment for the records before it releases copies. DOCCS' actions cause irreparable harm by interfering with DRNY's mandate to investigate incidents of abuse and neglect of individuals with disabilities. *Id.*; *Armstrong* at 311 (finding P&A system would be irreparably harmed if prevented from pursuing its right to access records and granting permanent injunction). Accordingly, DRNY has no adequate remedy other than an injunction granting DRNY access to records in copy format as provided under the P&A Acts and Access Regulations.

## V.    CONCLUSION

For all the foregoing reasons, Plaintiff respectfully asks this Court to enter summary judgment in Plaintiff's favor for all remaining issues in this lawsuit.

Dated:  June 3, 2022                          Respectfully submitted,

                                              /s/Brandy L. L. Tomlinson

                                              DISABILITY RIGHTS NEW YORK
                                              Brandy L. L. Tomlinson, Bar Roll No. 519794
                                              Christina Asbee
                                              Jennifer Monthie
                                              44 Exchange Boulevard, Suite 110
                                              Rochester, New York 14614
                                              (518) 432-7861
                                              (585) 348-9823 (fax) (not for service)