UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DISABILITY RIGHTS NEW YORK,

        Plaintiff

   v.

NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, AND ANTHONY J. ANNUCCI, in his official capacity as the Acting Commissioner of the New York State Department of Corrections and Community Supervision,

        Defendants.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' PROPOSED STATEMENT OF MATERIAL FACTS**

Docket No.   1:18-cv-980 (GTS/CFH)

_____

## PLAINTIFF'S RESPONSE TO DEFENDANTS' PROPOSED STATEMENT OF MATERIAL FACTS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rules 7.1 and 56.1, Plaintiff submits its response to Defendants' Statement of Material Facts in support of its Cross-Motion for Summary Judgment:

1. Plaintiff DRNY filed the instant case on August 5, 2018. See dkt. 1. The Amended Complaint, which is the operative pleading in this action, was filed on December 8, 2018. See dkt. 21.

**DRNY's Response**: Admit in part and deny in part.  Admit DRNY filed its case on August 5, 2018. Dkt. 1. Deny that DRNY's Amended Complaint is the "operative pleading" in this case. DRNY filed a motion for leave to file an amended complaint (Dkt. 21) but this Court denied the motion. Dkt. 22.

1

The First Summary Judgment Order

2. Following Defendants' Motion for Summary Judgment dated October 19, 2018 (dkt. 15), Plaintiff cross-moved for summary judgment on December 14, 2018 (dkt. 25).

**DRNY's Response**: Admit.

3. On September 24, 2019, the Court issued its First Summary Judgment Order (dkt. 41), which denied Plaintiff's motion for summary judgment in its entirety, and granted Defendants' motion in part while denying it in part.

**DRNY's Response**: Admit.

4. In the First Summary Judgment Order, the Court (a) granted Defendants' motion for summary judgment as to Plaintiff's request for prospective injunctive relief, and further granted Defendants summary judgment as to Plaintiff's claim seeking declaratory judgment that Defendants are obligated to comply with the access rights granted in the P&A statutes; (b) granted Defendants' motion as to Plaintiff's claims regarding certain inmates under the PAIMI Act; and (c) otherwise denied Defendants' motion. See dkt. 41, at 41-42.

**DRNY's Response**: Deny. The Order speaks for itself.

5. The Court denied Defendants' motion for summary judgment as to Plaintiff's remaining claim for relief, which sought a declaratory judgment that Defendants violated Plaintiff's rights under the P&A statutes. See id., at 50.

**DRNY's Response:** Admit. Dkt. 41 at 93-94.

6. The Court found that Plaintiff's request for declaratory relief in this matter was not barred, to the extent it might "seek to address Defendants' future compliance with the P&A statutes . . ." and that "Plaintiff has sufficiently alleged (and established) . . . that Defendants have not yet provided, and continue to fail to provide, all of the records Plaintiff has requested . . . ." Id., at 45.

**DRNY's Response:** Admit Dkt. 41 contains the quoted text. Deny any inaccurate interpretation because the Decision and Order speaks for itself.

7. In the First Summary Judgment Order, the Court found that, as of the date of that Order, Defendants had produced all records requested by DRNY except as to inmates A, Y, BB, and as to the RTF records. See id., at 47.

**DRNY's Response**: Admit.

8. Accordingly, the Court found that Plaintiff's claims for relief were not moot, as of the date of the First Summary Judgment Order, because there remained "a clear dispute between the parties as to (a) whether Defendants ha[d] provided Plaintiff access to all of the records that ha[d] been requested and (b) what constitutes "access" to records under the P&A statutes . . . ." Id., at 45.

**DRNY's Response:** Admit that DRNY's claims for relief were not moot. The details in the Order speak for themselves.

9. The Court further found that "a prerequisite of the P&A system's right to obtain copies of the information and records of an individual is the P&A system's inspection of the information and records . . . ." Id., at 62.

**DRNY's Response:** Admit Dkt. 41 contains the quoted text. Deny any inaccurate interpretation because the Decision and Order speaks for itself.

10. In making this statement, the Court noted, it was "essentially interpreting the term 'inspect and copy' to mean 'inspect then copy. . . ,'" Id., at 63, and "construing the term 'P&A system' to implicitly mean 'P&A system or its agents. . . .'" Id. at 64.

**DRNY's Response:** Admit Dkt. 41 contains the quoted text. Deny any inaccurate interpretation because the Order speaks for itself.

11. As the Court noted, the claims that remained following the First Summary Judgment Order were Plaintiff's claims under the PAIMI Act, DD Act and PAIR Act as to the inmates specified, to the extent those claims requested a declaratory judgment declaring that Defendants had violated Plaintiff's rights under the relevant P&A statutes. See id., at 93-94.

**DRNY's Response:** Admit that this Court set forth remaining claims at Dk. 41, pp. -94. Deny any inaccurate interpretation because the Order speaks for itself.

<u>The Second Summary Judgment Order</u>

12. Following the issuance of the First Summary Judgment Order, Defendants moved for summary judgment a second time (dkt. 59), and Plaintiff cross-moved for reconsideration of the First Summary Judgment Order (dkt. 60).

**DRNY's Response:** Admit.

13. Briefing of these two motions resulted in this Court's issuance of a Decision and Order on November 4, 2020 (dkt. 73) (the "Second Summary Judgment Order").

**DRNY's Response:** Admit.

14. In the Second Summary Judgment Order, the Court granted in part and denied in part each of the parties' pending motions, and issued three specific clarifications to the First Summary Judgment Order. See dkt. 73.

**DRNY's Response:** Admit.

15. First, the Court noted: As a result, on page 63 of its Decision and Order, when the Court stated, 'In essentially interpreting the term 'inspect and copy' to mean 'inspect then copy,'" the Court should have stated, 'In essentially interpreting the term 'inspect and copy' to mean 'inspect and/or copy (upon presentation).' The Court notes that, under any reasonable construction of the regulatory right to copy nonelectronic records oneself or have copies made by a service provider,

the three-business-day clock governing the service provider's copying of the non-electronic records does not start running until the service provider has been presented with the particular records to be copied (whether [1] by the P&A directly, following its own inspection, or [2] through the service provider's retrieval of the records, following a sufficient identification of them by the P&A to enable the retrieval). Dkt. 73, at 13 (emphasis in original).

**DRNY's Response:** Admit Dkt. 73 contains the quoted text. Deny any inaccurate interpretation because the Order speaks for itself.

16. Second, the Court stated: Similarly, on page 62 of its Decision and Order, when the Court stated, "Based on the plain language of the regulation, the Court finds that a prerequisite of the P&A system's right to obtain copies of the information and records of an individual is the P&A system's inspection of the information and records," the Court should have stated, "Based on the plain language of the regulation, the Court finds that a prerequisite of the P&A system's right to obtain copies of the information and records of an individual is the P&A system's sufficient identification of the information and records to enable the custodian of the records to know which non-electronic records are to be copied (as well as the custodian's retrieval of those records)." (Dkt. No. 41, at 62.) Id., at 14 (emphasis in original).

**DRNY's Response:** Admit Dkt. 73 contains the quoted text. Deny any inaccurate interpretation because the Order speaks for itself.

17. Finally, the Court clarified: [A] right of the P&A system to obtain records of an individual within three business days merely by sending a written demand to the service provider (without there having been either a sufficient identification of the records to enable the custodian of records to know which non-electronic records are to be copied or the retrieval of those records) is not reasonably set forth in this regulation, based on its plain language. Id. (emphasis in original).

**DRNY's Response:** Admit Dkt. 73 contains the quoted text. Deny any inaccurate interpretation because the Order speaks for itself.

Allegedly Disputed Document Productions

18. Based on the Court's findings in the First and Second Summary Judgment Orders, as well as documents produced to DRNY subsequent to those Orders, DOCCS now has produced to DRNY all of the documents in its possession requested by DRNY in its demands. See Shkolnik Declaration, ¶ 20.

**DRNY's Response**: Deny. DOCCS provided the records of Y and BB after DRNY filed its second motion for summary judgment. DRNY has not received all of the requested records relating to DOCCS' RTF. DOCCS did not produce records responsive to category numbers 2-4 in its P&A request. Plaintiff Bates 261.

Inmate A

19. DRNY first requested records pertaining to Inmate A (who is deceased) on March 17, 2016. See Shkolnik Exh. A.

**DRNY's Response:** Admit.

20. On May 5, 2016, DOCCS provided records to DRNY pertaining to Inmate A. At the time DOCCS provided records on May 5, 2016, it included the preliminary certificate of death for Inmate A. See Shkolnik Exh. B.

**DRNY's Response:** Admit.

21. As of May 5, 2016, no autopsy report for Inmate A was available. See Shkolnik Declaration, ¶ 23.

**DRNY's Response:** Deny knowledge or information as to what records DOCCS had in its possession as of May 5, 2016.

22. On January 3, 2018, DRNY requested from DOCCS a copy of the final certificate of death and autopsy report for Inmate A. See Shkolnik Exh. C.

**DRNY's Response:** Admit.

23. On January 22, 2018, DOCCS sent additional correspondence to DRNY, and advised DRNY to contact the "appropriate issuing authorities" for copies of the requested documents. See Shkolnik Exh. D.

**DRNY's Response:** Admit.

24. At the time DRNY made its second request on January 22, 2018, DOCCS was not in possession of the requested documents pertaining to Inmate A. See Shkolnik Exh. E.

**DRNY's Response:** Deny. DRNY lacks knowledge whether or not DOCCS was in possession of the requested documents pertaining to Inmate A as DOCCS did not provide that information in its January 22, 2018 letter to DRNY. Defendant Bates 009.

25. DOCCS advised DRNY on April 29, 2020, in response to DRNY's First Set of Interrogatories, Response #1, that it was not in possession of the requested documents pertaining to Inmate A at the time DRNY made its request. See Shkolnik Exh. E.

**DRNY's Response:** Deny. DOCCS' Counsel in its interrogatory response informed DRNY that they had not received the records of A from DOCCS due to the COVID19 pandemic and that DOCCS had not yet conducted a search for the records:

> "The records of Inmate A have not yet been provided to counsel for DOCCS. There are currently significant delays in the transmission of records from storage as the result of reduced staffing and increased inmate litigation resulting from the current COVID pandemic. As soon as these documents are available, a supplemental response to this Interrogatory indicating whether such documents were received by DOCCS and if so, the dates of receipt, will be provided."

Plaintiff Bates 258. DOCCS also informed DRNY: "DRNY's request for the updated death certificate and autopsy report was forwarded to DOCCS's Counsel's Office for review and

7

response. No DOCCS staff members were involved in retrieving or reviewing the records of Inmate A in response to this request." Plaintiff Bates 259.  The interrogatory response only confirms that DOCCS had not searched the records of A for the requested records, and is silent as to whether DOCCS was in possession of the requested records.

26. DOCCS further stated in response to DRNY's First Set of Interrogatories, Response #1, "As soon as these documents are available, a supplemental response to this Interrogatory indicating whether such documents were received by DOCCS and if so, the dates of receipt, will be provided." See Shkolnik Exh. E.

**DRNY's Response:** Admit in part and deny in part.  Admit DOCCS made this statement.  Deny as to context.  As stated in paragraph 25, this response was in regards to DOCCS' Counsel waiting to receive the records from DOCCS, not that DOCCS was not in possession of the requested records.

27. As of the date of DOCCS's Cross-Motion, DOCCS's internal counsel has certified that DOCCS has no further records responsive to DRNY's January 22, 2018 request pertaining to Inmate A. See Shkolnik Declaration, ¶ 27.

**DRNY's Response:** DRNY lacks sufficient knowledge to either confirm or deny the accuracy of the statement.

Inmate Y

28. DRNY first requested records pertaining to Inmate Y on June 18, 2018. See Shkolnik Exh. F.

**DRNY's Response:** Admit.

29. On July 30, 2018, DOCCS wrote to DRNY indicating that 7 pages pertaining to Inmate Y were available at a total cost of $1.75. See Shkolnik Exh. G.

**DRNY's Response:** Admit DRNY received a letter dated July 30, 2018 from DOCCS on August 3, 2018. Plaintiff Bates 138-139.

30. Based on DRNY's contention, in connection with its current Motion, that it never received the records it previously requested pertaining to Inmate Y, DOCCS produced an additional copy of these records to DRNY on June 23, 2022. See Shkolnik Declaration, ¶ 33.

**DRNY's Response:** Admit that DOCCS emailed the requested records of Y on June 23, 2022. Deny that the documents in the email were "additional copy" of the records because DRNY never received copies prior to June 23, 2022.

Inmate BB

31. DRNY first requested records pertaining to inmate BB on June 20, 2018. See Shkolnik Exh. H.

**DRNY's Response:** Admit.

32. On July 5, 2018, DOCCS wrote to DRNY indicating that 4 pages of records pertaining to Inmate BB were available at a cost of $1.00. See Shkolnik Exh. I.

**DRNY's Response**: Admit.

33. DOCCS provided the requested records pertaining to Inmate BB to DRNY on July 20, 2018. See Shkolnik Exh. J.

**DRNY's Response:** Deny. DRNY did not receive responsive records of BB until June 23, 2022.

34. Based on DRNY's contention, in connection with its current Motion, that it never received the records it previously requested pertaining to Inmate BB, DOCCS produced an additional copy of these records to DRNY on June 23, 2022. See Shkolnik Declaration, ¶ 38.

**DRNY's Response:** Admit that DOCCS emailed the requested records of BB on June 23, 2022. Deny that the documents in the email were "additional copy" of the records because DRNY never received copies prior to June 23, 2022.

RTF Records

35. DRNY first requested records pertaining to RTFs operated by DOCCS in a FOIL request dated March 9, 2018. See Shkolnik Exh. K.

**DRNY's Response:** Admit.

36. In its March 9, 2018 FOIL request, DRNY requested:

1) The total number of Non-SARA inmates who are in an RTF as a result of "Special Condition of Release for a Determinately Sentenced Offender Being Released to Post-Release Supervision (SC37)." This is a request for the number of inmates who are on Post Release Supervision and are in a RTF pending placement in a program or facility of the Office of Mental Health or Office for Persons with Developmental Disabilities. This request is for people who are not affected by the Sexual Assault Reform Act.

2) A complete list of the current facility location of all "Non-SARA" RTF inmates, their housing area, mental health service level, and counties of commitment.

3) The total number of inmates in custody who have passed their Conditional Release date and are in custody pending a placement in a program or facility of the Office of Mental Health or Office for Persons with Developmental Disabilities. See Shkolnik Exh. K.

**DRNY's Response:** Admit.

37. On March 26, 2018, DRNY made a second request to DOCCS under the PAIMI Act. See Shkolnik Exh. L.

**DRNY's Response**: Admit.

10

38. In its March 26, 2018 PAIMI request, DRNY requested:

1) The total number of Non-SARA inmates who have RTF status as a result of "Special Condition of Release for a Determinately Sentenced Offender Being Released to PostRelease Supervision (SC37)." This is a request for the number of inmates who are on Post Release Supervision and have RTF status pending placement in a program or facility of the Office of Mental Health or Office for Persons with Developmental Disabilities. This request is for people who are not affected by the Sexual Assault Reform Act.

2) For each "Non-SARA" RTF inmate referenced in Request #1,

provide the following:

a. current facility location

b. housing area,

c. mental health service level, and

d. county of commitment.

3) The total number of inmates in custody who have passed their Conditional Release or Open Release date and are in custody pending a placement in a program or facility of the Office of Mental Health or Office for Persons with Developmental Disabilities.

4) For each inmate referenced in Request #3, provide the

following:

a. current facility location

b. housing area,

c. mental health service level, and

d. county of commitment.

See Shkolnik Exh. L.

**DRNY's Response:** Admit.

39. Although phrased slightly differently, DRNY's March 9, 2018 FOIL request and its March 26, 2018 PAIMI request were substantively identical. See Shkolnik Declaration, ¶ 43.

**DRNY's Response:** Deny. Category number 4 in the P&A request was not included in the FOIL request and was a request for additional information regarding category number 3 in the P&A request. See *supra* ¶¶36 and 38.

40. On April 5, 2018, DOCCS advised DRNY that its request under the PAIMI Act would be consolidated and processed along with the previously-submitted FOIL request. See Shkolnik Exh. M.

**DRNY's Response:** Admit.

41. On May 11, 2018, DOCCS responded to DRNY's requests and provided the requested records. See Shkolnik Exh. N.

**DRNY's Response**: Deny. DRNY received the records for category number 1 in its P&A request. DRNY did not receive the requested records and information or category numbers 2-4 in its P&A request. Plaintiff Bates 261.

42. On April 29, 2020, in its Response to DRNY's First Set of Interrogatories, Response #3, DOCCS stated that it "provided all records in its possession at the time of the request which were responsive to Plaintiff's March 26, 2018 request for records . . . ." See Shkolnik Exh. E.

**DRNY's Response**: Deny that DOCCS followed that statement with a denial indicating that DOCCS did not conduct a search for the requested records and information:

> "The information and/or data which would have been utilized to formulate answers to the questions posed in Plaintiff's March 26, 2018 would require a manual review of individual inmate records which would have been unduly burdensome. The March 26, 2018 request further provided no indication that DRNY had been acting on

12

behalf of any particular inmate or in response to any specific complaint which would have justified its exercise of authority under the P&A Acts warranting the review of the information or data that may or may not have been contained in the files of individual inmates." Plaintiff Bates 259.

43. In its Response to DRNY's First Set of Interrogatories, Response #3, DOCCS further stated that, as to the statistical and demographic information requested by DRNY, "such 'information' and/or 'data' sought by Plaintiff was not tracked or recorded in the manner sought by Plaintiff in its request . . . ." Id.

**DRNY's Response:** Admit.

The New York Law

44. On February 24, 2022, New York State Governor Kathy Hochul signed into law Access Bill A8710/S7847 (the "New York Law"). See Shkolnik Declaration, ¶ 53.

**DRNY's Response:** The law speaks for itself. Notwithstanding, Admit.

45. The New York Law provides that DRNY "shall have prompt access" to: a facility serving an individual represented by DRNY "that is operated, certified or licensed by any office or agency of the state"; as well as to "books, records and data" pertaining to such individual, or to such a facility serving individuals with disabilities. See Assembly Bill No. 8710; see also Shkolnik Declaration, ¶ 54.

**DRNY's Response:** The law speaks for itself. Notwithstanding, Admit.

46. The New York Law also provides that "[c]opies of records shall be provided to [DRNY] free of charge within three business days of receipt of a written request", or within 24 hours in certain circumstances, and that "[w]here records are kept or maintained electronically they shall be provided to [DRNY] electronically . . . ." Id.; see also Shkolnik Declaration, ¶ 55.

**DRNY's Response:** The law speaks for itself. Notwithstanding, Admit.

47. Finally, the approval memorandum for the Bill states that "if [DRNY's] access is

13

denied or delayed beyond the three day [sic] deadline in the bill, the facilities will provide [DRNY] with a written statement of the reasons for the denials or delays within one business day following the expiration of the deadline." See Assembly Bill No. 8710; see also Shkolnik Declaration, ¶ 56.

**DRNY's Response:** The Approval Memo speaks for itself. Notwithstanding, Admit.

48. The New York Law became effective as of March 26, 2022. See Shkolnik Declaration, ¶ 57.

**DRNY's Response:** The law speaks for itself. Notwithstanding, Admit.

49. Since the effective date of the New York Law, DOCCS has followed the procedures prescribed therein with respect to the provision of documents to DRNY pursuant to DRNY's requests. See id., ¶ 58.

**DRNY's Response:** Deny. DRNY lacks the knowledge as to whether DOCCS is following the New York Law. Notwithstanding, this fact is not material to the claims in the instant lawsuit.

Date: July 13, 2022                           /s/ Brandy L. L. Tomlinson

                                                  DISABILITY RIGHTS NEW YORK
Brandy L. L. Tomlinson, Bar Roll No. 519794
Christina Asbee
Jennifer Monthie
44 Exchange Boulevard, Suite 110
Rochester, New York 14614
(518) 432-7861
(585) 348-9823 (fax) (not for service)