UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DISABILITY RIGHTS NEW YORK,

                            Plaintiff,

v.
                                                          1:18-CV-0980
NEW YORK STATE DEP'T OF CORR. AND                         (GTS/CFH)
CMTY. SUPERVISION; and ANTHONY J.
ANNUCCI, in his official capacity as the Acting
Comm'r of the New York State Dep't of Corr.
and Cmty. Supervision,

                            Defendants.
_____

APPEARANCES:                              OF COUNSEL:

DISABILITY RIGHTS NEW YORK                BRANDY L. L. TOMLINSON, ESQ.
   Counsel for Plaintiff
44 Exchange Boulevard, Suite 110
Rochester, New York 14614

DISABILITY RIGHTS NEW YORK                CHRISTINA ASBEE, ESQ.
   Counsel for Plaintiff                  JENNIFER J. MONTHIE, ESQ.
279 Troy-Schenectady Rd, Suite 9, #236
Rensselaer, New York 12144

HON. LETITIA A. JAMES                     SHANNAN C. KRASNOKUTSKI, ESQ.
Attorney General for the State of New York
   Counsel for Defendants
The Capitol
Albany, New York 12224

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

        Currently before the Court, in this civil rights action filed by Disability Rights New York

("Plaintiff" or "DRNY") against the New York State Department of Corrections and Community

Supervision ("DOCCS") and its Acting Commissioner, Anthony Annucci (collectively,

"Defendants"), are the following two motions: (1) Plaintiff's motion for summary judgment; and (3) Defendants' cross-motion for summary judgment.  (Dkt. Nos. 98, 100.)  For the reasons set forth below, Plaintiff's motion for summary judgment is denied, and Defendant's cross-motion for summary judgment is granted.

## I.     RELEVANT BACKGROUND

### A.     Plaintiff's Claims Surviving the Court's Prior Decisions and Orders

Generally, liberally construed, Plaintiff's Complaint alleges as follows. (Dkt. No. 1 [Plf.'s Compl.].) Plaintiff is the federally designated Protection and Advocacy system ("P&A system") in the State of New York and possesses the right to access certain records pursuant to a number of federal statutes. (*Id*. at ¶ 1.) These rights are intended to further Plaintiff's following activities: (1) investigating incidents of abuse and neglect of individuals with disabilities; (2) pursuing administrative, legal, and other appropriate remedies on behalf of those individuals; and (3) providing information and referrals related to programs and services addressing the needs of persons with disabilities. (*Id*. at ¶ 13.) Relying on this statutory authority, Plaintiff has made numerous requests for records from DOCCS, and has provided DOCCS a reasonable time frame in which to respond. (*Id*. at ¶¶ 251-52.) However, DOCCS has unlawfully denied or delayed Plaintiff's access to the records of numerous inmates held in DOCCS' custody, and one deceased inmate who died while in DOCCS' custody, in violation of one or more of the P&A statutes. (*Id*.)

Based on these factual allegations, Plaintiff's Complaint asserted four claims: (1) a claim for relief pursuant to the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), 42 U.S.C. § 15041 *et seq*., and 42 U.S.C. § 1983 ("Section 1983"); (2) a claim for relief pursuant to the Protection and Advocacy for Individuals with Mental Illness Act of 1986

("PAIMI Act"), 42 U.S.C. § 10801 *et seq*., and Section 1983; (3) a claim for relief pursuant to the Protection and Advocacy of Individual Rights Act ("PAIR Act"), 29 U.S.C. § 794e, and Section 1983; and (4) a claim for relief pursuant to the Protection and Advocacy for Assistive Technology Act of 2004 ("PAAT Act"), 29 U.S.C.A. § 3001 *et seq*., and Section1983 (collectively referring to the DD Act, PAIMI Act, PAIR Act, and PAAT Act as the "P&A statutes")  (*Id*. at ¶¶ 253-76.)

As relief, Plaintiff's Complaint requested the following: (1) a declaratory judgment that Defendants have violated Plaintiff's rights under the DD Act, the PAIMI Act, the PAIR Act, the PAAT Act, and 42 U.S.C. § 1983; (2) a declaratory judgment that Defendants have an obligation to ensure that the access rights granted to Plaintiff by the P&A statutes are fully and uniformly implemented; (3) a permanent injunction ordering Defendants to provide timely and complete responses to all outstanding and future record requests made by Plaintiff pursuant to its federally mandated P&A authority; and (4) an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988. (*Id*. at 24.)

The following claims in Plaintiff's Complaint survived the Court's Decision and Order of September 24, 2019, and its Decision and Order of November 4, 2020: (1) Plaintiff's request for a declaratory judgment that Defendants have violated Plaintiff's rights under the P&A Acts; (2) Plaintiff's claims under the PAIMI Act as to Inmates A, D, L, O, P, Q, S, T, W, X, Y, Z, AA, BB, CC, DD, EE, FF and HH, and the records related to DOCCS' facilitation of RTF services; and (3) Plaintiff's claims under the DD Act and PAIR Act as to Inmates A, B, C, D, E, F, G, H, I, J, K, L, M, N, O, P, Q, R, S, T, U, V, W, X, Y, Z, AA, BB, CC, DD, EE, FF, GG, and HH, and the records related to DOCCS' facilitation of RTF services.  (*Compare* Dkt. No. 1 [Plf.'s

Complaint] *with* Dkt. No. 41 [Decision and Order of Sept. 24, 2019] *and* Dkt. No. 73 [Decision and Order of Nov. 4, 2020].)

Further familiarity with the Complaint's factual allegations and surviving legal claims and requests for relief is assumed in this Decision and Order, which is intended primarily for review by the parties.

### B.   Parties' Briefing on Pending Cross-Motions for Summary Judgment

#### 1.   Plaintiff's Arguments in Its Memorandum of Law

Generally, in support of its motion, Plaintiff asserts four arguments.  (Dkt. No. 98, Attach. 1.)  First, Plaintiff argues, it is entitled to summary judgment on its claims under the P&A Acts because the following facts are undisputed: (a) DOCCS failed to produce copies of the records of Inmates D, L, O, P, Q, S, T, W, X, Z, AA, CC, DD, EE, FF, and HH in a timely fashion (i.e., not later than three business days after receiving a written request from Plaintiff for those records); (b) DOCCS altogether failed to produce copies of the records of Inmates A, Y, and BB despite receiving a written request from Plaintiff for those records; (c) DOCCS improperly converted a P&A Act request into a FOIL request and then did not completely comply with that request (specifically, with regard to Plaintiff's written request for records "related to DOCCS' operation of Residential Treatment Facilities" or "RTFs"); (d) Plaintiff is entitled to copies of records without a prior physical inspection of them, because 42 U.S.C. § 15043(a) grants Plaintiff "access to all records of any individual with a [] disability," 42 U.S.C. § 10805(a) access to all records of [individuals with mental illness]," and 45 C.F.R. § 1326.25(d) provides that DOCCS "shall provide the photocopies or reproductions" to Plaintiff "within the time frames specified in [45 C.F.R. § 1326.25(c)]," which requires "access to records of individuals with developmental disabilities . . . within three business days after the receipt of

such a written request"; (e) DOCCS has failed to, "within one business day," provide Plaintiff

with "a written statement of reasons" when Plaintiff's "access" has been "denied or delayed," in

violation of 45 C.F.R. § 1326.26, and DOCCS failed to "promptly" provide Plaintiff with "a

written statement of reasons" when Plaintiff's "access to . . . records covered by the Act" has

been "delayed or denied" in violation of 42 C.F.R. § 51.43; and (f) courts have repeatedly

rejected service providers' attempts to limit a P&A System's broad access to records.  (*Id*.)

Second, Plaintiff argues, it is entitled to summary judgment on its claims under 42 U.S.C.

§ 1983, because Defendants deprived Plaintiff of a federal statutory right (specifically, its right to

access to records requested under the PAIMI Act).  (*Id*.)

Third, Plaintiff argues, it is entitled to declaratory relief with regard to the following

questions (each of which should be answered in the negative): (a) whether a service provider

may delay copying records beyond the time frames set forth in the P&A Acts in order to conduct

a page count; (b) whether a service provider may delay copying records pending its receipt of

payment for those copies; (c) whether a service provider may withhold records until the P&A

system conducts a physical inspection of the records; and (d) whether a service provider may

deny access to records if the P&A system may seek those records from a different source.  (*Id*.)

Fourth, Plaintiff argues, it is entitled to a permanent injunction with regard to the above-

listed questions  (*Id*.)

### 2.   Defendants' Arguments in Their Combined Opposition Memorandum of Law and Memorandum of Law in Support of Their Cross-Motion

Generally, in opposition to Plaintiff's motion and in support of their cross-motion,

Defendants assert four arguments.  (Dkt. No. 100, Attach. 17.)  First, Defendants argue, this

matter is moot because Plaintiff has received all of the relief it requested from Defendants as to

Inmates "A" through "HH," as well as the RTFs.  (*Id*.)  More specifically, Defendants argue, on

page 47 in its Decision and Order of September 24, 2019 (Dkt. No. 41), the Court found that, as

of the date of that Order, Defendants had produced all records requested by DRNY except as to

Inmates A, Y, and BB, and as to the RTF records.  (Dkt. No. 100, Attach. 17.)  Furthermore,

Defendants argue, based on the facts set forth in Defendants' cross-motion (including the

Declaration of DOCCS Associate Counsel Marat Shkolnik), it is now clear that DOCCS has

produced to Plaintiff all of the responsive records it possesses with respect to each of the above-

described requests.  (*Id*.)  Moreover, Defendants argue, with regard to Plaintiff's improper-

conversion requirement, Plaintiff cites no authority for the point of law that DOCCS erred in

treating one of Plaintiff's P&A requests as a FOIL request under the circumstances; in any event,

DOCCS provided the requested information.  (*Id*.)  Finally, Defendants argue, with regard to

Plaintiff's complete-compliance argument, Plaintiff cites no admissible record evidence from

which a rational fact-finder could conclude that DOCCS violated PAIMI through its response to

Plaintiff's request for records related to RFTs: although 42 C.F.R. § 51.41(c)(5) grants a P&A

system access to "demographic and statistical information relating to the facility . . . ," the

PAIMI Act itself, 42 U.S.C. § 10805(a)(3)-(4), grants a P&A system access to only "facilities"

and "records" ; and each of Plaintiff's outstanding records requests relating to RTFs seeks

tabulations of certain inmates that DOCCS does not currently maintain in document or "record"

form.  (*Id*.)

Second, Defendants argue, to the extent that Plaintiff seeks to prevent the circumstances

that gave rise to this case to recur, that request is moot, because the New York State P&A

Records Access law, Access Bill A8710/S7847, signed into law on February 24, 2022, requires

that "[c]opies of records shall be provided to [DRNY] free of charge within three business days

of receipt of a written request . . . ," and (since the date that law went into effect) Defendants

have complied (and promised to continue to comply) with that requirement.  (*Id*.)  As a result, Defendants argue, Plaintiffs' claims are moot to the extent they request declaratory relief with regard to (a) whether a service provider may delay copying records beyond the time frames set forth in the P&A Acts in order to conduct a page count, (b) whether a service provider may delay copying records pending payment, (c) whether a service provider may withhold records until the P&A system conducts a physical inspection of the records, and (d) whether a service provider may deny access to records if the P&A system may seek those records from a different source. (*Id*.)

Third, Defendants argue, in any event, to the extent Plaintiff retains a live declaratory judgment claim, the Eleventh Amendment bars a claim against the State for non-prospective (i.e., past) relief.  (*Id*.)  Furthermore, Defendants argue, while a limited exception to Eleventh Amendment immunity exists in the context of ongoing violations, that exception does not apply in this case.  (*Id*.)

Fourth, Defendants argue, the following remaining claims advanced by Plaintiff are irrelevant and/or have been previously addressed by this Court: (a) Plaintiff's request to enjoin DOCCS from maintaining its alleged "policy" of withholding records; (b) Plaintiff's claim arising from its alleged entitlement to copies of records without conducting a prior physical inspection of them; and (c) Plaintiff's request for a permanent injunction.  (*Id*.)

### 3.    Plaintiff's Arguments in Its Combined Reply Memorandum of Law and Opposition Memorandum of Law

Generally, in reply with regard to its owns motion and in support of its opposition to Defendants' cross-motion, Plaintiff asserts five arguments.  (Dkt. No. 105.)  First, Plaintiff argues, its P&A Acts claims are not moot, because (a) DOCCS failed to produce copies of the records of Inmates D, L, O, P, Q, S, T, W, X, Z, AA, CC, DD, EE, FF, and HH in a timely

fashion, and (b) DOCCS altogether failed to produce copies of the records of Inmates A, Y, and BB, and records related to DOCCS' RTFs, despite receiving a written request from Plaintiff for those records.  (*Id.*)

Second, Plaintiff argues, the New York State P&A Records Access law does not moot Plaintiff's right to access records under the federal P&A Acts, because (a) this case is about Plaintiff's rights to access copies of records under *federal* law, and (b) the fact that a new state law now provides Plaintiff access to those records does not negate its right to access the records under the P&A Acts (whose regulations specifically contemplate states passing laws consistent with the P&A Acts).  (*Id.*)

Third, Plaintiff argues, it is entitled to a permanent injunction, which is needed to enjoin DOCCS from (a) delaying the production of copies of records until Plaintiff conducts an in-person inspection, and (b) denying copies of records within the timelines prescribed by the P&A Acts or providing a legally permissible reason for the delay.  (*Id.*)

Fourth, Plaintiff argues, it is entitled to declaratory relief, because (a) the undisputed factual record demonstrates that DOCCS has an ongoing practice of withholding and delaying access to copies of records until Plaintiff conducts an onsite physical inspection in violation of federal law, and (b) the Eleventh Amendment does not bar a claim against the State for prospective relief to stop ongoing violations of federal law pursuant to the doctrine of *Ex Parte Young*.  (*Id.*)

Fifth, Plaintiff argues, the case of *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978) (which Defendants rely on to support their argument that Plaintiff is not entitled to obtain copies of records by written request without first having accessed those records) is irrelevant because (unlike *Nixon*) the current action does not arise under the First Amendment.  (*Id.*)

C.     **Parties' Statements of Undisputed Material Facts**

1.     **Plaintiff's Statement of Undisputed Material Facts**

The following facts were asserted and supported with accurate citations by Plaintiff in its Statement of Undisputed Material Facts and expressly admitted, or denied without appropriate record citations, by Defendants in their Response thereto.  (*Compare* Dkt. No. 98, Attach. 2 [Plf.'s Rule 56.1 Statement] *with* Dkt. No. 100, Attach. 16 [Defs.' Rule 56.1 Resp.].)

<u>Agency Regulations</u>

1.     The United States Department of Health and Human Services ("HHS") has promulgated regulations interpreting the DD Act and PAIMI Act and governing activities carried out by Protection & Advocacy ("P&A") Systems, including P&A systems' access to records: 42 C.F.R. § 51.41; and 45 C.F.R. § 1326.25.

2.     The United States has filed a Statement of Interest in this case stating that the aforementioned HHS regulations "do not impose an inspection requirement on the P&As before obtaining copies of the records."

<u>DOCCS' Protocol for Responding to DRNY's P&A Records Requests</u>

3.     In early 2018, Defendants asked Plaintiff to submit all P&A record requests through a central email account.

4.     Upon receipt of an emailed P&A records request, Defendants was to send Plaintiff a "stock letter" in response.

5.     DOCCS' Counsels Office developed a protocol providing that, once an emailed P&A records request was assigned to an attorney in DOCCS' Counsel Office, DOCCS had 30 days to respond to that P&A records request with a page count and cost estimate for copies of the

requested records (although Plaintiff was immediately provided physical access to the originals of those records).

6.     DOCCS' internal protocol for responding to DRNY's emailed P&A records requests did not require DOCCS to provide DRNY with a written statement explaining why copies of records would be delayed or denied.

7.     Subsequently, DOCCS did not provide all of the requested copies of records to DRNY within 30 days of DRNY emailing its requests to DOCCS' Counsel Office (although, again, Plaintiff was immediately provided physical access to the originals of those records).

8.     DOCCS' internal protocol to respond to DRNY's emailed requests for copies of records was based on what DOCCS' Counsels Office deemed "appropriate" and "reasonable."

9.     DOCCS' internal protocol provided that DOCCS would not release the requested copies of records to DRNY without first receiving payment from DRNY for the responsive documents (although, again, Plaintiff was immediately provided physical access to the originals of those records).

<u>DRNY's Requests for Records from DOCCS:</u>

<u>Inmate A</u>

10.     On March 17, 2016, DRNY requested records from DOCCS to investigate the death of Inmate A.

11.     On January 3, 2018, DRNY followed up with DOCCS to request a copy of the final certificate of death and autopsy, in connection with its investigation into the death of Inmate A.

12.     By letter dated January 22, 2018, DOCCS responded to DRNY's records request by stating, "Please contact the appropriate issuing authorities for copies of his autopsy report and death certificate."

13.     By letter dated January 26, 2018, DRNY again made its request for copies of the autopsy report and death certificate.

14.     DOCCS has not provided DRNY with a copy of Inmate A's autopsy report (which was not in its possession).[1]

<u>Inmate D</u>

15.     On March 13, 2018, DRNY requested records from DOCCS relating to Inmate D and provided the authorizations signed by Inmate D.

16.     DOCCS did not provide DRNY with a written statement of the reasons for not providing Inmate D's records within one business day after the expiration of the deadline set forth in DRNY's request.

17.     DRNY did not receive DOCCS' original letter with the cost estimate for Inmate D's records dated March 21, 2018.

18.     On August 3, 2018, DRNY issued a payment for the records requested by DRNY on March 13, 2018, related to Inmate D.

19.     On September 18, 2018, DRNY received the records relating to Inmate D.

<u>Inmate L</u>

20.     On April 20, 2018, DRNY requested records from DOCCS relating to Inmate L and provided the authorizations signed by Inmate L.

---

[1]     (Dkt. No. 100, Attach. 1, at ¶¶ 26-27 [Shkolnik Decl.]; Dkt. No. 100, Attach. 6, at 2-3 [Ex. E to Shkolnik Decl., attaching Defs.' Response to Plf.'s Interrogatory No. 3].)

21.     DOCCS did not provide DRNY with a written statement of the reasons for not providing Inmate L's records within one business day after the expiration of the deadline set forth in DRNY's request.

22.     On June 14, 2018, DRNY received DOCCS' response to its records request. DOCCS response included the cost estimate for the requested records relating to Inmate L.

23.     Between June 28, 2018, and July 9, 2018, DRNY issued payment for the records requested by DRNY related to Inmate L.

24.     On July 17, 2018, DRNY received records responsive to DRNY's records request relating to Inmate L.

<u>Inmate O</u>

25.     On April 24, 2018, DRNY requested records from DOCCS relating to Inmate O and provided the authorizations signed by Inmate O.

26.     DOCCS did not provide DRNY with a written statement of the reasons for not providing Inmate O's records within one business day after the expiration of the deadline set forth in DRNY's request.

27.     On May 21, 2018, DRNY issued payment for the records related to Inmate O.

28.     On October 3, 2018, DRNY received records relating to Inmate O.

<u>Inmate P</u>

29.     On April 24, 2018, DRNY requested records from DOCCS relating to Inmate P and provided the authorizations signed by Inmate P.

30.     DOCCS did not provide DRNY with a written statement of the reasons for not providing Inmate P's records within one business day after the expiration of the deadline set forth in DRNY's request.

31.     On May 21, 2018, DRNY issued payment for the records related to Inmate P.

32.     On October 9, 2018, DRNY received records of Inmate P.

Inmate Q

33.     On April 24, 2018, DRNY requested records from DOCCS relating to Inmate Q and provided the authorizations signed by Inmate Q.

34.     DOCCS did not provide DRNY with a written statement of the reasons for not providing Inmate Q's records within one business day after the expiration of the deadline set forth in DRNY's request.

35.     On May 21, 2018, DRNY received DOCCS' response to its records request. In its response DOCCS provided the cost estimate and page count for the requested records relating to Inmate Q ("there are approximately 32 pages of records that correspond to your request").

36.     On June 4, 2018, DRNY issued payment for the records related to Inmate Q.

37.     On September 20, 2018, DRNY received records of Inmate Q.

Inmate S

38.     On May 22, 2018, DRNY requested records from DOCCS relating to Inmate S and provided the authorizations signed by Inmate S.

39.     DOCCS did not provide DRNY with a written statement of the reasons for not providing Inmate S's records within one business day after the expiration of the deadline set forth in DRNY's request.

40.     On June 20, 2018, DRNY received DOCCS' response to its records request. In its response DOCCS provided the cost estimate and page count for the requested records relating to Inmate S ("approximately 261 pages of records that respond to your request").

41.     On July 12, 2018, DRNY issued payment for the records requested related to Inmate S.

42.     On October 4, 2018, DRNY received records relating to Inmate S.

<u>Inmate T</u>

43.     On May 23, 2018, DRNY requested records relating to Inmate T and provided the authorizations signed by Inmate T.

44.     DOCCS did not provide DRNY with a written statement of the reasons for not providing Inmate T's records within one business day after the expiration of the deadline set forth in DRNY's request.

45.     On June 18, 2018, DRNY received DOCCS' response to its records request. In its response DOCCS provided the cost estimate and page count for the records relating to Inmate T ("there are approximately 21 pages of records that correspond to your request").

46.     On June 28, 2018, DRNY issued payment for the records related to Inmate T.

47.     On August 2, 2018, DRNY received records relating to Inmate T.

<u>Inmate W</u>

48.     On June 14, 2018, DRNY requested records relating to Inmate W and provided the authorizations signed by Inmate W.

49.     DOCCS did not provide DRNY with a written statement of the reasons for not providing Inmate W's records within one business day after the expiration of the deadline set forth in DRNY's request.

50.     On July 9, 2018, DRNY received DOCCS' response to its records request. In its response DOCCS provided the cost estimate and page count for the requested records relating to Inmate W ("there are approximately 11 pages of records that correspond to your request").

51.     On July 12, 2018, DRNY issued payment for the records requested related to Inmate W.

52.     On July 26, 2018, DRNY received the records relating to Inmate W.

<u>Inmate X</u>

53.     On June 14, 2018, DRNY requested records relating to Inmate X and provided the authorizations signed by Inmate X.

54.     DOCCS did not provide DRNY with a written statement of the reasons for not providing Inmate X's records within one business day after the expiration of the deadline set forth in DRNY's request.

55.     On July 5, 2018, DRNY received DOCCS' response to its records request. In its response DOCCS provided the cost estimate and page count for the requested records relating to Inmate X ("approximately 83 pages of records that respond to your request").

56.     On July 12, 2018, DRNY issued payment for the records related to Inmate X.

57.     On October 3, 2018, DRNY received the records relating to Inmate X.

<u>Inmate Y</u>

58.     On June 18, 2018, DRNY requested records from DOCCS relating to Inmate Y and provided the authorizations signed by Inmate Y.

59.     DOCCS did not provide DRNY with a written statement of the reasons for not providing Inmate Y's records within one business day after the expiration of the deadline set forth in DRNY's request.

60.     On August 3, 2018, DRNY received DOCCS' response to its records request. In its response DOCCS provided the cost estimate and page count for the requested records relating to Inmate Y ("approximately 7 pages of chronological entry records and 0 pages of education records that correspond to your request").

61.     On August 13, 2018, DRNY made payment to DOCCS.

62.     Although a genuine dispute of material fact exists as to whether Defendants had provided a copy of some or all of these records to Plaintiff before June 23, 2022, they provided a copy of these records to Plaintiff on June 23, 2022.

<u>Inmate Z</u>

63.     On June 18, 2018, DRNY requested records relating to Inmate Z and provided the authorizations signed by Inmate Z.

64.     DOCCS did not provide DRNY with a written statement of the reasons for not providing Inmate Z's records within one business day after the expiration of the deadline set forth in DRNY's request.

65.     On September 12, 2018, DRNY received DOCCS' response to its records request. In its response DOCCS provided the cost estimate and page count for the records relating to Inmate Z ("there are approximately 156 pages of records that correspond to your request").

66.     On September 21, 2018, DRNY issued payment for the records requested related to Inmate Z.

67.     On October 1, 2018, DRNY received the records relating to Inmate Z.

<u>Inmate AA</u>

68.     On June 20, 2018, DRNY requested records from DOCCS relating to Inmate AA and provided the authorizations signed by Inmate AA.

69.     DOCCS did not provide DRNY with a written statement of the reasons for not providing Inmate AA's records within one business day after the expiration of the deadline set forth in DRNY's request.

70.     On September 12, 2018, DRNY received DOCCS' response to its records request. In its response DOCCS provided the requested records relating to Inmate AA, without first sending Plaintiff a cost estimate.

Inmate BB

71.     On June 20, 2018, DRNY requested records from DOCCS relating to Inmate BB and provided the authorizations signed by Inmate BB.

72.     DOCCS did not provide DRNY with a written statement of the reasons for not providing Inmate BB's records within one business day after the expiration of the deadline set forth in DRNY's request.

73.     On July 12, 2018, DRNY received DOCCS' response to its records request. In its response DOCCS provided the cost estimate and page count for records relating to Inmate BB ("specifically you are requesting guidance chronological entry sheets and education records" and "there are approximately 4 pages of records that correspond to your request").

74.     On July 18, 2018, DRNY issued payment for the records related to Inmate BB.

75.     Although a genuine dispute of material fact exists as to whether Defendants had provided a copy of these records to Plaintiff before June 23, 2022, they provided a copy of these records to Plaintiff on June 23, 2022.

Inmate CC

76.     On June 20, 2018, DRNY requested records from DOCCS relating to Inmate CC and provided the authorizations signed by Inmate CC.

77.     DOCCS did not provide DRNY with a written statement of the reasons for not providing Inmate CC's records within one business day after the expiration of the deadline set forth in DRNY's request.

78.     On July 20, 2018, DRNY received DOCCS' response to its records request. In its response DOCCS provided the cost estimate and page count for the records relating to Inmate CC ("there are approximately 8 pages of chronological entry sheets and 7 pages of education records that correspond to your request").

79.     On July 24, 2018, DRNY issued payment for the records related to Inmate CC.

80.     On October 3, 2018, DRNY received the records relating to Inmate CC.

<u>Inmate DD</u>

81.     On June 22, 2018, DRNY requested records from DOCCS relating to Inmate DD and provided the authorizations signed by Inmate DD.

82.     DOCCS did not provide DRNY with a written statement of the reasons for not providing Inmate DD's records within one business day after the expiration of the deadline set forth in DRNY's request.

83.     On September 13, 2018, DRNY received DOCCS' response to its records request. In its response DOCCS provided the cost estimate and page count for the records relating to Inmate DD ("we have identified 7 pages of records responsive to your request").

84.     On September 21, 2018, DRNY issued payment for the records related to Inmate DD.

85.     On October 15, 2018, DRNY received the records relating to Inmate DD.

<u>Inmate EE</u>

86.     On June 22, 2018, DRNY requested records from DOCCS relating to Inmate EE and provided the authorizations signed by Inmate EE.

87.     DOCCS did not provide DRNY with a written statement of the reasons for not providing Inmate EE's records within one business day after the expiration of the deadline set forth in DRNY's request.

88.     On July 20, 2018, DRNY received DOCCS' response to its records request. In its response DOCCS provided the cost estimate and page count for the requested records relating to Inmate EE ("8 pages of chronological entry sheets and 23 pages of education records responsive to your request").

89.     On July 27, 2018, DOCCS received DRNY's payment for the records requested by DRNY on June 22, 2018, related to Inmate EE.

90.     On October 9, 2018, DRNY received the records relating to Inmate EE.

<u>Inmate FF</u>

91.     On June 22, 2018, DRNY requested records relating to Inmate FF and provided the authorizations signed by Inmate FF.

92.     DOCCS did not provide DRNY with a written statement of the reasons for not providing Inmate FF's records within one business day after the expiration of the deadline set forth in DRNY's request.

93.     On July 24, 2018, DRNY received DOCCS' response to its records request. In its response DOCCS provided the cost estimate and page count for the requested records relating to Inmate FF ("chronological entry sheets and education records" and "approximately 57 pages of records").

94.     On August 3, 2018, DRNY issued payment for the records related to Inmate FF.

95.     On August 10, 2018, DOCCS confirmed receipt of payment related to Inmate FF.

96.     On September 18, 2018, DRNY received the records relating to Inmate FF.

Inmate HH

97.     On July 6, 2018, DRNY requested records from DOCCS relating to Inmate HH and provided the authorizations signed by Inmate HH.

98.     DOCCS did not provide DRNY with a written statement of the reasons for not providing Inmate HH's records within one business day after the expiration of the deadline set forth in DRNY's request.

99.     On September 12, 2018, DRNY received DOCCS' response to its records request. In its response DOCCS provided the cost estimate and page count for the records relating to Inmate HH ("there are approximately 144 pages of records that correspond to your request").

100.    On September 21, 2018, DRNY issued a payment for the records requested by DRNY on July 6, 2018, related to Inmate HH.

101.    On October 5, 2018, DRNY received the records relating to Inmate HH.

DOCCS' RTF

102.    On March 26, 2018, DRNY submitted a P&A request for records related to DOCCS' operation of its Residential Treatment Facility ("RTF").

103.    DOCCS did not provide DRNY with a prompt written statement of the reasons for not providing the records relating to DOCCS' RTF.

104.    By letter dated April 5, 2018, DOCCS responded to DRNY's records request. In its response DOCCS informed DRNY that DOCCS was processing DRNY's request of March 26, 2018, alongside a similar request to DOCCS' FOIL Unit.

105.    By letter dated May 11, 2018, DOCCS responded by providing DRNY with the requested information regarding DRNY's P&A records request that it had treated as a FOIL request (stating, "In response to your request, please find the two-page chart tracking RTF inmates who are not affected by the Sexual Assault Reform Act.").

106.    DOCCS has provided at least some of the records and information relating to DOCCS' RTF.

107.    More specifically, DOCCS has provided records responsive to category number 1 in Plaintiff's P&A request of March 26, 2018, but not records responsive to category numbers 2 through 4 of that request, which DOCS asserts it does not possess because "[t]he information and/or data which would have been utilized to formulate answers to the [categories of] questions posed in Plaintiff's [request of] March 26, 2018 would require a manual review of individual inmate records which would have been unduly burdensome."

### 2.    Defendants' Statement of Undisputed Material Facts

The following facts were asserted and supported with accurate citations by Defendants in their Statement of Undisputed Material Facts and expressly admitted, or denied without appropriate record citations, by Plaintiff in its Response thereto.  (*Compare* Dkt. No. 100, Attach. 16 [Defs.' Rule 56.1 Statement] *with* Dkt. No. 105, Attach. 1 [Plf.'s Rule 56.1 Resp.].)

First Summary Judgment Order

1.    Plaintiff DRNY filed the instant case on August 5, 2018.

2.    On September 24, 2019, the Court issued its First Summary Judgment Order (Dkt. No. 41), which denied Plaintiff's motion for summary judgment in its entirety, and granted Defendants' motion in part while denying it in part.

3.    In the First Summary Judgment Order, the Court found that, as of the date of that

Order, Defendants had produced all records requested by DRNY except as to inmates A, Y, and BB, and as to the RTF records.

Second Summary Judgment Order

4.      Following the issuance of the First Summary Judgment Order, Defendants moved for summary judgment a second time, and Plaintiff cross-moved for reconsideration of the First Summary Judgment Order.

5.      On November 4, 2020, the Court issued its Second Summary Judgment Order (Dkt. No. 73), which the Court granted in part and denied in part each of the parties' pending motions, and issued three specific clarifications to the First Summary Judgment Order.

6.      With regard to the Court's three specific clarifications, first, the Court clarified that, on page 63 of its First Summary Judgment Order, when the Court stated, "In essentially interpreting the term 'inspect and copy' to mean 'inspect then copy,'" the Court should have stated, "In essentially interpreting the term 'inspect and copy' to mean 'inspect and/or copy (upon presentation).'"  The Court further stated that, "under any reasonable construction of the regulatory right to copy nonelectronic records oneself or have copies made by a service provider, the three-business-day clock governing the service provider's copying of the non-electronic records does not start running until the service provider has been presented with the particular records to be copied (whether [1] by the P&A directly, following its own inspection, or [2] through the service provider's retrieval of the records, following a sufficient identification of them by the P&A to enable the retrieval)."

7.      Second, the Court clarified that, on page 62 of its First Summary Judgment Order, when the Court stated, "Based on the plain language of the regulation, the Court finds that a prerequisite of the P&A system's right to obtain copies of the information and records of an

22

individual is the P&A system's inspection of the information and records," the Court should have stated, "Based on the plain language of the regulation, the Court finds that a prerequisite of the P&A system's right to obtain copies of the information and records of an individual is the P&A system's sufficient identification of the information and records to enable the custodian of the records to know which non-electronic records are to be copied (as well as the custodian's retrieval of those records)."

8.      Finally, the Court clarified that the "right of the P&A system to obtain records of an individual within three business days merely by sending a written demand to the service provider (without there having been either a sufficient identification of the records to enable the custodian of records to know which non-electronic records are to be copied or the retrieval of those records) is not reasonably set forth in this regulation, based on its plain language."

<u>Allegedly Disputed Document Productions</u>

9.      Based on the Court's findings in the First and Second Summary Judgment Orders, as well as documents produced to DRNY subsequent to those Orders, DOCCS now has produced to DRNY all of the documents in DOCCS possession requested by DRNY in its demands.[2] The only requested documents that have *not* been provided are the RTF records responsive to

---

[2]     Although Plaintiff denies the above-stated fact on the ground that "DOCCS provided the records of Y and BB after DRNY filed its second motion for summary judgment," the above-stated fact nowhere asserts that DOCCS provided those records *before* DRNY filed its second motion for summary judgment; to the contrary, the above-stated fact expressly references "documents produced to DRNY *subsequent* to those Orders." *See, supra,* Fact No. 9 (emphasis added). Furthermore, although Plaintiff also denies the above-stated fact on the ground that "DRNY has not received all of the requested records relating to DOCCS' RTF" and that "DOCCS did not produce records responsive to category numbers 2-4 in its P&A request," the above-stated fact nowhere asserts that DRNY has received all of the requested records relating to DOCCS' RTF or that DOCCS has produced records responsive to category numbers 2-4 in its P&A request; to the contrary, the above-stated fact expressly states that DOCCS has provided "all of the documents *in DOCCS' possession* requested by DRNY in its demands." *See, supra,* Fact No. 9 (emphasis added). The Court notes that generally the summary judgment procedure

category numbers 2 through 4 in Plaintiff's P&A request of March 26, 2018, which DOCS

asserts it does not possess because "[t]he information and/or data which would have been utilized

to formulate answers to the [categories of] questions posed in Plaintiff's [request of] March 26,

2018 would require a manual review of individual inmate records which would have been unduly

burdensome."

<u>Inmate A</u>

10.   DRNY first requested records pertaining to Inmate A (who is deceased) on March

17, 2016.

11.   On May 5, 2016, DOCCS provided records to DRNY pertaining to Inmate A. At

the time DOCCS provided records on May 5, 2016, it included the preliminary certificate of

death for Inmate A.

12.   As of May 5, 2016, no autopsy report for Inmate A was available.

13.   On January 22, 2018, DOCCS sent additional correspondence to DRNY, and

advised DRNY to contact the "appropriate issuing authorities" for copies of the requested

documents.

14.   At the time DRNY made its second request on January 22, 2018, Counsel for

DOCCS was not in possession of the requested documents pertaining to Inmate A.[3]

---

involves the denial of *asserted* facts, not the denial of *implied* facts.   *See* N.D.N.Y. L.R.
7.1(a)(3) ("The non-movant's responses shall . . . admit[] and/or deny[] each of the movant's
assertions in matching numbered paragraphs.") (emphasis added); *Yetman v. Capital Dis. Trans.
Auth.*, 12-CV-1670, 2015 WL 4508362, at *10 (N.D.N.Y. July 23, 2015) (citing authority for the
point of law that the summary judgment procedure involves the disputation of asserted facts, not
the disputation of implied facts).

[3]       Although Plaintiff denies knowledge of this fact, generally a denial of fact may not be
supported by a statement that the non-movant lacks memory or knowledge of, or information
regarding, the fact.  *See Genger v. Genger*, 663 F. App'x 44, 49 n.4 (2d Cir. 2016) (summary
order) (noting that a statement that one "ha[d] no recollection" of a fact "does not constitute a
denial"); *F.D.I.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 205 F.3d 66, 75 (2d Cir. 2000)

15.     On April 29, 2020, in its Response #1 to DRNY's First Set of Interrogatories, DOCCS advised DRNY that "[t]he records of Inmate A have not yet been provided to counsel for DOCCS.  There are currently significant delays in the transmission of records from storage as the result of reduced staffing and increased inmate litigation resulting from the current COVID pandemic. As soon as these documents are available, a supplemental response to this Interrogatory indicating whether such documents were received by DOCCS and if so, the dates of receipt, will be provided."

16.     As of the date of DOCCS's cross-motion for summary judgment (July 13, 2022), DOCCS's internal counsel has certified that DOCCS has no further records responsive to DRNY's request of January 22, 2018, pertaining to Inmate A.

Inmate Y

17.     DRNY first requested records pertaining to Inmate Y on June 18, 2018.

18.     On July 30, 2018, DOCCS wrote to DRNY indicating that 7 pages pertaining to Inmate Y were available at a total cost of $1.75.

19.     Based on DRNY's contention (in connection with its current motion for summary judgment) that it never received the records it previously requested pertaining to Inmate Y, DOCCS produced a copy of these records to DRNY on June 23, 2022 (which Defendants assert was an "additional" such copy).

Inmate BB

20.     DRNY first requested records pertaining to inmate BB on June 20, 2018.

_____

("[V]ague denials and memory lapses . . . do not create genuine issues of material fact."); *Creighton v. City of NY*, 12-CV-7454, 2017 WL 636415, at *40 (S.D.N.Y. 2017) (finding no issue of fact where one witness had a recollection of an event while another witness to same event has no specific recollection "one way or the other")/  In any event, the record cite provided by Plaintiff fails to support the denial.

21.    On July 5, 2018, DOCCS wrote to DRNY indicating that 4 pages of records pertaining to Inmate BB were available at a cost of $1.00.

22.    Based on DRNY's contention (in connection with its current motion for summary judgment) that it never received the records it previously requested pertaining to Inmate BB, DOCCS produced a copy of these records to DRNY on June 23, 2022 (which Defendants assert was an "additional" such copy).

RTF Records

23.    DRNY first requested records pertaining to RTFs operated by DOCCS in a FOIL request dated March 9, 2018.

24.    In its FOIL request of March 9, 2018, DRNY requested as follows:

(1) "The total number of Non-SARA inmates who are in an RTF as a result of 'Special Condition of Release for a Determinately Sentenced Offender Being Released to Post-Release Supervision (SC37).' This is a request for the number of inmates who are on Post Release Supervision and are in a RTF pending placement in a program or facility of the Office of Mental Health or Office for Persons with Developmental Disabilities. This request is for people who are not affected by the Sexual Assault Reform Act."

(2) "A complete list of the current facility location of all 'Non-SARA' RTF inmates, their housing area, mental health service level, and counties of commitment."

(3) "The total number of inmates in custody who have passed their Conditional Release date and are in custody pending a placement in a program or facility of the Office of Mental Health or Office for Persons with Developmental Disabilities."

25.    On March 26, 2018, DRNY made a second request to DOCCS under the PAIMI Act.

26

26.     In its PAIMI request of March 26, 2018, DRNY requested as follows:

(1) "The total number of Non-SARA inmates who have RTF status as a result of 'Special Condition of Release for a Determinately Sentenced Offender Being Released to PostRelease Supervision (SC37).' This is a request for the number of inmates who are on Post Release Supervision and have RTF status pending placement in a program or facility of the Office of Mental Health or Office for Persons with Developmental Disabilities. This request is for people who are not affected by the Sexual Assault Reform Act."

(2) "For each 'Non-SARA' RTF inmate referenced in Request #1, provide the following:

a. current facility location,

b. housing area,

c. mental health service level, and

d. county of commitment."

(3) "The total number of inmates in custody who have passed their Conditional Release or Open Release date and are in custody pending a placement in a program or facility of the Office of Mental Health or Office for Persons with Developmental Disabilities."

(4) "For each inmate referenced in Request #3, provide the following:

a. current facility location,

b. housing area,

c. mental health service level, and

d. county of commitment."

27.     On April 5, 2018, DOCCS advised DRNY that its request under the PAIMI Act

would be consolidated and processed along with the previously-submitted FOIL request.

28.     On May 11, 2018, DOCCS responded to DRNY's requests and provided at least some of the requested records.

29.     On April 29, 2020, in its Response #3 to DRNY's First Set of Interrogatories, DOCCS stated that it "provided all records in its possession at the time of the request which were responsive to Plaintiff's March 26, 2018 request for records . . . ."[4]

30.     In its Response #3 to DRNY's First Set of Interrogatories, DOCCS further stated that, as to the statistical and demographic information requested by DRNY, "such 'information' and/or 'data' sought by Plaintiff was not tracked or recorded in the manner sought by Plaintiff in its request . . . ."

<u>The NYS P&A Public Access Law</u>

31.     On February 24, 2022, New York State Governor Kathy Hochul signed into law Access Bill A8710/S7847 (the "NYS P&A Public Access Law").

32.     The NYS P&A Public Access Law provides that DRNY "shall have prompt access" to: a facility serving an individual represented by DRNY "that is operated, certified or licensed by any office or agency of the state"; as well as to "books, records and data" pertaining to such individual, or to such a facility serving individuals with disabilities.

33.     The NYS P&A Public Access Law also provides that "[c]opies of records shall be provided to [DRNY] free of charge within three business days of receipt of a written request", or

---

[4]     Although Plaintiff denies the above-stated fact, it does not support that denial with an accurate citation to admissible record evidence that creates a genuine dispute with regard to the above-stated fact.  Instead, Plaintiff essentially attempts to deny a perceived implication of the above-stated fact (i.e., the statement was true given that DOCCS later expressly acknowledged that it did not conduct a manual review of individual inmate records).  As stated previously, generally the summary judgment procedure involves the denial of asserted facts, not the denial of implied facts.  *See, supra,* note 1 of this Decision and Order (citing authorities).

within 24 hours in certain circumstances, and that "[w]here records are kept or maintained electronically they shall be provided to [DRNY] electronically . . . ."

34.     Finally, the approval memorandum for the Bill states that "if [DRNY's] access is denied or delayed beyond the three day [sic] deadline in the bill, the facilities will provide [DRNY] with a written statement of the reasons for the denials or delays within one business day following the expiration of the deadline."

35.     The NYS P&A Public Access Law became effective as of March 26, 2022.

36.     Since the effective date of the NYS P&A Public Access Law, DOCCS has followed the procedures prescribed therein with respect to the provision of documents to DRNY pursuant to DRNY's requests.[5]

## II.   GOVERNING LEGAL STANDARD

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[6]  As for the materiality requirement, a dispute of fact is

---

[5]     Again, although Plaintiff denies knowledge of this fact, such a denial does not suffice to create a genuine dispute regarding that fact.  As stated previously, generally a denial of fact may not be supported by a statement that the non-movant lacks memory or knowledge of, or information regarding, the fact.  *See, supra*, note 2 of this Decision and Order (citing authorities).

[6]     As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

"material" if it "might affect the outcome of the suit under the governing law . . . . Factual

disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all

ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255.

In addition, "[the movant] bears the initial responsibility of informing the district court of the

basis for its motion, and identifying those portions of the . . . [record] which it believes

demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S.

317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must

come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ.

P. 56(a),(c),(e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant

willfully fails to respond to a motion for summary judgment, a district court has no duty to

perform an independent review of the record to find proof of a factual dispute.[7]  Of course, when

a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there

has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted

automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  Rather, as indicated above,

the Court must assure itself that, based on the undisputed material facts, the law indeed warrants

judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group,

Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.).  What the non-movant's failure to

respond to the motion does is lighten the movant's burden.

---

[7]     *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing
cases).

For these reasons, this Court has often enforced Local Rule 56.1(b) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[8]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(a)(3).[9]  Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30,

---

[8]     Among other things, Local Rule 56.1(b) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 56.1(b).

[9]     *See, e.g., Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp*., 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at

*2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III.    ANALYSIS

For the sake of simplicity, the Court will organize its analysis into the nine issues

articulated by Plaintiff in its motion papers.  (Dkt. No. 98, Attach. 1, at 2 [containing Table of

Contents of Plf.'s Memo. of Law].)  *See also, supra,* Part I.B.1. of this Decision and Order.  In

the context of these issues, the Court will address Defendants' arguments of mootness and

Eleventh Amendment immunity.  *See, supra,* Part I.B.2. of this Decision and Order.

### A.    Whether Plaintiff Is Entitled to a Judgment Declaring that, Under the P&A Acts, DOCCS Failed to Produce—in a Timely Fashion—Copies of the Records of Inmates D, L, O, P, Q, S, T, W, X, Z, AA, CC, DD, EE, FF, and HH

After carefully considering the matter, the Court answers this question in the negative for

the reasons stated by Defendants in their memorandum of law.  *See, supra,* Part I.B.2. of this

Decision and Order.  To those reasons, the Court adds the following analysis.

The Eleventh Amendment bars federal courts from issuing retrospective declaratory relief

against state officials for past violations of federal law.  *See Green v. Mansour*, 474 U.S. 64, 73

(1985) ("We think that the award of a declaratory judgment in this situation would be useful in

resolving the dispute over the past lawfulness of respondent's action only if it might be offered in

state-court proceedings as res judicata on the issue of liability, leaving to the state courts only a

form of accounting proceeding whereby damages or restitution would be computed. But the

issuance of a declaratory judgment in these circumstances would have much the same effect as a

full-fledged award of damages or restitution by the federal court, the latter kinds of relief being

of course prohibited by the Eleventh Amendment. The teachings of *Huffman*, *Samuels*, and

*Wycoff* are that a declaratory judgment is not available when the result would be a partial 'end

run' around our decision in *Edelman v. Jordan*, 415 U.S. 651 . . . (1974).");  *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000) ("The declaratory judgment sought by the Fitzpatrick subclass is unavailable in federal court because . . . [a]ny declaration could say no more than that Connecticut had violated federal law in the past. . . .  A declaratory judgment is not available when the result would be a partial 'end run' around the Eleventh Amendment's bar on retrospective awards of monetary relief.") (internal quotation marks omitted), *accord, Szymonik v. Connecticut*, 807 F. App'x 97, 101 (2d Cir. 2020) ("The Eleventh Amendment bars federal courts from issuing retrospective declaratory relief against state officials for past violations of federal law.").

Here, unlike when the Court decided the parties' first cross-motions for summary judgment, it is undisputed that all of the records in question have now been provided to Plaintiff. *See, supra,* Fact No. 9 of Defendants' Statement of Facts in Part I.C.2. of this Decision and Order.  It is also undisputed that the New York State P&A Records Access Law, Access Bill A8710/S7847, signed into law on February 24, 2022 ("NYS P&A Records Access Law"), requires that "[c]opies of records shall be provided to [DRNY] free of charge within three business days of receipt of a written request . . . ."  (Dkt. No. 100, Attach. 17, at 22-24 [attaching pages "16" through "18" of Defs.' Memo. of Law].)  Finally, it is undisputed that, since the date that law went into effect (March 26, 2022), Defendants have complied—and sworn their intention to continue to comply—with that requirement.  (Dkt. No. 100, Attach. 1, at ¶ 58 [Shkolnik Decl.].)  *See also, supra,* Fact No. 36 of Defendants' Statement of Facts in Part I.C.2. of this Decision and Order.

For these reasons, Plaintiff's motion is denied, and Defendants' cross-motion is granted, with regard to this claim.

In any event, even if the Court were mistaken about the preclusive effect of the Eleventh Amendment on this claim, the Court would deny Plaintiff's motion, and grant Defendants' cross-motion, regarding this claim based on the merits. This is because it is uncontroverted that, after receiving and processing each of Plaintiffs' record requests (except with regard to Inmate AA),[10] DOCCS communicated its granting of *physical access* to its facilities so Plaintiff could review and copy the records requested. (Dkt. No. 16, Attach. 1, at 45 [letter dated 03/21/18 responding to request for records of Inmate D dated 03/13/18, stating "Please be advised the records you requested are available at the facility for DRNY's review. Please contact me to make the arrangements"]; *accord*, Dkt. No. 16, Attach. 1, at 172 [letter dated 05/22/18 responding to request for records of Inmate L dated 04/20/18]; Dkt. No. 16, Attach. 1, at 191 [letter dated 05/03/18 responding to request for records of Inmate O dated 04/24/18]; Dkt. No. 16, Attach. 1, at 199 [letter dated 05/02/18 responding to request for records of Inmate P dated 04/24/18]; Dkt. No. 16, Attach. 1, at 207 [letter dated 05/11/2018 responding to request for records of Inmate Q dated 04/24/18]; Dkt. No. 16, Attach. 1, at 227 [letter dated 06/12/18 responding to request for records of Inmate S dated 05/22/18]; Dkt. No. 16, Attach. 1, at 239 [letter dated 06/12/18 responding to request for records of Inmate T dated 05/23/18]; Dkt. No. 16, Attach. 1, at 275 [letter dated 07/03/18 responding to request for records of Inmate W dated 06/14/18]; Dkt. No. 16, Attach. 1, at 280 [letter dated 06/21/18 responding to request for records of Inmate X dated 06/14/18]; Dkt. No. 16, Attach. 1, at 294 [letter dated 09/07/18 responding to request for records of Inmate Z dated 06/18/18]; Dkt. No. 16, Attach. 1, at 316 [letter dated 07/13/18 responding to

---

[10]     Due to a processing error, DOCCS did not respond to Plaintiff's request of June 20, 2018, for the records of Inmate AA until September 7, 2018, when it provided 62 pages of records related to Inmate AA, free of charge. (Dkt. No. 15, Attach. 3, at ¶ 283 [Sheehan Decl.].)

request for records of Inmate CC dated 06/20/18]; Dkt. No. 16, Attach. 1, at 323 [letter dated 07/16/18 responding to request for records of Inmate DD dated 06/22/18]; Dkt. No. 16, Attach. 1, at 328 [letter dated 07/16/18 responding to request for records of Inmate EE dated 06/22/18]; Dkt. No. 16, Attach. 1, at 336 [letter dated 07/18/18 responding to request for records of Inmate FF dated 06/22/18]; Dkt. No. 16, Attach. 1, at 356 [letter dated 09/07/18 responding to request for records of Inmate HH dated 07/06/18].)[11]

However, in each instance, Plaintiff chose not to travel to any of the facilities in question, select the records desired, and present them for copying to DOCCS (for the records to be then copied and provided within three business days by DOCCS).  (*See, e.g.,* Dkt. No. 15, Attach. 3, at ¶ 22 [Sheehan Decl., dated 10/16/18, stating, "To date, my office has **never** received a request from DRINY for immediate access to records at any DOCCS correctional facility"] [emphasis in original]; *see also generally* Dkt. No. 16, Attach. 1.)  Instead, Plaintiff relied on its written

_____

[11]     Whether that access was granted within "three business days" of DOCCS' receipt of each written request is unclear from the current record.  Granted, at least some of the requests appear to have been sent to Defendants by email.  (*See, e.g.,* Dkt. No. 25, Attach. 9, at ¶ 20 [Charland Decl., stating that she "mailed and emailed" the request for the records of Inmate T]; Dkt, No. 25, Attach. 22, at ¶ 23 [Rosenthal Decl., stating that he "mailed and emailed" the request for the records of Inmate HH]; *cf.* Dkt. No. 15, Attach. 3, at ¶ 12 [Sheehan Decl., stating that "DOCCS has asked DRNY to make all requests by e-mail to a shared mailbox managed by staff in the Department's Office of Counsel"].)  However, it is unclear whether other of the requests were in fact sent by email.  (*See generally* Dkt. No. 16, Attach. 1.)  To the extent the requests were sent by mail, it is unclear when DOCCS received each request (or when Plaintiff actually sent it). (*See, e.g.,* Dkt. No. 16, Attach. 1, at 43-44 [letter dated 03/13/18 requesting records of Inmate D, without postmarked or date-stamped envelope]; Dkt. No. 16, Attach. 1, at 45 [letter dated 03/21/18 responding to request, without postmarked or date-stamped envelope].)  In any event, with regard to all of Plaintiff's requests, a reasonable fact-finder could conclude that each of Defendant's responses indicate the existence of a standing (or pre-existing) grant of access to records requested in such a manner, contingent only on Plaintiff making the arrangements for a visit.  (*See* Dkt. No. 16, Attach. 1, at 45 [letter dated 03/21/18 stating, "Please be advised the records you requested are available at the facility for DRNY's review. Please contact me to make the arrangements"], *accord*, Dkt. No. 16, Attach. 1, at 172, 191, 199, 207, 227, 239, 275, 280, 294, 316, 323, 328, 336, 356].)

demand for copies of those records, its receipt by mail of a cost estimate for those copies, its payment by mail for those copies, and its receipt of the those copies by mail (apparently never paying for express mail delivery).  (*See, e.g.*, Dkt. No. 16, Attach. 1, at 46-49 [containing the parties' exchange of letters after DOCCS' letter dated 03/21/18 responding to request for records of Inmate D].)

Whether those copies were received by Plaintiff within three business days of DOCCS' receipt of payment for those copies is unclear from the current record, because of the lack of evidence regarding when DOCCS received each payment (or even when Plaintiff actually mailed it), and when Plaintiff received the copies (or even when DOCCS mailed them).   (*See, e.g.*, Dkt. No. 16, Attach. 1, at 46-49 [containing the parties' exchange of letters after regarding records of Inmate D, without postmarked or date-stamped envelopes].)

Moreover, based on the current record, it is unclear whether Defendants even had a duty (under the governing regulations) to deliver those copies to Plaintiff within "three business days" of DOCCS' receipt of payment for the copies.  This is because, in each instance, Defendants had to initially "find" and "physically retrieve and review" the records based on the written request by Plaintiff and then provide a statement of the cost of copying them.  (Dkt. No. 15, Attach. 3, at ¶ 9 [Sheehan Decl., stating, "Requests for copies of records places a burden on facility and Central Office staff, many of whom, need to be removed from their daily responsibilities to *find*, count, and make copies of requested documents for third parties."], ¶ 14 ["Each request for records requires a DOCCS staff member to physically retrieve and review physical files from each of these locations, *ascertain what records are responsive*, and then physically count the responsive pages. Depending on the nature of the request, this could trigger multiple searches at multiple facilities for the requested records."] [emphasis added]; *see also generally* Dkt. No. 16,

Attach. 1.)  More importantly, in each instance, it is unclear whether, at the time of receipt of payment, the relevant records custodian still had the records in his or her presence (as they would have been had Plaintiff inspected the records and presented them to Defendants for copying) or whether he or she had to *again* "physically retrieve and review" those records.  (*See, e.g.,* Dkt. No. 15, Attach. 3, at, ¶ 17 [Sheehan Decl., stating, "If DRNY decides it wants to pay for the records and submits payment, the DOCCS staff member who provided the page count, *must then go back to the physical files* and physically make the copies. Due to the lack of technological resources (as discussed above), *making or storing copies in advance of payment is still less practical (since payment is optional) than returning to obtain the records from the physical files*."] [emphasis added].)   It is also unclear whether it would have been unreasonable for Defendants to *not* "mak[e] and stor[e] copies in advance of payment."  (*Id*. at ¶ 17.)

This mundane step (of record retrieval, review and selection) cannot be undervalued. When a P&A system physically reviews the records and presents them for copying to a service provider, there can be no reasonable error by the service provider as to which sensitive documents are claimed by the P&A system to be responsive to the request, and the custodian can start copying immediately.  However, when a service provider must physically retrieve, review and select the records for copying based merely on a written request for them, the service provider can reasonably err (to its own peril) in determining which sensitive documents are asserted by Plaintiff to be responsive request (preventing the custodian from starting to copy the responsive records promptly).

Here, Defendant's perilous task of retrieving, reviewing, and selecting the records requested has been complicated by the fact that Plaintiff's written requests have often contained a sparse description of the records sought.  (*See* Dkt. No. 16, Attach. 1, at 43 [letter dated

03/13/18 requesting records of Inmate D, omitting the express title of each record sought, the express date range of each record sought, and the express author or recipient of each record sought]; Dkt. No. 16, Attach. 1, at 168-69 [letter dated 04/20/18 requesting records of Inmate L, omitting the express title of some of the records sought, the express date range of each record sought, and the express author or recipient of some of the records sought], *accord*, Dkt. No. 16, Attach. 1, at 186-87 [letter dated 04/24/18 requesting records of Inmate O], Dkt. No. 16, Attach. 1, at 194-95 [letter dated 04/24/18 requesting records of Inmate P], Dkt. No. 16, Attach. 1, at 202-03 [letter dated 04/24/18 requesting records of Inmate Q]; Dkt. No. 16, Attach. 1, at 222 [letter dated 05/22/18 requesting records of Inmate S, omitting the express title of some of the records sought, the express date range of some of the records sought, and the express author or recipient of some of the records sought]; Dkt. No. 16, Attach. 1, at 236 [letter dated 05/23/18 requesting records of Inmate T, omitting the express title of some of the records sought and the express author or recipient of some of the records sought]; Dkt. No. 16, Attach. 1, at 270-71 [letter dated 04/14/18 requesting records of Inmate W, omitting the express title of some of the records sought, the express date range of each record sought, and the express author or recipient of some of the records sought], accord, Dkt. No. 16, Attach. 1, at 276-77 [letter dated 06/14/18 requesting records of Inmate X], Dkt. No. 16, Attach. 1, at 289-90 [letter dated 06/18/18 requesting records of Inmate Z], Dkt. No. 16, Attach. 1, at 298-98 [letter dated 06/20/18 requesting records of Inmate AA], Dkt. No. 16, Attach. 1, at 311-12 [letter dated 06/20/18 requesting records of Inmate CC], Dkt. No. 16, Attach. 1, at 317-18 [letter dated 06/22/18 requesting records of Inmate DD], Dkt. No. 16, Attach. 1, at 326-27 [letter dated 06/22/18 requesting records of Inmate EE], Dkt. No. 16, Attach. 1, at 331-32 [letter dated 06/22/18

requesting records of Inmate FF], Dkt. No. 16, Attach. 1, at 351 [letter dated 07/06/18 requesting records of Inmate HH].)[12]

As the Court found in its Decision and Order of November 4, 2020, "[The] right of the P&A system to obtain records of an individual within three business days merely by sending a written demand to the service provider (without there having been either a sufficient identification of the records to enable the custodian of records to know which non-electronic records are to be copied or the retrieval of those records) is not reasonably set forth in this regulation, based on its plain language." *DRNY v. DOCCS*, 18-CV-0980, 2020 WL 6484049, at *7 (N.D.N.Y. Nov. 4, 2020) (Suddaby, C.J.).

In sum, the procedure that Plaintiff has chosen to follow does not appear to be expressly addressed by the regulations. Generally, the "three business day[]" deadline could not be fairly and reasonably found to start running upon DOCCS' receipt by mail of Plaintiff's initial written demand for these records, because the demands were not accompanied by either a presentation of the records to be copied or payment for those copies. Furthermore, generally, the "three business day[]" deadline could not be fairly and reasonably found to start running upon DOCCS' receipt of payment for the copies of the records if DOCCS had to again search for and retrieve those records (which it would not have had to do if Plaintiff had inspected the records and presented them to Defendants for copying, as appears contemplated by the regulations).

---

[12]    Without deciding the necessity of each piece of information provided in each written record request permitted by the applicable statutes and regulations, the Court observes that *generally* four pieces of information appear to be characteristics of a "record" under the applicable statutes and regulations: (1) the name of the individual whom the record regards; (2) the title or a brief description of the record; (3) the date or date range of the record; and (4) the identity and/or position of the author and/or the recipient of the record. *See, e.g.,* 42 U.S.C. § 15043(c) (defining "record"); 42 U.S.C. § 10806(b)(3)(A) (defining "records"); 45 C.F.R. § 1326.25(b) (defining "[i]ndividual records"); 42 C.F.R. § 51.41(c) (defining "individual records").

For these reasons, this ground serves as an alternative basis for the denial of Plaintiff's

motion, and the granting of Defendants' cross-motion, with regard to this claim.

**B.     Whether Plaintiff Is Entitled to a Judgment Declaring that, Under the P&A Acts, DOCCS Altogether Failed to Produce Copies of the Records of Inmates A, Y, and BB**

After carefully considering the matter, the Court answers this question in the negative for

the reasons stated by Defendants in their memorandum of law.  *See, supra,* Part I.B.2. of this

Decision and Order.  To those reasons, the Court adds the following analysis.

For the reasons set forth above, the Court finds that the Eleventh Amendment bars federal

courts from issuing retrospective declaratory relief against state officials for past violations of

federal law.  *See, supra,* Part III.A. of this Decision and Order.  Here, the Court accepts

Defendants' argument that it is undisputed that DOCCS has provided Plaintiff with copies of all

of the records in DOCCS' possession that are responsive to the above-described requests

regarding Inmates A, Y and BB.  (Dkt. No. 100, Attach. 17, at 18-22 [attaching pages "12"

through "16" of Defs.' Memo. of Law].)  *See also, supra,* Fact Nos. 14, 62 and 75 of Plaintiff's

Statement of Facts in Part I.C.1. of this Decision and Order; Fact Nos. 9, 14-16 of Defendants'

Statement of Facts in Part I.C.2. of this Decision and Order.[13]

Of course, whether Defendants provided that access or those copies in a timely fashion

under the governing statutes and regulations is another matter.  However, as set forth above, it is

undisputed that, as of March 26, 2022, the NYS P&A Records Access Law has required that

"[c]opies of records shall be provided to [DRNY] free of charge within three business days of

---

[13]     Plaintiff has not adduced admissible record evidence from which a rational fact-finder could conclude that DOCCS possesses any outstanding responsive records regarding Inmates A, Y and BB.  (*See generally* Dkt. Nos. 98, 105.)  Of course, if Plaintiff had inspected the records, it might have obtained such evidence.

receipt of a written request . . . ."  *See, supra,* Part III.A. of this Decision and Order.  It is also

undisputed that, since the date that law went into effect, Defendants have complied—and sworn

their intention to continue to comply—with that requirement.  *Id.*

     For these reasons, Plaintiff's motion is denied, and Defendants' cross-motion is granted,

with regard to this claim.

     **C.**    **Whether Plaintiff Is Entitled to a Judgment Declaring that, Under the P&A Acts, DOCCS Improperly Converted Part of a P&A Act Request (for Records Related to DOCCS' Operation of RTFs) into a FOIL Request and Then Did Not Completely Comply with Either that Part of the Request or the Remainder of the Request**

     After carefully considering the matter, the Court answers this question in the negative for

the reasons stated by Defendants in their memorandum of law.  *See, supra,* Part I.B.2. of this

Decision and Order.  To those reasons, the Court adds the following analysis.

     Again, for the reasons set forth above, the Court finds that the Eleventh Amendment bars

federal courts from issuing retrospective declaratory relief against state officials for past

violations of federal law.  *See, supra,* Part III.A. of this Decision and Order.

     **1.**    **Improper-Conversion Claim**

     With regard to Plaintiff's improper-conversion claim, it is undisputed that, on or about

May 11, 2018, DOCCS provided Plaintiff with the information in question.  *See, supra*, Fact

Nos. 104-07 of Plaintiff's Statement of Facts in Part I.C.1. of this Decision and Order; Fact No.

28 of Defendants' Statement of Facts in Part I.C.2. of this Decision and Order.

     For these reasons, Plaintiff's motion is denied, and Defendants' cross-motion is granted,

with regard to this claim.

     In any event, even if the Court were mistaken with regard to the preclusive effect of the

Eleventh Amendment on this claim, the Court would deny Plaintiff's motion, and grant

Defendants' cross-motion, regarding this claim based on the merits.  This is because, based on

the current record, the Court can find no error in DOCCS' responding to one of Plaintiff's requests alongside a similar FOIL request, for the reasons stated by Defendants in their memorandum of law: Plaintiff has provided no legal authority for its argument that responding to two substantively identical requests together is impermissible if all requested information is in fact provided. *See, supra,* Part I.B.2. of this Decision and Order. (*See also* Dkt. No. 100, Attach. 17, at 21 [attaching page "15" of Defs.' Memo. of Law].)

Furthermore, the Court can find no admissible record evidence from which a rational fact-finder could find the production of this information was late under the PAIMI Act. In rending this conclusion, the Court accepts Defendants' argument that, although 42 C.F.R. § 51.41(c)(5) grants a P&A system access to "demographic and statistical information relating to the facility . . . ," the PAIMI Act itself, 42 U.S.C. § 10805(a)(3)-(4), grants a P&A system access to only "facilities" and "records." (Dkt. No. 100, Attach. 17, at 19-22 [attaching pages "13" through "16" of Defs.' Memo. of Law].) In addition, the Court finds that the statutes and regulations are most fairly and reasonably construed as *not* requiring that a system provider actually *create* a record or *compile* information upon a P&A system's request, for the same reasons that Fed. R. Civ. P. 33(d) and 34(a) generally do not require a party to create a record or compile information in response to another party's request.[14] Simply stated, Defendants were

---

[14]     *See* Fed. R. Civ. P. 33(d) (not requiring a party to "compil[e], abstract[], or summariz[e] [its] business records" to "determine[]" "the answer to an interrogatory" "if the burden of deriving or ascertaining the answer will be substantially the same for either party"); *Sadofsky v. Fiesta Products, LLC*, 252 F.R.D. 143, 148 (E.D. N.Y. 2008) ("The rationale behind Rule 33(d) is to shift the burden of compiling the information and, accordingly, ascertaining the answer, from the producing party to the interrogating party."); *Hallmark v. Cohen & Slamowitz, Midland Fundings LLC*, 302 F.R.D. 295, 299 (W.D.N.Y. 2014) (not requiring a debt collector to prepare audited financial report prepared in order to comply with consumer's discovery request for financial information regarding its net worth,  where no such documents existed at time of request, because "[i]t is basic that in responding to a document production request, pursuant to Fed. R. Civ. P. 34(a) . . . , a party is not required to create documents meeting the document

not required by the PAIMI Act to create the "two-page chart tracking RTF inmates who are not affected by the Sexual Assault Reform Act." (Dkt. No. 100, Attach. 15, at 1.)

For these reasons, this ground serves as an alternative basis for the denial of Plaintiff's motion, and the granting of Defendants' cross-motion, with regard to this claim.

## 2.    Incomplete-Disclosure Claim

With regard to Plaintiff's incomplete-disclosure claim, it is undisputed that DOCCS provided Plaintiff with access to all records in its possession that were necessary to be reviewed in order to compile the data requested. (Dkt. No. 100, Attach. 6, at 2 [Ex. E to Shkolnik Decl., attaching Defs.' Response to Plf.'s Interrogatory No. 3, dated Apr. 29, 2020].) *See also, supra,* Fact Nos. 29-30 of Defendants' Statement of Facts in Part I.C.2. of this Decision and Order; Fact No. 107 of Plaintiff's Statement of Facts in Part I.C.1. of this Decision and Order.

For these reasons, Plaintiff's motion is denied, and Defendants' cross-motion is granted, with regard to this claim.

In any event, even if the Court were mistaken with regard to the preclusive effect of the Eleventh Amendment on this claim, the Court would deny Plaintiff's motion, and grant Defendants' cross-motion, regarding this claim based on the merits. This is because the Court agrees with Defendants that no admissible record evidence exists from which a rational fact-finder could conclude that DOCCS violated the PAIMI Act through its response to the remainder of Plaintiff's request for records related to RFTs. *See, supra,* Part I.B.2. of this Decision and Order. (*See also* Dkt. No. 100, Attach. 17, at 19-22 [attaching pages "13" through "16" of Defs.' Memo. of Law].)

---

requests . . . . The court cannot compel production of what does not exist") (internal quotation marks and citations omitted; collecting authorities).

More specifically, the Court accepts Defendants' argument that each of Plaintiff's outstanding records requests relating to RTFs seeks tabulations of certain inmates that DOCCS does not currently maintain in document or "record" form. (*Id*.)   In this regard, the Court relies on the uncontroverted evidence that "DOCCS could have responded to Plaintiff's request only by conducting [a] burdensome manual review of inmate records and creating new records in which it would have compiled the resulting data, in order to provide a narrative or tabular response to the inquiries made by DRNY." (Dkt. No. 100, Attach. 1, at ¶ 49 [Shkolnik Decl.].) Again, the statutes and regulations in question are most fairly and reasonably construed as *not* requiring that a system provider actually create a record or compile information upon a P&A system's request.

For these reasons, this ground serves as an alternative basis for the denial of Plaintiff's motion, and the granting of Defendants' cross-motion, with regard to this claim.

**D.      Whether Plaintiff Is Entitled to a Judgment Declaring that, Under the P&A Acts, It Was Entitled to a Timely Copy of Non-Electronic Records from DOCCS Without a Prior Physical Inspection of Those Records and Presentation of Them to DOCCS for Copying**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated by Defendants in their memorandum of law. *See, supra,* Part I.B.2. of this Decision and Order.  To those reasons, the Court adds the following analysis.

Again, for the reasons set forth above, the Court finds that the Eleventh Amendment bars federal courts from issuing retrospective declaratory relief against state officials for past violations of federal law. *See, supra,* Part III.A. of this Decision and Order.  Here, it is undisputed that all of the records in question have now been provided to Plaintiff. *Id.* It is also undisputed that, as of March 26, 2022, the NYS P&A Records Access Law has required that "[c]opies of records shall be provided to [DRNY] free of charge within three business days of

receipt of a written request . . . ." *Id.* Finally, it is also undisputed that, since the date that law

went into effect, Defendants have complied—and sworn their intention to continue to comply—

with that requirement. *Id.*

For these reasons, Plaintiff's motion is denied, and Defendants' cross-motion is granted,

with regard to this claim.

In any event, even if the Court were mistaken with regard to the preclusive effect of the

Eleventh Amendment on this claim, the Court would deny Plaintiff's motion, and grant

Defendants' cross-motion, regarding this claim based on the merits. The DD Act's relevant

regulations provide as follows:

> (c) The time period in which the P&A system must be given access to
> records of individuals with developmental disabilities under sections
> 143(a)(2)(A)(i), (B), (I), and (J) of the Act, and subject to the provisions of
> this section, varies depending on the following circumstances:
>
>> (1) If the P&A system determines that there is probable cause to
>> believe that the health or safety of the individual with a
>> developmental disability is in serious and immediate jeopardy, or
>> in any case of the death of an individual with a developmental
>> disability, access to the records of the individual with a
>> developmental disability, as described in paragraph (b) of this
>> section shall be provided (including the right to inspect and copy
>> records as specified in paragraph (d) of this section) to the P&A
>> system within 24 hours of receipt of the P&A system's written
>> request for the records without the consent of another party.
>>
>> (2) In all other cases, ***access to records of individuals with
>> developmental disabilities shall be provided to the P&A system
>> within three business days after the receipt of such a written
>> request from the P&A system***.
>
> (d) ***A P&A shall be permitted to inspect and copy information and
> records, subject to a reasonable charge to offset duplicating costs***. If the
> service provider or its agents copy the records for the P&A system, it may
> not charge the P&A system an amount that would exceed the amount
> customarily charged other non–profit or State government agencies for
> reproducing documents. At its option, the P&A may make written notes
> when inspecting information and records, and may use its own
> photocopying equipment to obtain copies. ***If a party other than the P&A
> system performs the photocopying or other reproduction of records, it***

> ***shall provide the photocopies or reproductions to the P&A system within the time frames specified in paragraph (c) of this section***. In addition, where records are kept or maintained electronically they shall be provided to the P&A electronically.

45 C.F.R. § 1326.25 (emphasis added).

The PAIR Act creates an "identical framework" to the DD Act, *see State of Conn. Office of Protection and Advocacy for Persons with Disabilities v. Hartford Bd. of Ed.*, 355 F. Supp.2d 649, 654 (D. Conn. 2005), and provides for the same access rights as the DD Act.  29 U.S.C. § 794e(f)(1)-(2).

The PAIMI Act's relevant regulations direct that a P&A shall be permitted to inspect and copy information and records "promptly." 42 C.F.R. §§ 51.41(a) ("Access to records shall be extended promptly to all authorized agents of a P&A system."); 42 C.F.R. §§ 51.41(e) ("A P&A system shall be permitted to inspect and copy records, subject to a reasonable charge to offset duplicating costs.").[15]

Plaintiff argues that it is entitled to receive copies of records within three business days of DOCCS' receipt of Plaintiff's written request for those copies, because 45 C.F.R. § 1326.25(d) provides that DOCCS "shall provide the photocopies or reproductions" to Plaintiff "within the time frames specified in [45 C.F.R. § 1326.25(c)]," which requires "access to records of individuals with developmental disabilities . . . within three business days after the receipt of

---

[15]     At least one district court has interpreted the word "promptly" in this context to mean "within five business days." *See Michigan Prot. & Advocacy Serv., Inc. v. Flint Cmty. Sch.*, 146 F. Supp. 3d 897, 908 (E.D. Mich. 2015) (ordering defendants "to provide access to the records of any individual with a condition covered under the PAIMI Act or PAIR Act within five business days"); *but see Prot. & Advoc. Sys., Inc. v. Freudenthal*, 412 F. Supp.2d 1211, 1220-21 (D. Wy. 2006) ("[T]he parties may use the deadlines in the DD Act as a guideline for requests under the PAIMI Act, but this approach should reflect a good faith analysis of the nature and extent of the request. A narrow request for a small number of documents should not require the full three days allowed under the DD Act, while a very broad and time intensive request should be allowed some leeway.").

such a written request." *See, supra*, Part I.B.1. of this Decision and Order. (*See also* Dkt. No. 98, Attach. 1, at 17 [attaching page "15" of Plf.'s Memo. of Law].)

The Court is not persuaded by Plaintiff's argument. The time frame set forth in 45 C.F.R. § 1326.25(c) consists of the provision of "access to records" within three business days after the receipt of a written request *for that "access to records*." As a result, fairly and reasonably construed, the adoption of this "three business day[]" time frame by 45 C.F.R. § 1326.25(d) requires that a party other than the P&A system provide "photocopies or reproductions" of records within three business days *after those records have been presented to that party for copying*. The adoption of this time frame does not expressly require that party to provide "photocopies or reproductions" of records within three business days after the party's receipt of a "written request" for "access" to those records. Nor does the adoption of this time frame even expressly permit a "written request" for "photocopies or reproductions" (especially without a prior "inspect[ion]" of them by the P&A system).[16]

In any event, the Court has already decided this issue. Specifically, in its Decision and Order of November 4, 2020, the Court ruled as follows, in pertinent part:

> [U]nder any reasonable construction of the regulatory right to copy non-electronic records oneself or have copies made by a service provider, the three-business-day clock governing the service provider's copying of the non-electronic records does not start running until the service provider has been **presented** with the particular records to be

---

[16]    Indeed, Plaintiff's construction of the relevant statues and regulations would appear to result of the absurd outcome of a violation being committed by DOCCS whenever Plaintiff chooses to visit a correctional facility and inspect and obtain copies of records from DOCCS *four or more* business days after DOCCS has received Plaintiff's written request for access to those records and has immediately (that same day) communicated its provision of open-ended access to those records (e.g., stating, "Come any business day between 9:00 a.m. and 5:00 p.m." instead of "Please contact me to make the arrangements"). (*Cf.* Dkt. No. 16, Attach. 1, at 45 [letter dated 03/21/18 stating, "Please be advised the records you requested are available at the facility for DRNY's review. Please contact me to make the arrangements"], *accord*, Dkt. No. 16, Attach. 1, at 172, 191, 199, 207, 227, 239, 275, 280, 294, 316, 323, 328, 336, 356.)

copied (whether [1] by the P&A directly, following its own inspection, or [2] through the service provider's retrieval of the records, following a sufficient identification of them by the P&A to enable the retrieval). . . .

Based on the plain language of the regulation, the Court finds that a prerequisite of the P&A system's right to obtain copies of the information and records of an individual is the P&A system's ***sufficient identification of the information and records to enable the custodian of the records to know which non-electronic records are to be copied*** (as well as the custodian's retrieval of those records). . . .

Simply stated, a right of the P&A system to obtain copies of the records of an individual within three business days merely by sending a written demand to the service provider (without there having been either a ***sufficient identification of the records to enable the custodian of the records to know which non-electronic records are to be copied*** or the retrieval of those records) is not reasonably set forth in this regulation, based on its plain language. . . .

*DRNY v. DOCCS*, 18-CV-0980, 2020 WL 6484049, at *6-7 (N.D.N.Y. Nov. 4, 2020) (Suddaby, C.J.) [emphases added; internal quotation marks omitted]; *see also Disability Rts. New York v. New York State Dep't of Corr. & Cmty. Supervision*, 21-CV-0739, 2022 WL 484368, at *7 (N.D.N.Y. Feb. 17, 2022) (Suddaby, C.J.).

Applying those points of law here, the Court finds that, under the DD Act and its relevant regulations, Plaintiff is entitled to a copy of a non-electronic record from DOCCS within three business without Plaintiff's prior physical inspection of that record and presentation of it to DOCCS for copying (i.e., upon DOCCS' receipt of a written request for that copy) when three conditions have been met: (1) the record has been sufficiently described by Plaintiff to enable DOCCS' records custodian to successfully identify it; (2) the record is already in the presence of the records custodian, such as when it had been previously retrieved by the custodian; and (3) a reasonable charge for that copy has been paid (in an amount that does not exceed the amount customarily charged other non-profit or State government agencies for reproducing documents). The Court renders a similar finding with regard to the PAIMI Act and its relevant regulations (which require the provision "promptly").

For these reasons, this ground serves as an alternative basis for the denial of Plaintiff's

motion, and the granting of Defendants' cross-motion, with regard to this claim.

      **E.**      **Whether Plaintiff Is Entitled to a Judgment Declaring that, Under the P&A Acts, DOCCS Has Failed to, "Within One Business Day," Provide Plaintiff with "a Written Statement of Reasons" When Plaintiff's "Access" Has Been "Denied or Delayed"**

After carefully considering the matter, the Court answers this question in the negative for

the reasons stated by Defendants in their memorandum of law.  *See, supra,* Part I.B.2. of this

Decision and Order.  To those reasons, the Court adds the following analysis.

For the exact same reasons set forth above in the prior part of this Decision and Order,

the Court finds that the Eleventh Amendment bars the Court from issuing retrospective

declaratory relief against Defendants for this claimed past violation of federal law.  *See, supra,*

Part III.D. of this Decision and Order.

For these reasons, Plaintiff's motion is denied, and Defendants' cross-motion is granted,

with regard to this claim.

In any event, even if the Court were mistaken with regard to the preclusive effect of the

Eleventh Amendment on this claim, the Court would deny Plaintiff's motion, and grant

Defendants' cross-motion, regarding this claim based on the merits.  This is because the DD

Act's relevant regulations provide as follows, in pertinent part: "If a P&A system's access is

denied or delayed beyond the deadlines specified in § 1326.25, the P&A system shall be

provided, within one business day after the expiration of such deadline, with a written statement

of reasons for the denial or delay."  45 C.F.R. § 1326.26. Moreover, the PAIMI Act's relevant

regulations provide as follows, in pertinent part: If a P&A system's access to facilities, programs,

residents or records covered by the Act or this part is delayed or denied, the P&A system shall be

provided promptly with a written statement of reasons . . . .  Access to facilities, records or

residents shall not be delayed or denied without the prompt provision of written statements of the reasons for the denial."  42 C.F.R. § 51.43.

Plaintiff argues that it is entitled to a judgment as a matter of law finding that DOCCS has (1) failed to, "within one business day," provide Plaintiff with "a written statement of reasons" each time that Plaintiff's "access" was "denied or delayed," in violation of 45 C.F.R. § 1326.26, and (2) failed to "promptly" provide Plaintiff with "a written statement of reasons" each time that Plaintiff's "access to . . . records covered by the Act" was "delayed or denied" in violation of 42 C.F.R. § 51.43.  (Dkt. No. 98, Attach. 1, at 5-6, 20-22 [attaching pages "3," "4," "18," "19" and "20" of Plf.'s Memo. of Law].)

Again, the Court is not persuaded by Plaintiff's argument. As the Court has previously found, the "deadlines" in question regard "written request[s]" for "access to records," not "written request[s] for "photocopies or reproductions." *See, supra,* Part III.D. of this Decision and Order. Moreover, it is uncontroverted that, after receiving and processing each of Plaintiffs' record requests (except with regard to Inmate AA), DOCCS communicated its granting of physical access to its facilities so Plaintiff could review and copy the records requested. *See, supra,* Part III.A. of this Decision and Order.

For these reasons, this ground serves as an alternative basis for the denial of Plaintiff's motion, and the granting of Defendants' cross-motion, with regard to this claim.

### F.     Whether Plaintiff Is Entitled to a Judgment Declaring, and/or a Permanent Injunction Directing, that, Under the P&A Acts, DOCCS May Not Delay Copying Records Beyond the Time Frames Set Forth in Those P&A Acts in Order to Conduct a Page Count of Them

After carefully considering the matter, the Court answers this question in the negative for the reasons stated by Defendants in their memorandum of law.  *See, supra,* Part I.B.2. of this Decision and Order.  To those reasons, the Court adds the following analysis.

As an initial matter, the Court rejects this claim based on the law-of-the-case doctrine.[17] In its Decision and Order of September 24, 2019, the Court dismissed both Plaintiff's claim for prospective declaratory relief and its claim for prospective injunctive relief.  (Dkt. No. 41, at 41-50, 93.)  Nothing about the Court's Decision and Order of November 4, 2020, changed these rulings.  (*See generally* Dkt. No. 73.)

In the alternative, the Court rejects this claim as moot, under the circumstances.  As argued by Defendants, since March 26, 2022, the NYS P&A Records Access Law has required that "[c]opies of records shall be provided to [DRNY] free of charge within three business days of receipt of a written request . . . ."  (Dkt. No. 100, Attach. 17, at 22-24 [attaching pages "16" through "18" of Defs.' Memo. of Law].)  Furthermore, the current record before the Court contains uncontroverted evidence that, since the date that law went into effect, Defendants have complied—and intend to continue to comply—with that requirement.  (Dkt. No. 100, Attach. 1, at ¶ 58 [Shkolnik Decl.].)  *See also, supra,* Fact No. 36 of Defendants' Statement of Facts in Part I.C.2. of this Decision and Order.  In other words, no need exists any longer for Defendants to conduct such a page count.

Finally, in the second alternative, the Court rejects this claim as without merit.  Based on the current record, the Court can find no admissible evidence from which a rational fact-finder could conclude that there exists an ongoing violation of federal law by Defendants in the form of their delaying copying records beyond the time frames set forth in those P&A Acts merely in

---

[17]     "The law of the case doctrine, while not binding, counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (internal citation and quotation marks omitted).

order to conduct a page count of those records.[18]  Indeed, as the Court found above, the "time

frame[s]" in question (which regard "written requests" for copies) govern the provision of copies

that (1) are already in the presence of the records custodian, and (2) have been paid for by

Plaintiff.  *See, supra,* Part III.D. of this Decision and Order.  Simply stated, pursuant to

procedure that Plaintiff has elected, the page count is already known to both DOCCS and

Plaintiff by the time the "three business day[]" clock starts running.

For each of these three reasons, the Court denies Plaintiff's motion, and grants

Defendants' cross-motion, with regard to this claim.

### G. Whether Plaintiff Is Entitled to a Judgment Declaring, and/or a Permanent Injunction Directing, that, Under the P&A Acts, DOCCS May Not Delay Copying Records Pending Its Receipt of Payment for Those Copies

After carefully considering the matter, the Court answers this question in the negative for

the reasons stated by Defendants in their memorandum of law.  *See, supra,* Part I.B.2. of this

Decision and Order.  To those reasons, the Court adds the following analysis.

Again, as an initial matter, the Court rejects this claim based on the law-of-the-case

doctrine, because the Court has dismissed both Plaintiff's claim for prospective declaratory relief

and its claim for prospective injunctive relief.  *See, supra,* Part III.F. of this Decision and Order.

---

[18]     *See Verizon Maryland. Inc. v. Public Serv. Comm'n of Maryland.,* 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."); *Green v. Mansour,* 474 U.S. 64, 73 (1985) (finding declaratory judgment that state defendants violated federal law in the past was not proper because there was no claimed continuing violation of federal law or any threat that state officials would violate the repealed law in the future). *KM Enters. v. McDonald*, 518 F. App'x 12, 13, n.1 (2d Cir. 2013) (finding that the Eleventh Amendment barred suit because, to extent awarding of State contract to another entity harmed plaintiff, such harm was based on past conduct only and could not be remedied by prospective relief); *Boyland v. Wing*, 487 F. Supp. 2d 161, 180 (E.D.N.Y. 2007) ("[A]bsent a continuing violation of federal law by the state, claims for injunctive, compensatory, or declaratory relief against state officials must be dismissed . . . .").

In the alternative, the Court rejects this claim as moot, under the circumstances.  As the Court found above, the New York State P&A Records Access law requires that "[c]opies of records shall be provided to [DRNY] free of charge . . . ."  *See, supra,* Part III.F. of this Decision and Order.  Furthermore, uncontroverted record evidence exists establishing that Defendants intend to continue to comply with that requirement. *Id.*

In the second alternative, the Court rejects this claim as without merit.  The regulation in question expressly provides, in pertinent part, that "[a] P&A shall be permitted to . . . copy information and records, subject to a reasonable charge to offset duplicating costs."  45 C.F.R. § 1326.25.  The Court has difficulty construing this language as anything other than a pre-condition to the provision of copies.

For each of these three reasons, the Court denies Plaintiff's motion, and grants Defendants' cross-motion, with regard to this claim.

H.   **Whether Plaintiff Is Entitled to a Judgment Declaring, and/or a Permanent Injunction Directing, that, Under the P&A Acts, a Service Provider May Not Withhold Records Until the P&A System Conducts a Physical Inspection of the Records**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated by Defendants in their memorandum of law.  *See, supra,* Part I.B.2. of this Decision and Order.  To those reasons, the Court adds the following analysis.

Again, as an initial matter, the Court rejects this claim based on the law-of-the-case doctrine, because the Court has dismissed both Plaintiff's claim for prospective declaratory relief and its claim for prospective injunctive relief.  *See, supra,* Part III.F. of this Decision and Order.

In the alternative, the Court rejects this claim as moot, under the circumstances.  As the Court found above, the New York State P&A Records Access law requires that "[c]opies of records shall be provided to [DRNY] free of charge within three business days of receipt *of a*

*written request . . . .*" *See, supra,* Part III.F. of this Decision and Order (emphasis added).

Furthermore, uncontroverted record evidence exists establishing that Defendants intend to

continue to comply with that requirement. *Id*

Finally, in the second alternative, the Court rejects this claim as without merit. This is

*not* because the Court finds that the P&A Acts and their regulations, when fairly and reasonably

construed in their totality, do not confer on DOCCS the duty to diligently comply in good faith

with written requests for copies of records (however inadequate the descriptions of those records

may be). Rather, it is because, based on the current record, the Court can find no admissible

evidence from which a rational-fact finder could conclude that there exists an ongoing violation

of federal law by Defendants in the form of their withholding records until Plaintiff conducts a

physical inspection of those records. Indeed, to the contrary, it is uncontroverted that, after

receiving and processing each of Plaintiffs' record requests (except with regard to Inmate AA),

DOCCS communicated its granting of physical access to its facilities so Plaintiff could review

and copy the records requested. *See, supra,* Part III.A. of this Decision and Order.

For each of these three reasons, the Court denies Plaintiff's motion, and grants

Defendants' cross-motion, with regard to this claim.

**I.       Whether Plaintiff Is Entitled to a Judgment Declaring, and/or a Permanent
           Injunction Directing, that, Under the P&A Acts, a Service Provider May Not
           Deny Access to Records on the Ground the P&A System May Seek Those
           Records from a Different Source**

After carefully considering the matter, the Court answers this question in the negative for

the reasons stated by Defendants in their memorandum of law. *See, supra,* Part I.B.2. of this

Decision and Order. To those reasons, the Court adds the following analysis.

As an initial matter, the Court rejects this claim based on the law-of-the-case doctrine, because the Court has dismissed both Plaintiff's claim for prospective declaratory relief and its claim for prospective injunctive relief. *See, supra,* Part III.F. of this Decision and Order.

In the alternative, the Court rejects this claim as without merit. Based on the current record, the Court can find no admissible evidence from which a rational fact-finder could conclude that there exists an ongoing violation of federal law by Defendants in the form of their denying Plaintiff access to records on the ground that Plaintiff may seek those records from a different source. To the extent that Plaintiff is referring to the autopsy report of Inmate A, Plaintiff has not adduced any admissible record evidence from which a rational fact-finder could conclude that DOCCS in fact possesses the records in question. Indeed, it is uncontroverted that DOCCS is not in possession of that report. *See, supra,* Fact Nos. 12-16 of Defendants' Statement of Facts in Part I.C.2. of this Decision and Order.

For each of these two reasons, the Court denies Plaintiff's motion, and grants Defendants' cross-motion, with regard to this claim.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for summary judgment (Dkt. No. 98) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's cross-motion for summary judgment (Dkt. No. 100) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**, **except** for Plaintiff's request for attorney's fees and costs pursuant to 42 U.S.C. § 1988, over which this Court retains jurisdiction for the reasons stated in note 1 of Defendant's memorandum of law (Dkt. No. 100, Attach. 17, at 7).

Dated: January 2, 2024
          Syracuse, New York


Glenn T. Suddaby
U.S. District Judge